Nos. 24-1946 and 24-2056

IN THE

# United States Court of Appeals

FOR THE THIRD CIRCUIT

ERIC JOHNSON, VANESSA WILLIAMS, EXECUTOR OF THE ESTATE OF GLADYS WILLIAMS, DECEASED, AND VANESSA WILLIAMS, INDIVIDUALLY; MCARTHUR JONES, EXECUTOR OF THE ESTATE OF JANET JONES, DECEASED AND MCARTHUR JONES, INDIVIDUALLY; HENRIETTA WILLIAMS; ELIZABETH LAMPKIN; ROBERT DELOACH, EXECUTOR OF THE ESTATE OF CAROLYN LINDSEY, DECEASED AND ROBERT DELOACH, INDIVIDUALLY; CARMEN MORENO; ROSA MORENO; THERESA NIX; DEBORAH HENSLEY; LORETTA G. ROBINSON; GREGORY H. HEMPHILL; DELORES HOWARD; MAGGIE CURRY; JEAN FIEBELKORN; ELVINA GALLOW; ANGELA MILLER; GLORIA MCCASTER; CAROLYN SILL; JENNIFER DAVIS; AND KATRINA HARRY,
*Plaintiffs-Appellants/Cross-Appellees,*

— V —

DAVID MAZIE, ESQ., ADAM SLATER, ESQ. AND
MAZIE SLATER KATZ & FREEMAN LLC,
*Defendants-Appellees/Cross Appellants.*

On Appeal from the United States District Court for the District of New Jersey,
Civil Action No. 1:23-cv-3420-RBK-MJS

**BRIEF OF PLAINTIFFS-APPELLANTS/CROSS-APPELLEES
ERIC JOHNSON, ET AL., AND APPENDIX (VOLUME I of IV) (Pa1 – Pa21)**

NAGEL RICE, LLP
BRUCE H. NAGEL, ESQ.
ROBERT H. SOLOMON, ESQ.
103 Eisenhower Parkway
Roseland, New Jersey 07068
T: 973-618-0400
F: 973-618-9194
E: bnagel@nagelrice.com
*Counsel for Plaintiffs-Appellants/Cross-Appellees*

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................... i

TABLE OF AUTHORITIES ........................................................................... iv

PRELIMINARY STATEMENT ....................................................................... 1

JURISDICTIONAL STATEMENT .................................................................. 5

STATEMENT OF ISSUES PRESENTED......................................................... 6

STATEMENT OF RELATED CASES OR PROCEEDINGS................................. 8

STATEMENT OF THE CASE.......................................................................... 9

    A. Factual Background................................................................................ 9

    B. The District Court Erroneously Denies Plaintiffs'
    Motion To Remand .............................................................................. 15

    C. The District Court Erroneously Grants Defendants'
    Motion For Judgment On The Pleadings, And
    Erroneously Denies Plaintiffs' Motion For Sanctions
    Against Defendants Pursuant To *N.J.S.A.* 2A:53A-41(f) ...................... 16

STANDARD OF REVIEW ............................................................................. 20

SUMMARY OF ARGUMENT ........................................................................ 22

LEGAL ARGUMENT .................................................................................... 26

    I. THE DISTRICT COURT ERRED BY DENYING
    PLAINTIFFS' MOTION TO REMAND................................................. 26

    II. THE DISTRICT COURT ERRED BY GRANTING
    DEFENDANTS' MOTION FOR JUDGMENT ON
    THE PLEADINGS ............................................................................... 32

a. Standard Governing Motions For Judgment On The Pleadings Pursuant to Rule 12(c) ........................................... 32

b. The District Court's Reliance on Collateral Estoppel Was Erroneous ................................................... 33

    i. The Identical Issues Prong Of Collateral Estoppel Is Not Satisfied ........................................ 34

    ii. The Final Judgment On The Merits Prong Is Not Satisfied ..................................................... 37

    iii. The Identical Party/Privity Prong Of Collateral Estoppel Is Not Satisfied ........................................ 38

    iv. The Full And Fair Opportunity To Litigate Prong Is Not Satisfied ..................................................... 42

c. Collateral Estoppel Is Not Supported By Equitable Considerations ................................................................. 42

III. THIS COURT SHOULD CERTIFY TWO QUESTIONS OF LAW TO THE NEW JERSEY SUPREME COURT ................................................. 43

IV. NEW JERSEY COURT RULE 1:21-7(i) IS APPLICABLE TO MDL AND MASS TORT LITIGATION ................................................... 48

a. Courts Must Consider Common Benefit Fees When Determining A Reasonable Fee On Aggregate Recoveries Pursuant To *R.* 1:21-7(i) In Excess Of $3 Million ............................... 53

b. Courts Must Also Consider Common Benefit Fees As A Factor When Determining A Reasonable Fee Under The Individual Contingent Fee Agreements .............................................................. 54

ii

V.    THE DISTRICT COURT ERRED BY
      DISMISSING AS MOOT PLAINTIFFS'
      MOTION FOR SANCTIONS PURSUANT
      TO *N.J.S.A.* 2A:53A-41(f) ................................................................. 55

CONCLUSION ........................................................................................ 57

CERTIFICATE OF BAR MEMBERSHIP............................................... 58

CERTIFICATE OF COMPLIANCE...................................................... 59

CERTIFICATE OF DIGITAL SUBMISSION ....................................... 60

CERTIFICATE OF FILING AND SERVICE ........................................ 61

iii

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

Arizonans for Official English v. Arizona,
   520 U.S. 43 (1997) ................................................................................ 47

Aro Corp. v. Allied Witan Co.,
   531 F.2d 1368 (6th Cir. 1976) .............................................................. 32

Bank Leumi USA v. Kloss,
   No. 18-3220, 2019 WL 9526852
   (3d Cir. Aug. 12, 2019) ........................................................................ 47

Barr v. Diguglielmo,
   348 F. App'x 769 (3d Cir. 2009) .......................................................... 20

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ........................................................................ 32, 33

Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.,
   402 U.S. 313 (1971) .............................................................................. 43

Boim v. Am. Muslims for Palestine,
   9 F.4th 545 (7th Cir. 2021) ................................................................... 29

City of Asbury Park v. Star Ins. Co.,
   No. 18-3261, 2019 WL 9105722
   (3d Cir. Aug. 12, 2019) .............................................................. 45, 46, 47

Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela,
   932 F.3d 126 (3d Cir. 2019) ................................................................. 27

Delta Funding Corp. v. Harris,
   426 F.3d 671 (3d Cir. 2005) ................................................................. 45

Ehrlich v. Kids of N.J., Inc.,
   769 A.2d 1081, 338 N.J. Super. 442 (N.J. App. Div. 2001) ................. 53

iv

Estate of Faheem Williams v. Division of Youth and Family Services,
  No. ESX-L-83-05, 2006 WL 4469674
  (L. Div. Mar. 30, 2006) ................................................................................. 45

Fox v. Consol. Rail Corp.,
  739 F.2d 929 (3d Cir. 1984) .......................................................................... 32

Gibbs ex rel. Gibbs v. Carnival Cruise Lines,
  314 F.3d 125 (3d Cir. 2002) .......................................................................... 49

Halley v.  Honeywell Int'l, Inc.,
  861 F.3d 481 (3d Cir. 2017) .......................................................................... 49

Hudson v. Coleman,
  347 F.3d 138 (6th Cir. 2003) ......................................................................... 30

IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.,
  438 F.3d 298 (3d Cir. 2006) ............................................................... 20, 26, 27

In re Asbestos Prod. Liab. Litig.,
  536 F. App'x 183 (3d Cir. 2013) .................................................................... 20

In re Est. of F.W.,
  942 A.2d 48, 398 N.J. Super. 344 (N.J. App. Div. 2008) ............................ 45, 53

In re Linerboard Antitrust Litig.,
  361 F. App'x 392 (3d Cir. 2010) .................................................................... 31

In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions,
  148 F.3d 283 (3d Cir. 1998) .......................................................................... 27

In re Prudential Ins. Co. of Am. Sales Prac. Litig.,
  261 F.3d 355 (3d Cir. 2001) .......................................................................... 30

Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v.
  Kelly,
  815 F.2d 912 (3d Cir. 1987) .......................................................................... 21

Jallad v. Madera,
  784 F. App'x 89 (3d Cir. 2019) ...................................................................... 20

v

Jenkins v. Kansas City Missouri Sch. Dist.,
   516 F.3d 1074 (8th Cir. 2008)..................................................... 31

Julian v. Cent. Tr. Co.,
   193 U.S. 93 (1904) ..................................................................... 28

Kokkonen v. Guardian Life Ins. Co. of Am.,
   511 U.S. 375 (1994) ............................................................ *passim*

M & M Stone Co. v. Pennsylvania,
   388 F. App'x 156 (3d Cir. 2010) ................................................ 20

Marino v. Pioneer Edsel Sales, Inc.,
   349 F.3d 746 (4th Cir. 2003)...................................................... 30

Martino v. Mazie,
   No.22-2019, 2023 WL 1990306
   (3d Cir. Feb. 14, 2023)....................................................... *passim*

Mocco v. Frumento,
   No. CV121458ESJAD, 2016 WL 10585998
   (D.N.J. Apr. 14, 2016) ............................................................... 49

Nationwide Mutual Fire Ins. Co. v. George V. Hamilton, Inc.,
   571 F.3d 299 (3d Cir. 2009)................................................ *passim*

Peacock v. Thomas,
   516 U.S. 349 (1996) ............................................................ *passim*

Phillips v. County of Allegheny,
   515 F.3d 224 (3d Cir. 2008)....................................................... 33

Revell v. Port Auth. of New York, New Jersey,
   598 F.3d 128 (3d Cir. 2010)....................................................... 32

Robertelli v. N.J. Off. of Atty. Ethics,
   134 A.3d 963, 224 N.J. 470 (N.J. 2016) .................................... 49

Smith v. Bayer,
   564 U.S. 299 (2011).................................................... 40, 41, 42

St. v. Anthony,
  129 A.3d 1085, 443 N.J. Super. 553 (N.J. App. Div. 2016)................................ 51

Sun Chem. Corp. v. Fike Corp.,
  No. 18-1062, 2019 WL 9525200
  (3d Cir. Apr. 18, 2019)............................................................................ 47

Syngenta Crop Prot., Inc. v. Henson,
  537 U.S. 28 (2002) ................................................................................. 31

Taylor v. Sturgell,
  553 U.S. 880 (2008) ..........................................................................*passim*

U.S. v. Defreitas,
  29 F.4th 135 (3d Cir. 2022)....................................................... 45, 46, 47

Walfish v. Nw. Mut. Life Ins. Co.,
  No. 19-2105, 2020 WL 9433211
  (3d Cir. Aug. 11, 2020) ............................................................... 46, 47

Witkowski v. Welch,
  173 F.3d 192 (3d Cir. 1999)................................................................... 34

## Statutes                                                              Page(s)

28 U.S.C. § 1291 ....................................................................................... 5

28 U.S.C. § 1367(a) ................................................................................. 27

28 U.S.C. § 1441 ....................................................................................... 5

28 U.S.C. § 1446 ....................................................................................... 5

28 U.S.C. § 1447 ....................................................................................... 5

28 U.S.C. § 1651(a) ................................................................................. 31

N.J.S.A. § 2A:53A-41(f).....................................................................*passim*

**<u>Court Rules</u>**                                                                                    **<u>Page(s)</u>**

<u>Fed. R. App. P.</u> 28.1(e)(2)(A)(i) ................................................................ 59

<u>Fed. R. App. P.</u> 32(a) ........................................................................... 59

<u>Fed. R. Civ. P.</u> 8(a) ............................................................................ 32

<u>Fed. R. Civ. P.</u> 11 .......................................................................... *passim*

<u>Fed. R. Civ. P.</u> 12(c) ................................................................... 6, 20, 32

<u>Fed. R. Civ. P.</u> 60 ............................................................................. 32

<u>L.Civ.R.</u> 101.1(c)(4) ..................................................................... 46, 49

<u>L.Civ.R.</u> 103.1(a). ............................................................................ 13

<u>L.A.R. Misc.</u> 110.1 ........................................................................... 44

<u>R.</u> 1:21-7 ..................................................................................... *passim*

<u>R.</u> 1:21-7(b) ................................................................................. *passim*

<u>R.</u> 1:21-7(c) ..................................................................................... 55

<u>R.</u> 1:21-7(c)(1)-(4) ........................................................................... 55

<u>R.</u> 1:21-7(c)(5) .............................................................................. *passim*

<u>R.</u> 1:21-7(e) ................................................................................. *passim*

<u>R.</u> 1:21-7(f) ................................................................................. *passim*

<u>R.</u> 1:21-7(i) ................................................................................. *passim*

R. 2:12A-1 ....................................................................................... 44

<u>R.P.C.</u> 1.5(a) ................................................................................. *passim*

**<u>Other Authorities</u>** **<u>Page(s)</u>**

Lester Brickman, *Anatomy of an Aggregate Settlement: The Triumph of Temptation over Ethics*,
79 <u>Geo. Wash.  L. Rev.</u> 700 ................................................................. 52

Lester Brickman, *The Asbestos Litigation Crisis: Is There A Need for an Administrative Alternative*,
13 <u>Cardozo L. Rev.</u> 1819 (1992)................................................... 51, 52

Lester Brickman, *Ethical Issues in Asbestos Litigation*,
33 <u>Hofstra L. Rev.</u> 833 ....................................................................... 52

Francesca Giannoni-Crystal, et al., *Choice of Law in Lawyers' Engagement Agreements*,
121 <u>Penn St. L. Rev.</u> 683 ................................................................... 52

Monica Hughes, *Applying State Contingency Fee Caps in Multidistrict Litigation (MDL) Settlements*,
91 <u>Tex. L. Rev.</u> 961 .......................................................................... 52

<u>Litigating Mass Tort Cases</u> § 7:43.50 (June 2022 update) ......................... 12, 13, 55

Pressler & Verniero, <u>N.J. Court Rules</u> (Gann 2022),
Comment to R.1:21-7................................................................. 45, 53

## PRELIMINARY STATEMENT

This appeal raises for the first time in the country the overlap between compensation from the common benefit fund to leadership counsel in multidistrict ("MDL") and mass tort litigation and fees that can be charged to individual clients under contingent fee agreements. In any mass tort or MDL, the large bulk of work performed by lead counsel benefits every plaintiff and a common benefit charge is levied against recoveries of all plaintiffs. Lead counsel then is awarded compensation from the common benefit fund for their work.

What is before this Court is the fact that not only does leadership counsel get compensated for the bulk of work establishing liability, they also receive a full contingent fee pursuant to the individual retainer agreements. Thus, leadership counsel gets paid twice for the same work: common benefit compensation plus a full contingent fee where substantial work performed in the role of leadership counsel has been paid for with common benefit monies.

Lead counsel in any MDL or mass tort action performs work that benefits every plaintiff, including their own, such as: selection of experts, conducting all of discovery, including depositions, review of documents, legal research, and motion practice, including dispositive motions. The work product produced by leadership counsel is used by all individual plaintiffs to resolve their cases or to try their cases. Only the medical facts and damage claims relating to an individual plaintiff's claims

is worked up by each counsel. If there was no lead counsel performing the work that benefits all plaintiffs, that very work would need to be performed by individual attorneys. Thus, the question to be answered is whether compensation from the common benefit fund which covers the majority of work that must be done for each individual case, renders the full contingent fee charged under the individual contingent fee agreements unreasonable thus breaching the reasonableness standard that governs New Jersey contingent fee agreements. See R. 1:21-7(b), (e) and R.P.C. 1.5(a).

We do not seek a credit for the monies received by lead counsel from the common benefit fund; we seek to invalidate the individual contingent fee agreements based upon the fact that the defendant firm received a full contingent fee where the large majority of the work was done as lead counsel in the MDL and has been compensated from the common benefit fund.

The other issue of first impression in this appeal is whether an aggregate recovery of over $3 million in MDLs or mass tort actions in New Jersey involving a single drug requires court approval, as set forth in New Jersey Court Rule 1:21-7(i).

In a prior action raising some of these issues, the district court dismissed, holding that this rule does not apply to MDL or state mass tort actions. In an unpublished opinion, the dismissal was affirmed by the Third Circuit. Critically, however, the panel did not rule on the substantive issues – including the application

of the contingent fee rule to MDLs and other mass torts – and simply found that the pleading failed to allege that the aggregate recovery exceeded $3 million and did not set forth a viable cause of action. See Martino v. Mazie, No.22-2019, 2023 WL 1990306 (3d Cir. Feb. 14, 2023) (Pa149).

In response, we filed a new action in state court on behalf of 21 new plaintiffs where we cured the defects in the complaint noted by the Third Circuit. Defendants removed to federal court, and our motion to remand was denied, with the district court holding that it had ancillary jurisdiction. The district court again dismissed the case, on grounds that were never raised or briefed by either party, ruling *sua sponte* that the claims were barred by the doctrine of collateral estoppel. Since the Plaintiffs in this action are obviously different from the plaintiff in the prior action, and they clearly are not in privity, the district court relied on the doctrine of virtual representation, even though that doctrine has been explicitly rejected by the Supreme Court. The district court also mistakenly characterized the claims in this action as "identical" to the claims asserted in in the previous matter, ignoring the fact that in the previous matter, the Third Circuit held that the complaint failed to state a claim and never addressed the substance of any claims and affirmed based solely on pleading defects which were cured when we filed this new action.

Finally, the district court erroneously denied as moot Plaintiffs' motion for sanctions against Defendants which was based upon Defendants' wrongful attack

3

upon the attorney who executed the affidavit of merit in support of the legal malpractice cause of action, all in violation of <u>N.J.S.A.</u> § 2A:53A-41(f).

Because this appeal presents several issues of first impression under the New Jersey contingent fee rule, we have moved to certify these issues to the New Jersey Supreme Court.

## **JURISDICTIONAL STATEMENT**

This case was originally filed in New Jersey state court on June 23, 2023. (Pa41).[1] On June 23, 2023, Defendants removed the case to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1441 and 1446. (Pa34). On July 24, 2023, Plaintiffs filed a motion to remand pursuant to 28 U.S.C. § 1447. (Pa160). On March 27, 2024, the district court erroneously denied Plaintiffs' motion to remand, based solely on it finding that it "retains ancillary jurisdiction over matters relating to the [Benicar] MDL settlement and particularly the attorney fee awards." (Pa17).

This Court has jurisdiction because the final judgment entered by the United States District Court for the District of New Jersey on May 7, 2024, (Pa18), was timely appealed on May 20, 2024, (Pa1), and the United States District Court for the District of New Jersey's March 27, 2024 Order denying Plaintiffs' motion to remand this matter to state court, (Pa9), was timely appealed on May 31, 2024, (Pa4). See 28 U.S.C. § 1291.

---

[1] "Pa__" refers to Plaintiffs' Appendix. Plaintiffs' Appendix contains the complete Pacer docket sheet for Civil Action No. 1:23-cv-3420-RBK-MJS. See (Pa22).

**STATEMENT OF ISSUES PRESENTED**

1.       Did the district court err by denying Plaintiffs' motion for remand, <u>see</u> (Pa160), by ruling, *sua sponte*, that it "retains ancillary jurisdiction over matters relating to the [Benicar] MDL settlement and particularly the attorney fee awards." (Pa17).

2.       Should this Court petition the Supreme Court of New Jersey for certification of two questions: (i) whether <u>R.</u> 1:21-7(i) applies to mass tort litigation, and; (ii) whether common benefit fees should be considered: (a) in an application for approval of reasonable fees on an aggregate recovery in excess of $3 million, pursuant <u>R.</u> 1:21-7(c)(5) and (f) and <u>R.P.C.</u> 1.5(a), and; (b) in determining whether the full contingency fee renders the contingency fee agreements unenforceable as unreasonable under <u>R.</u> 1:21-7(b), (e) and <u>R.P.C.</u> 1.5(a).

3.       Did the district court err by granting Defendants' motion for judgment on the pleadings pursuant to <u>Fed. R. Civ. P.</u> 12(c), <u>see</u> (Pa193), by ruling, *sua sponte*, that Plaintiffs' claims are collaterally estopped by the Third Circuit's ruling in <u>Martino v. Mazie</u>, No.22-2019, 2023 WL 1990306 (3d Cir. Feb. 14, 2023), based on the doctrine of privity by virtual representation, and was its collateral estoppel ruling erroneous given that (a) the ruling in *Martino* was based entirely on pleading deficiencies, and did not address the substance of <u>R.</u> 1:21-7(i); (b) Plaintiffs have corrected the pleading deficiencies in *Martino* by following the roadmap provided

by the Third Circuit; and (c) the complaint in this action includes new allegations which were never pled in *Martino*? <u>See</u> (Pa18-Pa21).

4.      Did the district court err by dismissing as moot Plaintiffs' motion for sanctions against Defendants pursuant to <u>N.J.S.A.</u> 2A:53A-41(f) for threatening Plaintiffs' expert, <u>see</u> (Pa252), merely because it granted Defendants' motion for judgment on the pleadings? <u>See</u> (Pa18).

8

## **STATEMENT OF RELATED CASES OR PROCEEDINGS**

Related case is <u>Martino v. Mazie</u>, No.22-2019, 2023 WL 1990306 (3d Cir.

Feb. 14, 2023) (Pa149), as discussed below.

## STATEMENT OF THE CASE

### A. Factual Background

The instant action finds its genesis in product liability lawsuits relating to the blood pressure medication Benicar (the "Benicar MDL"). (Pa44, ¶ 25).[2] David Mazie ("Mazie"), Adam Slater ("Slater"), and Mazie Slater Katz & Freeman, LLC (the "Firm") (collectively, "Defendants") represented over 200 clients in the Benicar MDL, including the twenty-one plaintiffs (the "Plaintiffs") in this action. (Pa44, ¶ 25; Pa48, ¶ 40).

With a single drug in issue, the same experts were used for establishing liability for all plaintiffs and the liability discovery was identical for all the Benicar MDL plaintiffs. (Pa46, ¶ 34). All of Plaintiffs in this action entered into individual retainer agreements with Defendants, which are governed by the New Jersey Court Rules. (Pa44, ¶ 25). Slater was designated as co-lead counsel and was also a member of the plaintiffs' Executive Committee. (Pa45, ¶ 27).

Ultimately the Benicar MDL settled and a common benefit fund was established to pay common benefit fees. (Pa45, ¶ 28; Pa50, ¶ 52). Slater was a member of the fee split committee that determined the allocation of the fees and

---

[2] On July 14, 2015, the Supreme Court of New Jersey issued an Order designating as a multicounty litigation for centralized case management purposes all New Jersey state court actions alleging personal injuries resulting from treatment with Benicar (the "Benicar MCL"). See https://www.njcourts.gov/notices/notice-and-order-multicounty-litigation-designation-certain-nj-state-court-litigation.

costs paid to the leadership firms from the common benefit fund in the Benicar MDL. (Pa45, ¶ 28). Slater received over $4 million from the common benefit fund for his work which benefited his 200 individual clients. (Pa47 ¶ 36).[3] Those fees and costs related to experts and discovery focused on establishing liability for this single drug. (Pa46, ¶34).

On June 22, 2023, Plaintiffs filed this action in the Superior Court of New Jersey, Essex County, Docket ESX-L-4010-23. (Pa41). Plaintiffs allege, *inter alia*, that Defendants overcharged fees and costs to their clients in the Benicar MDL, (Pa45-Pa50, ¶¶ 29, 34, 37, 40, 48-49, 52), failed to comply with the requirements of the New Jersey Court Rule's fee provisions – R. 1:21-7 – and the New Jersey's Rules of Professional Conduct in calculating their attorney's fees, (Pa46-Pa46, ¶¶ 34, 37; Pa49, ¶ 48), and failed to properly allocate costs for liability experts. (Pa47-Pa48, ¶¶ 36, 40). Based on the foregoing, Plaintiffs set forth causes of action for breach of the retainer agreements, (Pa45-Pa48, ¶¶ 30-42), legal malpractice, (Pa48, ¶¶ 43-46), conversion, (Pa49, ¶¶ 47-50), and unjust enrichment, (Pa50, ¶¶ 51-53).

More specifically, Plaintiffs allege that Defendants, as counsel for over 200 clients in the Benicar MDL, were bound by R. 1:21-7(i), which provides that:

---

[3] The common benefit charge is deducted from each recovery and sent to the common benefit fund. These charges to each client are then awarded to leadership counsel; thus leadership counsel receive monies that were deducted from their own clients.

> **When representation is undertaken on behalf of several persons whose respective claims, whether or not joined in one action, [1] <u>arise out of the same transaction or set of facts</u> or [2] <u>involve substantially identical liability issues</u>, the contingent fee shall be calculated on the basis of <u>the aggregate sum of all recoveries</u>,** whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each. Counsel may, however, make application for modification of the fee pursuant to paragraph (f) of this rule in appropriate cases. (Emphasis added).

Since the claims of Defendants' 200 plus clients in the Benicar MDL all involved injuries caused as a result of taking Benicar they arise out of the same transaction or set of facts and/or involve substantially identical liability issues. (Pa46, ¶ 34). Thus, Defendants were required to calculate their attorney's fee based on *the aggregate amount* of all of their clients' settlements – not on each client's individual recovery. <u>R.</u> 1:21-7(i).

In addition to the aggregate recovery provision of the contingent fee rule, they also had to comply with <u>R.</u> 1:21-7(c)(5) which requires an application to determine a "reasonable fee" on any amount of recovery in excess of $3 million pursuant to subsection (f). (Pa46-Pa47, ¶¶ 33-34, 37).[4]

---

[4] The contingent fee rule of the New Jersey Court Rules – <u>R.</u> 1:21-7 – contains reasonableness requirements, providing that: (i) attorneys may only seek compensation for the reasonable value of their services, <u>R.</u> 1:21-7(b) and (e), and; (ii) any application for fees in excess of $3 million must be "reasonable," <u>R.</u> 1:21-7(c)(5) and (f), (collectively, the "Reasonableness Rules").

11

It is undisputed that Defendants failed to calculate their fees based on their 200 plus clients' aggregate recovery, and never sought court approval for their recovery in excess of three million dollars, and instead overcharged fees and costs to Plaintiffs and their other clients and violated – at a minimum. R. 1:21-7(i), R.P.C. 1.5(a) and the Reasonableness Rules. (Pa46-Pa50, ¶¶ 34, 37, 44, 49, 53).

In addition to breaching the aggregate recovery provision, and the requirement that an application to set fees over $3 million is mandatory, Defendants also breached their retainer agreements by charging fees that were not reasonable. See R.P.C. 1.5(a) and the Reasonableness Rules. The Firm received a double recovery by way of being paid millions in common benefit fees for work which benefited their individual clients, *and* also received the full contingent fee charged to individual retainer agreements. (Pa45, ¶¶ 28-29; Pa47, ¶¶ 36-37). Defendants also failed to disclose to their clients that counsel would receive a double recovery to their clients' detriment. (Ibid.). It is just such improper double recoveries which have been noted to arise in mass tort litigation:

> Some tensions may arise between fees from a common fund for those who do MDL work and the fees that those same lawyers stand to obtain by virtue of contingent fee agreements they have with individual clients... [t]o [some] this arrangement **has the appearance of "double dipping."** … Th[is] concern may also arise in the mind of the judge supervising the litigation... One bit of good advice to lawyers who represent clients individually on a contingent fee basis and also are going to do committee work is **full disclosure to their clients.** The retainer or

12

some other early document can inform the client that the attorney is going to be doing work which benefits all cases, and expects to apply to a judge for payment for those services.

See Litigating Mass Tort Cases § 7:43.50 (June 2022 update) (emphasis added).

Defendants also breached their contingent fee agreements by failing to allocate expert costs in a fair and reasonable matter across all of their clients as the same liability experts were used in all cases. (Pa46-Pa48, ¶¶ 34, 36, 39-42). Importantly, the common benefit fees must be disclosed to the court in connection with the mandatory fee application, which was not made, to get fees in excess of $3 million aggregate for all cases. See R. 1:21-7(c)(5) and (f). (Pa46-Pa47, ¶¶ 34, 37).

Plaintiffs further alleged that as a result of all of the foregoing, Defendants also violated R.P.C. 1.5(a), which is made applicable to litigation in New Jersey federal courts by L.Civ.R. 103.1(a). (Pa45, ¶ 31). See also R. 1:21-7(e) (contingency fees must conform to the reasonableness requirement of R.P.C. 1.5(a)).

The allegations asserted in this action not only follow the roadmap set forth by this Court in Martino, 2023 WL 1990306, but also substantially differ from the allegations made in *Martino*. By way of example:

- This action alleges that by taking a double recovery from the common benefit fund *and* under their clients' individual retainer agreements for the same or substantially the same work Defendants have violated the court rules and

13

common law that all contingent fees must be "reasonable." See (Pa47, ¶ 37). No such allegation was made in *Martino*. See (Pa114-Pa115, ¶¶ 27, 31).

- While no separate breach of contract claim was alleged in *Martino*, see (Pa113-Pa115, ¶¶ 18-32), Plaintiffs in this action allege that Defendants' double recovery constitutes a breach of contract claim. See (Pa47, ¶ 38).

- While in *Martino* plaintiff did not allege that Defendants' clients in the Benicar MDL recovered an aggregate in excess of $3 million, see (Pa113, ¶ 21; Martino, 2023 WL 1990306 at *2), Plaintiffs in this action have explicitly alleged that the aggregate recovery exceeded $3 million, and that Defendants were therefore required to apply to the court for a reasonable fee on the recovery in excess of $3 million. See (Pa46, ¶ 34).

- While this action alleges that common benefit fees must be considered by a court when considering an application for fees for aggregate recoveries pursuant to R. 1:21-7(i) in excess of $3 million, see (Pa46-Pa47, ¶¶ 34, 36-38), no such allegations were made in *Martino*. See (Pa113-Pa115, ¶¶ 18-32).

- While this action alleges that the same liability experts were utilized by Defendants to litigate all of their cases and that the expert fees for these liability experts were not properly allocated in the Benicar MDL, see (Pa46, ¶ 34;

14

Pa48, ¶ 40), no such allegations were made in *Martino*. <u>See</u> (Pa113-Pa115, ¶¶ 18-32).

• While in *Martino* plaintiffs only appealed that portion of the district court's decision regarding aggregation of claims pursuant to <u>R.</u> 1:21-7(i) that "involve substantially identical liability issues," <u>see</u> <u>Martino</u>, 2023 WL 1990306 at *2, Plaintiffs in this case appeal the district court's decision regarding aggregation of claims which either "involve substantially identical liability issues" *or* "arise out of the same transaction or set of facts." <u>See</u>, <u>infra</u>.

**B. <u>The District Court Erroneously Denies Plaintiffs' Motion To Remand</u>**

On June 23, 2023, Defendants filed a Notice of Removal. (Pa38). Also on June 23, 2023, Defendants filed an Answer. (Pa153). On July 24, 2023, Plaintiffs filed a Motion for Remand. (Pa160).

On March 27, 2024, the district court denied Plaintiffs' motion to remand. (Pa9). The district court did not address the majority of the parties' arguments and instead ruled that it "retains ancillary jurisdiction over matters relating to the [Benicar] MDL settlement and particularly the attorney fee awards." (Pa17). This is erroneous.

The district court's decision is contrary to Supreme Court precedent prohibiting use of ancillary jurisdiction in the circumstances present in this matter.

Moreover, ancillary jurisdiction does not serve as a basis for Article III jurisdiction in this case, resulting in the district court not having subject matter jurisdiction.

### C. The District Court Erroneously Grants Defendants' Motion For Judgment On The Pleadings, And Erroneously Denies Plaintiffs' Motion For Sanctions Against Defendants Pursuant To *N.J.S.A.* 2A:53A-41(f)

On September 29, 2023, while Plaintiffs' motion for remand was pending, Defendants filed a motion for judgment on the pleadings. (Pa193). On October 20, 2023, while both motions were pending, Plaintiffs filed their Affidavit of Merit, signed by their expert, Robert Borteck ("Borteck"). (Pa257).

On November 17, 2023, Defendants sent a letter to Borteck *directly*, arguing that Plaintiffs' affidavit of merit is frivolous and sanctionable under Fed. R. Civ. P. 11 and that Borteck immediately withdraw his affidavit of merit from the docket, threatening that if he did not do so, Defendants would file a motion for sanctions *directly* against Borteck. (Pa260). (Defendants later did file a Rule 11 motion for sanctions against Borteck. (Pa264)). Based on the foregoing improper actions by Defendants, on December 22, 2023, Plaintiffs filed a motion for sanctions against Defendants pursuant to N.J.S.A. 2A:53A-41(f) and for other relief. (Pa252).

On May 7, 2024, the district court issued its Memorandum and Order granting with prejudice Defendants' motion for judgment. (Pa18). No oral argument was held. (Ibid.).

16

The district court did not address any of the legal arguments raised by the parties. Instead, it erroneously ruled, <u>*sua sponte*</u>, that Plaintiffs' claims are collaterally estopped by this Court's decision in <u>Martino</u>, 2023 WL 1990306, mistakenly finding that "[b]ut for the names and state citizenship of the plaintiffs here, **this action is identical to [<u>Martino</u>].**" (Pa19, emphasis added). However, because Plaintiffs in this action were obviously not plaintiffs in *Martino* – and were obviously not in privity with the plaintiff in *Martino* – the prong of collateral estoppel requiring identical parties or privity could not be satisfied.

In order to avoid this conclusion, the district court relied on the doctrine of virtual representation, ruling that "[t]he U.S. Supreme Court in *Taylor v. Sturgell*, 128 S. Ct. 2161, 2172 n. 8 (2008) vindicated the "virtual representation" approach of defining parties in privity," (Pa20, n. 6), and that here the plaintiff in *Martino* "served as the virtual representative of the *Johnson* plaintiffs because "there is such an identification of interest between the two as to represent the same legal right."" (Pa20, quoting <u>Nationwide Mutual Fire Ins. Co. v. George V. Hamilton, Inc.</u>, 571 F.3d 299, 311 (3d Cir. 2009)). As set forth in greater detail below, the district court's ruling finds no basis in the jurisprudence of the Supreme Court or the Third Circuit and is directly contrary to both.

Far from vindicating virtual representation, the Supreme Court explicitly rejected using it to establish privity for purposes of establishing collateral estoppel,

17

<u>Taylor v. Sturgell</u>, 553 U.S. 880, 885, 905 (2008), and following the Supreme Court, this Court has held that the very use of the term "virtual representation" is suspect. <u>Nationwide Mutual Fire Ins. Co.</u>, 571 F.3d at 312

The district court further erred by ruling that <u>R.</u> 1:21-7(i)'s application to multidistrict litigation, as well as other issues, was ruled upon by the Third Circuit in <u>Martino</u>, 2023 WL 1990306, resulting in yet another prong of collateral estoppel not being fulfilled. (Pa19-Pa21). This is because the dismissal in *Martino* was affirmed by the Third Circuit *based upon pleading deficiencies* and this Court <u>*did not*</u> rule upon the substantive issues raised in the action – including <u>R.</u> 1:21-7(i)'s application to multidistrict litigation.

The district court's reliance on equitable considerations to support collaterally estopping Plaintiffs' claims is also without basis. (Pa21 and n. 7). In fact, the identical argument was raised and rejected by the Supreme Court in <u>Taylor</u>, 553 U.S. at 899.[5]

Finally, the district court dismissed Plaintiffs' motion for sanctions pursuant to <u>N.J.S.A.</u> 2A:53A-41(f) as moot. (Pa20).[6] This too was erroneous. Defendants'

---

[5] As an afterthought, the district court in a single line at the end of its decision states that the "re-litigation exception" to the Anti-Injunction Act "could have been employed" in this case. (Pa21). This statement does not warrant a response. It is conclusory and left unexplained. Moreover, its application here was not used, and therefore remains merely hypothetical.

[6] The district court also dismissed as moot Defendants' January 30, 2024, motion for sanctions pursuant to Rule 11 against Bruce H. Nagel, Esq. and Nagel Rice, LLP,

attempts to intimidate Plaintiffs' expert, including the filing of a motion for sanctions directly against him, are clear breaches of the statutory protection granted under New Jersey law.

On May 20, 2024, Plaintiffs timely filed their Notice of Appeal. (Pa1). On May 31, 2024, Plaintiffs timely filed their Amended Notice of Appeal. (Pa4). On June 3, 2024, Defendants filed a Notice of Cross Appeal of the district court's decision denying as moot their motions for sanctions against Bruce H. Nagel, Esq. and Nagel Rice, LLP, and Borteck. (Pa6).

---

(Pa331) – Plaintiffs' counsel – and its separate January 30, 2024, motion for sanctions pursuant to Rule 11 directly against Borteck, (Pa264) – Plaintiffs' expert. (Pa20).

## STANDARD OF REVIEW

This Court exercises plenary review over a district court's decision granting judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), and "will affirm such an order only if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law."" Barr v. Diuglielmo, 348 F. App'x 769, 773 (3d Cir. 2009) (quotation omitted).

This Court exercises plenary review over a district court's decision to apply collateral estoppel. M & M Stone Co. v. Pennsylvania, 388 F. App'x 156, 160 (3d Cir. 2010).

This Court exercises de novo review over the denial of a motion to remand. Jallad v. Madera, 784 F. App'x 89, 93 n. 4 (3d Cir. 2019). See also IFC Interconsult, AG v. Safeguard Int'l Partners, LLC., 438 F.3d 298, 309 (3d Cir. 2006), cert. den., 549 U.S. 821 (2006) (in reviewing whether district court had ancillary jurisdiction, "[w]e undertake a plenary review of dismissals for lack of subject matter jurisdiction"); In re Asbestos Prod. Liab. Litig., 536 F. App'x 183, 185 (3d Cir. 2013) (footnote omitted) (de novo review of denial of motion to remand "because whether subject matter jurisdiction exists is a legal question over which we exercise plenary review").

20

This Court exercises plenary review over questions of mootness. <u>Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly</u>, 815 F.2d 912, 914 (3d Cir. 1987).

**SUMMARY OF ARGUMENT**

1.     The district court's denial of Plaintiffs' motion to remand based on ancillary jurisdiction is erroneous. In Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994), and Peacock v. Thomas, 516 U.S. 349, 354 (1996), the Supreme Court limited the use of ancillary jurisdiction in subsequent proceedings to enforcement of judgments – not to serve as a jurisdictional basis for new claims that will not have any effect on a recovery from the underlying settlement. In such cases, there must be independent Article III subject matter jurisdiction, which is not existent here. Moreover, the district court utilized an overly broad standard for ancillary jurisdiction that was explicitly rejected in Peacock.

2.     This Court should certify questions of law to the New Jersey Supreme Court regarding R. 1:21-7(i)'s application to MDLs and other mass torts actions. No published New Jersey case addresses this important court rule, and it was not addressed by this Court in Martino, 2023 WL 1990306, (Pa149), where affirmance by the Third Circuit was based solely on pleading deficiencies.

3.     The district court erred, by ruling, *sua sponte*, that Plaintiffs were collaterally estopped by the Third Circuit's decision in Martino, 2023 WL 1990306 (Pa149), based on the doctrine of virtual representation. The district court's reliance on virtual representation is in direct conflict with the Supreme Court's decision in

<u>Taylor</u>, 553 U.S. 880, which explicitly rejected the notion of premising privity on this doctrine for the purposes of establishing collateral estoppel.

The district court further erred by ruling, <u>*sua sponte*</u>, that Plaintiffs' claims are collaterally estopped by the Third Circuit's decision in *Martino*, as this Court affirmed dismissal based solely on pleading errors, and never addressed: (i) whether <u>R.</u> 1:21-7(i) applies to MDLs and other mass torts; and (ii) whether common benefit fees should be considered in an application for approval of reasonable fees on an aggregate recovery in excess of $3 million, pursuant to the Reasonableness Rules and <u>R.P.C.</u> 1.5(a); and (iii) whether the receipt of common benefit fees for work that would have been performed in individual cases renders the full contingent fee unreasonable pursuant to the Reasonableness Rules and <u>R.P.C.</u> 1.5(a).

4.    <u>R.</u> 1:21-7(i) is applicable to MDLs and other mass torts. Thus, in the Benicar MDL, Defendants were obligated to calculate their attorney's fees based on the aggregate recovery of all of their clients – not based on each client's individual recovery, which Defendants actually did. The rule's applicability to MDLs flows from its plain language and also its purpose – namely, to prevent counsel from receiving a windfall when, as here, the "respective claims… arise out of the same transaction or set of facts or involve substantially identical liability issues." <u>R.</u> 1:21-7(i). A single liability expert was used for all the plaintiffs involved and the work

23

performed in the MDL benefits all individual clients who paid a full contingent fee under R. 1:21-7.

Not only are common benefit fees a factor in determining if individual contingent fee agreements are unenforceable, counsel fees on any aggregate recovery in excess of three million dollars is also subject to the Reasonableness Rules and R.P.C. 1.5(a). When considering the reasonableness of such an application, courts must consider and take into account any common benefit fees which, as here, counsel received.

5.     Plaintiffs properly alleged that Defendants overcharged them in the Benicar MDL. Much of Defendants' work in the Benicar MDL benefited not merely their own, individual clients, but *all* the plaintiffs in the Benicar MDL. This includes, for example, selection of experts, discovery of key defense witnesses, document review, motion practice and status conferences, where the same work product could be used for *all* the Benicar MDL plaintiffs and all major discovery would benefit individual clients. Despite being paid through the common benefit fund, Defendants charged their clients for the very same work under their individual retainer agreements. Defendants were therefore paid twice for the identical work, in breach of their clients' individual retainer agreements.

6.     The district court erred by dismissing as moot Plaintiffs' motion for sanctions against Defendants pursuant to N.J.S.A. 2A:53A-41(f) for threatening

24

Plaintiffs' expert. Regardless of whether Defendants' motion for judgment on the pleadings should have been granted – and it should not have been – Defendants' attempts to intimidate Plaintiffs' expert, including the filing of a motion for sanctions directly against him, are violative of the statutory protection of experts filing affidavits of merit.

## LEGAL ARGUMENT

### I.   THE DISTRICT COURT ERRED BY DENYING PLAINTIFFS' MOTION TO REMAND

"[T]he doctrine of ancillary jurisdiction [] recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." <u>Kokkonen</u>, 511 U.S. at 378. Normally, "a federal court may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."" <u>Peacock</u>, 516 U.S. at 354, <u>quoting</u> <u>Kokkonen</u>, 511 U.S. at 379-80.[7]

However, as this Court has explained, in <u>Peacock</u>, the Supreme Court:

> [W]as careful to note that it had "**reserved the use of ancillary jurisdiction <u>in subsequent proceedings</u> for the exercise of a federal court's inherent power to enforce its judgments.**"

---

[7] Ancillary jurisdiction overlaps with supplemental, or pendant, jurisdiction because "[c]ongress codified much of the common-law doctrine of ancillary jurisdiction as part of "supplemental jurisdiction" in 28 U.S.C. § 1367." <u>Peacock</u>, 516 U.S. at 354 n. 5. Accordingly, this Court has held that "[w]e do not see the relevant inquiries for ancillary and supplemental jurisdiction as separate; if the District Court had ancillary jurisdiction, it also had supplemental jurisdiction under 28 U.S.C. § 1367." <u>IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.</u>, 438 F.3d at 309.

IFC Interconsult, AG, 438 F.3d at 312, quoting Peacock, 516 U.S. at 356 (emphasis added). Accord Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela, 932 F.3d 126, 138 (3d Cir. 2019), cert. den., 140 S. Ct. 2762 (2020) (same).

Importantly, ancillary jurisdiction does not serve as an independent basis for subject matter jurisdiction. Kokkonen, 511 U.S. at 382. Thus, if ancillary jurisdiction is asserted in the "primary lawsuit," the court must already have an independent basis for jurisdiction "before it may assert jurisdiction over ancillary claims" and:

> In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction . . . **Consequently, claims alleged to be factually interdependent with and, hence, ancillary to claims brought in an earlier federal lawsuit will not support federal jurisdiction over a subsequent lawsuit.**

Peacock, 516 U.S. at 355 (emphasis added). In other words, "any exercise of supplemental jurisdiction must meet the requirements of Article III's "case or controversy" standard." In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 301 (3d Cir. 1998), cert. den., 525 U.S. 1114 (1999). See also 28 U.S.C. § 1367(a) (allowing for supplemental jurisdiction so long as the jurisdictional requirements of Article III are already met).

Here, the district court held that:

> [T]he underlying dispute—attorneys fees [sic]—is an *ancillary* issue to the [Benicar] MDL claims—all product

27

> liability issues. Accordingly, this Court has and does retains [sic] ancillary jurisdiction **over all issues not central to the products liability issues** of the MDL, which, without doubt, include the fee dispute here.

(Pa14, italics in original, bold added). See also (Ibid.) ("federal courts retain jurisdiction over those matters incidental to the central legal matters before them"); (Pa17) (this Court retains ancillary jurisdiction over matters relating to the MDL settlement and particularly fee awards"). This holding is erroneous for multiple reasons.

Initially, the district court relies upon a much broader standard for ancillary jurisdiction which was explicitly rejected by the Supreme Court, namely:

> [A] bill filed to continue a former litigation in the same court ... to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties ... or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court.

(Pa14, quoting Kokkonen, 511 U.S. at 379, quoting Julian v. Cent. Tr. Co., 193 U.S. 93, 113-14 (1904), internal quotation marks omitted). However, the district court simply glosses over the fact that *in the very next line*, the Supreme Court rejected "the expansive language of *Julian*," finding:

> [W]e think [ancillary jurisdiction] does not stretch so far as that statement suggests… The holding of *Julian* was not remotely as permissive as its language: Jurisdiction was based upon the fact that the court, in a prior decree of foreclosure, had *expressly reserved* jurisdiction to

28

> adjudicate claims against the judicially conveyed property, and to retake and resell the property if claims it found valid were not paid.

Kokkonen, 511 U.S. at 379 (emphasis in original). It then went on to provide the far narrower standard set forth above. See Kokkonen, 511 U.S. at 379-80; Peacock, 516 U.S. at 354. Accordingly, the district court's ruling is premised on a misreading and misapplication of Kokkonen.

The district court also failed to limit its use of ancillary jurisdiction to *enforce* the actual terms of any order or judgment from the Benicar MDL. This is because the allegations in this case concern new causes of action which were not – and could not have been – addressed in the Benicar MDL. The Defendants in this case are not those from the Benicar MDL, and if Plaintiffs' claims are meritorious, it will have no effect on the plaintiffs' settlements from the Benicar MDL. The Supreme Court has cautioned against using ancillary jurisdiction "over proceedings that are entirely new and original… or where the relief [sought is] of a different kind or on a different principle than that of the prior decree." Peacock, 516 U.S. at 358 (quotations and internal quotation marks omitted). That, however, is precisely what the district court did. See also, e.g., Boim v. Am. Muslims for Palestine, 9 F.4th 545, 552 (7th Cir. 2021) (quotation omitted) (the Court ""clarified [in Peacock] that ancillary enforcement jurisdiction did not extend over "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that

29

judgment"""); Hudson v. Coleman, 347 F.3d 138, 142 (6th Cir. 2003) ("The Court cautioned [in Peacock] that the recognition of ancillary supplementary proceedings has not extended beyond attempts to execute, or guarantee the eventual executability of a federal judgment").

Nor did the district court set forth an independent basis of Article III jurisdiction, and the scattered sentences from various cases it relies upon are unavailing. In Marino v. Pioneer Edsel Sales, Inc., 349 F.3d 746, 752-63 (4th Cir. 2003), the district court's jurisdiction was specifically premised upon the class action's order of final settlement stating that the "Court shall have and retain exclusive jurisdiction with respect to … any applications or disputes concerning attorney's fees … which may arise." In In re Prudential Ins. Co. of Am. Sales Prac. Litig., 261 F.3d 355, 367 (3d Cir. 2001), as well, in "its Final Order and Judgment the district court expressly retained exclusive jurisdiction to oversee the implementation of the settlement and the judgment."

These cases are inapposite. The Supreme Court explained in Kokkonen that absent the parties specifically incorporating the settlement agreement and/or its terms into the order of dismissal, see 511 U.S. at 380-81, what results is that:

> Enforcement of [a] settlement agreement, [] whether through award of damages or decree of specific performance, **is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis of jurisdiction.**

30

Kokkonen, 511 U.S. at 378 (emphasis added). Here, the district court does not even attempt to demonstrate that it satisfies these requirements.

The single line relied upon from Jenkins v. Kansas City Missouri Sch. Dist., 516 F.3d 1074, 1081 (8th Cir. 2008), as corrected, (Mar. 27, 2008), in turn, is actually a quotation from Kokkonen, and as already explained, the district court has not followed the standard or requirements for ancillary jurisdiction approved by the Supreme Court.

In re Linerboard Antitrust Litig., 361 F. App'x 392, 399 (3d Cir. 2010), is also inapposite. At issue there was an order prohibiting further state litigation pursuant to the "All Writs Act" (the "AWA"), 28 U.S.C. § 1651(a). This Court held that the district court had authority to enforce the order "even after the [class action] terminated" because "the District Court expressly retained jurisdiction over "all issues relating to the fees and costs of counsel in this action."" Id. at 399. This was necessary to establish subject matter jurisdiction because "the All Writs Act does not confer jurisdiction on the federal courts, [and] it cannot confer the original jurisdiction required to support removal pursuant to § 1441." Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 33 (2002). Parties "may not, by resorting to the All Writs Act, avoid complying with the statutory requirements for removal." Id. at 32.[8]

---

[8] The remaining cases relied upon by the district court are no more availing because none of them address ancillary jurisdiction over claims when there is no pre-existing Article III case or controversy or whether that doctrine encompasses claims in a

## II. THE DISTRICT COURT ERRED BY GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### a. Standard Governing Motions For Judgment On The Pleadings Pursuant to Rule 12(c)

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss. <u>Revell v. Port Auth. of New York, New Jersey</u>, 598 F.3d 128, 134 (3d Cir. 2010). To survive a motion to dismiss, a complaint "does not need detailed factual allegations," <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007), but only "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Fed. R. Civ. P.</u> 8(a). It must only "provide the "grounds" of [plaintiff's] "entitle[ment] to relief… in order to "give the defendant fair notice of what the ... claim is."" <u>Twombly</u>, 550 U.S. at 555 (citations omitted). This only requires sufficient facts to rise above the level of "mere possibility," and "nudge[] [a plaintiff's] claims across the line from conceivable to plausible," and "do[es] not require heightened fact pleading of

---

subsequent action limited solely to attorney's fees and not the underlying settlement. <u>See</u> (Pa14). The district court relied on <u>Fox v. Consol. Rail Corp.</u>, 739 F.2d 929, 930 (3d Cir. 1984), <u>cert. den.</u>, 469 U.S. 1190 (1985) and <u>Aro Corp. v. Allied Witan Co.</u>, 531 F.2d 1368, 1371 (6th Cir. 1976), <u>cert. den.</u>, 429 U.S. 862 (1976), for a single line it finds favorable, which had nothing to do with the holding in either case. <u>Fox</u>, 739 F.2d at 930, turned on whether a federal court is permitted to reopen cases originally brought and settled in a state court, and <u>Aro Corp.</u>, 531 F.2d at 1371, involved a <u>Fed. R. Civ. P.</u> 60 motion brought within one month to the same court which approved the settlement. Finally, the district court's quotation of a single line from <u>Peacock</u>, 516 U.S. at 354, is of no moment because, as discussed above, it relies on a standard directly contrary to the one approved by the Supreme Court.

32

specifics." Id. at 557, 570. Allegations fail to achieve plausibility when they are so devoid of any factual content so as to be no more than purely "speculative," "suspicio[us] and "conclusory," such as "blanket assertion[s]," "bare averment[s]" and "formulaic recitation[s] of the elements of a cause of action." Id. at 555 and n. 3 (citations omitted).

A court must operate "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)… even if it appears "that a recovery is very remote and unlikely,"" id. at 555 (citation omitted), and all reasonable inferences must be accorded to the non-moving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

### b. The District Court's Reliance on Collateral Estoppel Was Erroneous

The district court erred by granting Defendants' motion for judgment on the pleadings by finding, *sua sponte*, that Johnson's claims are barred by collateral estoppel, as none of Plaintiffs' claims satisfy all four prongs of this doctrine, as is always required.

In order for collateral estoppel to apply, all the following elements must be met:

1) the issue decided in the prior adjudication must be identical with the one presented in the later action;

2) there must have been a final judgment on the merits;

33

3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and

4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication.

Witkowski v. Welch, 173 F.3d 192, 199 (3d Cir. 1999). While collateral estoppel was not raised or discussed in the parties' submissions, the district court ruled, *sua sponte*, that all of Plaintiffs' claims are collaterally estopped by this Court's decision in Martino, 2023 WL 1990306. (Pa19-Pa21). In so ruling, the district court did not analyze whether each of Plaintiffs' claims individually satisfies all the elements of collateral estoppel, as is always required. Instead, the district court erroneously ruled that "[b]ut for the names and state citizenship of the plaintiffs here, **this action is identical to [*Martino*],**" (Pa19, emphasis added), and therefore "[p]rongs 1, 2, and 4 [of the collateral estoppel standard] are met." (Pa20). See also (Pa19) ("The motion turns exactly on the same claims and point of law decided in [*Martino*]"); (Pa20) ("motion ha[s] identical claims as in [*Martino*]"); (Pa21) ([*Martino*] and this action have identical claims"). This is clearly erroneous.

### i. The Identical Issues Prong Of Collateral Estoppel Is Not Satisfied

The district court's holding that the first prong of collateral estoppel is satisfied is erroneous because it relies on this Court's holding in *Martino*. However, as already noted, this Court's decision in *Martino* was based on pleading deficiencies

34

and *did not rule*, for example, that <u>R.</u> 1:21-7(i) is inapplicable to the Benicar MDL.

Without question the two complaints set forth different claims and the Third Circuit

made clear that the complaint in *Martino* did not even state a claim for relief with

respect to the applicability of <u>R.</u> 1:21-7(i):

> The complaint fails to state a claim for relief under Rule 1:21-7(c) because Martino has not alleged any facts, let alone plausible ones, showing that Mazie Slater violated the rule. . . . Martino has not alleged that he or Mazie Slater's other individual MDL clients recovered an amount requiring court approval (more than $3 million in damages).
>
> <p align="center">*   *   *</p>
>
> The complaint alleges no facts that, taken as true, entitle Martino to relief under Rule 1:21-7(i). **The complaint says nothing about the liability issues implicated by Mazie Slater's MDL clients' claims.** It does assert that Mazie Slater represented each member of the putative class in the Olmesartan MDL. But that doesn't show a violation of the rule.

(Pa150-Pa151, emphasis added). Accordingly, the Third Circuit never addresses in

*Martino* whether <u>R.</u> 1:21-7(i) is inapplicable to multi-district litigation.

In so narrowly ruling, this Court provided a roadmap for alleging a cause of

action for relief under <u>R.</u> 1:21-7(i), which Plaintiffs followed in the instant litigation.

For example, to correct the pleading deficiencies found by the Third Circuit

regarding whether Defendants recovered over $3 million in fees for its clients and

<p align="center">35</p>

liability issues implicated by the Firm's Benicar MDL clients' claims, <u>see</u> (Pa150-Pa151), Plaintiffs now allege:

> The litigation [in the Benicar MDL] involved claims involving the prescription drug Benicar **and the same liability experts were utilized by defendants to litigate all of their cases. The Benicar cases handled by defendants arose "out of the same transaction or set of facts or involve substantially identical liability issues"** and under R. 1:21-7(i) the contingent fee that could be charged "shall be calculated on the basis of the aggregate sum of all recoveries," whether by judgment, settlement, or both, and shall be charged to the client in proportion to the recovery of each." **Further, pursuant to R. 1:21-(c)(5) defendants were obligated to apply for a reasonable fee in excess as $3 million. In fact, defendant did recover an aggregate in excess of $3 million on their Benicar cases and failed to apply to the court for a reasonable fee award for the aggregate recovery as required by the contingent fee Rules.**

(Pa46, ¶ 34, emphasis added). <u>See also</u> (Pa47-Pa48, ¶¶ 36, 39-42).

What's more, the complaint in this action asserts claims which were never alleged in *Martino*, and thus could not have been decided in the prior case: common benefit fees and full contingent fees under individual retainer agreements constitute double recovery and violate the "reasonableness" standard under the Reasonableness Rules and <u>R.P.C.</u> 1.5(a), <u>see</u> (Pa47, ¶ 37); Defendants' double recovery constitutes a breach of contract, <u>see</u> (<u>ibid.</u>, ¶ 38); Defendants were required to apply to the court for a reasonable fee on an aggregate recovery in excess of $3 million, <u>see</u> (Pa46, ¶ 34); common benefit fees must be considered by a court when considering an

36

application for fees for aggregate recoveries pursuant to R. 1:21-7(i) in excess of $3 million, see (Pa46-Pa47, ¶¶ 34, 36-38), and; the same liability experts were utilized by Defendants to litigate all of their cases and that the expert fees for these liability experts were not properly allocated in the Benicar MDL. See (Pa46, ¶ 34; Pa48, ¶ 40). All of these allegations were not made in *Martino,* as made clear by the Third Circuit. See (Pa113-Pa115, ¶¶ 18-32).

In addition to the foregoing, the Third Circuit clearly explained that it was only addressing *part* of R. 1:21-7(i) because:

> Martino does not argue on appeal that the claims of Mazie Slater's MDL clients "ar[o]se out of the same transaction or set of facts." So we must decide **only** whether Martino's complaint plausibly alleges that those claims "involve[d] substantially identical liability issues."

(Pa150-Pa151, quoting R. 1:21-7(i), footnote omitted, emphasis added). Thus, the Third Circuit's decision has no bearing on the present action which expressly pled that: (i) the claim arises out of the same transaction or set of facts *and* involved substantially identical liability issues, and (ii) that the aggregate recovery exceeded $3 million. See (Pa46, ¶ 34).

### ii.    The Final Judgment On The Merits Prong Is Not Satisfied

That the district court's holding that the second prong of collateral estoppel is satisfied is also erroneous. Since the Third Circuit's decision was based on pleading deficiencies, it did not issue a final judgment on the merits of the substantive issues.

Moreover, it is impossible for the Third Circuit to have ruled on those allegations asserted *for the first time* in the instant action.

### iii. The Identical Party/Privity Prong Of Collateral Estoppel Is Not Satisfied

The district court was forced to admit that "**plaintiffs here are not the same**" as in *Martino*, and do not satisfy the test for privity, and thus the third prong of collateral estoppel *is not satisfied*. (Pa20, emphasis added). This comes as no surprise given that a <u>new</u> complaint was filed on behalf of 21 new Plaintiffs. In order to avoid this obvious difficulty, and fulfill the third prong of collateral estoppel, the district court claimed to follow the "guidance" of both the Supreme Court and this Court regarding the evolving dilution of privity, and consequently relying on the concept of "virtual representation," (Pa20-Pa21) – a concept which, the district court claimed, has been "vindicated" by the Supreme Court. (Pa20, n. 6). This too is erroneous.

Relying on the Supreme Court's decision in <u>Taylor</u>, 553 U.S. 880 and this Court's decision in <u>Nationwide Mutual Fire Ins. Co. v</u>, 571 F.3d 299, the district court explained that this guidance provides that:

> [T]he definition of privity [] over time "**has loosened to the point that the word is now used as 'way to express the conclusion that nonparty preclusion [i.e. collateral estoppel] is appropriate on any ground**' " *Nationwide Mutual Fire Ins. Co. v. George V. Hamilton, Inc.* 571 F. 3d 299, 311 (3d Cir. 2009) [*quoting Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2172, n. 8.(2008)]. This

38

> loosening of the definition introduced the concept of "virtual representation" of privity.

(Pa20, emphasis added). Based on the erroneous finding that both cases involved "identical claims," the district court held the third prong satisfied, finding that the plaintiffs in *Martino*:

> [S]erved as the virtual representative of the *Johnson* plaintiffs because "there is such an identification of interest between the two as to represent the same legal right". *Nationwide Mutual*, 571 F.3d at 311 [*quoting Collins v. E.I. DuPont de Nemours & Co.* 34 F.3d 172, 176 (3d. Cir. 1994)] . . .
>
> All plaintiffs in this action as well as those in [*Martino*] are in "privity" with each other because: all plaintiffs in both actions signed contingency fee agreements with defendants and participated in the Olmesartan settlement; and all plaintiffs in both actions were awarded an Olmesartan settlement amount from which defendants collected their contingency fee.

(Pa20-Pa21, footnote omitted). As argued, <u>supra</u>, the claims are not identical.

The district court's reliance on virtual representation to satisfy the third prong of collateral estoppel, however, finds absolutely no justification in <u>Taylor</u> or <u>Nationwide Mutual Fire Ins. Co.</u> The Supreme Court's ruling in <u>Taylor</u> was the polar opposite of how it is presented by the district court:

> **We disapprove the doctrine of preclusion by "virtual representation."**

39

See 553 U.S. at 885 (emphasis added).[9] See also Taylor, 553 U.S. at 905 ("we disapprove the theory of virtual representation"). If any doubt were left, the Supreme Court subsequently ruled that in Taylor "**[w]e rejected the theory [of virtual representation] unanimously**." Smith v. Bayer, 564 U.S. 299, 315 (2011) (emphasis added). Following the Supreme Court's ruling in Taylor, this Court held:

> **[T]he very use of the term "virtual representation" is suspect.**

Nationwide Mutual Fire Ins. Co., 571 F.3d at 312 (emphasis added).

The portions of Taylor and Nationwide Mutual Fire Ins. Co. relied upon by the district court regarding the definition of privity ""loosen[ing]"" to the point where collateral estoppel ""is appropriate on any ground"" provide no basis for its ruling. (Pa20, quoting Taylor, 553 U.S. at 894 n. 8 and Nationwide Mutual Fire Ins. Co., 571 F.3d at 311, footnote omitted). In reality, those statements were made *to decry* the "expansive doctrine of virtual representation," which was plainly rejected. Taylor, 553 U.S. at 896.

In Taylor, the Supreme Court examined various versions of virtual representation – all of which were rejected for multiple reasons. By way of example, it held that virtual representation results in "an amorphous balancing test [that] is at odds with the constrained approach to nonparty preclusion our decisions advance."

---

[9] In Taylor, the Supreme Court explained that collateral estoppel would be referred to by the alternative name of "issue preclusion." See 553 U.S. at 892 and n. 5.

Id. at 898. It further held that virtual representation would, in effect, recognize ""a common-law kind of class action" … shorn of the procedural protections… of Rule 23." Id. at 901 (quotation omitted). Virtual representation, it also found, is premised on "a standard that provides no firm guidance" and "would likely create more headaches than it relieves," including "significantly complicat[ing] the task of district courts faced in the first instance with preclusion question." Ibid.

In rejecting virtual representation, Taylor ruled that exceptions to ordinary privity in collateral estoppel are few, ordinarily represented by six categories: (1) when a non-party agrees to be bound by the earlier determination; (2) when there is a preexisting substantive legal relationship with the non-party, such as with preceding and succeeding property owners; (3) adequate representation of the non-party by someone with the same interests, such as unnamed class members in "properly conducted class actions"; (4) when the non-party assumed control over the litigation; (5) re-litigation through proxy, and; (6) where a special statutory scheme forecloses successive litigation. Id. at 894-95.

None of those categories are applicable here, nor did the district court mention or discuss any of them. Nevertheless, it should be noted that even though *Martino* was a proposed class action, this matter does not fall within the class action exception. In Smith, defendants attempted to bar plaintiff's claims, arguing that pursuant to Taylor he was bound by the ruling in a previous class action as an

41

unnamed class member. See 564 U.S. at 304-05. The Supreme Court rejected this argument because the earlier class action was never certified:

> In these circumstances, we cannot say that a properly conducted class action existed at any time in the [earlier] litigation. Federal Rule 23 determines what is and is not a class action in federal court… So in the absences of a certification under the Rule, the precondition for binding [plaintiff] was not met. **Neither a proposed class action nor a rejected class action may bind nonparties**… To allow [the previous] suit to bind nonparties would be to adopt the very theory *Taylor* rejected.

Smith, 564 U.S. at 315-16 (footnote omitted, emphasis added). Since *Martino* was never certified, Plaintiffs are not in privity with the plaintiff in that case. (Pa151).

### iv.  The Full And Fair Opportunity To Litigate Prong Is Not Satisfied

The district court's holding that the fourth prong of collateral estoppel is satisfied is also erroneous. Plaintiffs did not have had a full and fair opportunity to litigate their claims because, for example, the decision in *Martino* was based on pleading deficiencies and not the substance of the claims; Plaintiffs assert new claims here which were never asserted in *Martino*; and critically the claims asserted in *Martino* and the new claims asserted in this action were never adjudicated on the merits.

### c.  Collateral Estoppel Is Not Supported By Equitable Considerations

The district court's attempt to support its ruling based on equitable considerations is similarly erroneous. The district court supports its reliance on

equitable considerations by stating in conclusory fashion that ""[i]n the end, the decision [whether estoppel applies] will necessarily rest on the trial court's sense of justice and equity."" (Pa21 n. 7, quoting Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found., 402 U.S. 313, 333-34 (1971)). However, this too is directly contradicted by Taylor, where the Supreme Court addressed and rejected the very same argument based on the very same line in Blonder-Tongue:

> This passing statement, however, was not made with nonparty preclusion in mind; it appeared in a discussion recognizing district courts' discretion to *limit* the use of issue preclusion against persons who *were* parties to a judgment. See *Blonder–Tongue,* 402 U.S., at 334, 91 S.Ct. 1434.

Taylor, 553 U.S. at 899 (emphasis in original).

## III. THIS COURT SHOULD CERTIFY TWO QUESTIONS OF LAW TO THE NEW JERSEY SUPREME COURT

In the event this Court does not reverse the district court's denial of Plaintiffs' motion to remand, Plaintiffs move this Court to certify to the Supreme Court of New Jersey two questions: (i) whether R. 1:21-7(i) applies to MDL and mass tort litigation; and (ii) whether common benefit fees should be considered: (a) in an application for approval of reasonable fees on an aggregate recovery in excess of $3 million, pursuant R. 1:21-7(c)(5) and (f) and R.P.C. 1.5(a), and (b) in determining if Defendants breached their contingency fee agreements with individual clients as a

43

full contingent fee would constitute double recovery and be unreasonable pursuant to R. 1:21-7(b) and (e) and R.P.C. 1.5(a).

This Court's L.A.R. Misc. 110.1 provides that "[w]hen the procedures of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, *sua sponte* or on motion of a party, may certify such a question to the state court." Such a procedure exists, as the Supreme Court of New Jersey may answer a question of law certified to it by this Court "if the answer may be determinative of an issue in litigation pending in the Third Circuit and there is no controlling appellate decision, constitutional provision, or statute in this State." R. 2:12A-1. All of the foregoing criteria, as well as others identified by this Court, are fulfilled here, and therefore certification is appropriate.

One key aspect of this appeal is the proper interpretation of a provision of R. 1:21-7 – which regulates the maximum amount of contingent fees attorneys may charge their clients – and whether common benefit fees must be considered as a factor in awarding a reasonable fee for all aggregate recoveries in excess of three million dollars and whether the common benefit fee should be considered in determining whether a full contingent fee would be unreasonable under individual contingent fee agreements. The proper calculation of contingent fees is a fundamental issue which affects numerous attorneys practicing in New Jersey, and

44

as such, "the policy of this rule is regarded as a matter of compelling state interest." Pressler & Verniero, <u>N.J. Court Rules</u> (Gann 2022), comment to <u>R.</u> 1:21-7, p. 283. Thus, it is clear that "th[is] case raises [] serious… issue[s] of New Jersey law." <u>Delta Funding Corp. v. Harris</u>, 426 F.3d 671, 671 (3d Cir. 2005) (footnote omitted). <u>See</u> <u>also</u> <u>U.S. v. Defreitas</u>, 29 F.4th 135, 143 (3d Cir. 2022) (certification proper when question raises "important issues of state policy"); <u>City of Asbury Park v. Star Ins. Co.</u>, No. 18-3261, 2019 WL 9105722, at \*3 (3d Cir. Aug. 12, 2019) (certification proper when question is "fraught with public policy implications").

<u>R.</u> 1:21-7(i) has not been the subject of any published New Jersey decision. <u>See</u> <u>Estate of Faheem Williams v. Division of Youth and Family Services</u>, No. ESX-L-83-05, 2006 WL 4469674 (L. Div. Mar. 30, 2006), <u>rev'd</u>, <u>In re Est. of F.W.</u>, 942 A.2d 48, 51 n. 3, 398 N.J. Super. 344, 350 n. 3 (N.J. App. Div. 2008) (Appellate Division mentions <u>R.</u> 1:21-7(i) in a footnote). And, as already discussed at greater length above, in *Martino*, this Court did not address the applicability of <u>R.</u> 1:21-7(i) to mass tort and/or MDL litigation, or whether and how common benefit fees should be considered for applications for aggregate fees in excess of three million dollars and/or to determine whether a full contingent fee would be reasonable under <u>R.P.C.</u> 1.5(a) and the Reasonableness Rules, but instead affirmed based on pleading deficiencies. (Pa150-Pa151). Certification is clearly mandated as these questions represent undecided issues of New Jersey law. <u>See</u> <u>Delta Funding</u>, 426 F.3d at 671

45

(footnote omitted). See also Walfish v. Nw. Mut. Life Ins. Co., No. 19-2105, 2020 WL 9433211, at *1 (3d Cir. Aug. 11, 2020) (certifying question to New Jersey Supreme Court because "[w]e have not found any binding legal authority that squarely addresses the questions presented in this case"); City of Asbury Park, 2019 WL 9105722 at *2 (certifying question of law to New Jersey Supreme Court because "[t]he only New Jersey precedent providing any indication [of the answer] one way or the other is [one]… in which the Appellate Division… provide[d] limited guidance… [and the decision] primarily concerned a different legal issue"). The lack of any apposite precedent renders R. 1:21-7(i)'s application to MDLs "unclear" – a "**first-order considerations [which] will often be dispositive.**" Defreitas, 29 F.4th at 141 (emphasis added).

The issues to be certified – whether in an MDL or any other mass tort case – are issues "that will commonly recur." Defreitas, 29 F.4th at 143. See also City of Asbury Park, 2019 WL 9105722 at *4. Since R. 1:21-7(i) is explicitly incorporated into New Jersey's Local Federal Rules which provide that "[a] lawyer admitted pro hac vice is deemed to have agreed to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees[,]" the issues raised in this appeal will definitely recur in the future. L.Civ.R. 101.1(c)(4).

In such situations, this Court has held that "the New Jersey Supreme Court is best suited to answer [important and unresolved legal] questions," and certification

46

is proper when "they exclusively involve interpreting state law and determining New Jersey public policy." Walfish, 2020 WL 9433211 at *1. See also City of Asbury Park, 2019 WL 9105722 at *4 ("important and unresolved under New Jersey law… should be addressed in the first instance by an authoritative opinion of the Supreme Court of New Jersey"); Sun Chem. Corp. v. Fike Corp., No. 18-1062, 2019 WL 9525200, at *5 (3d Cir. Apr. 18, 2019) ("In certifying the questions below, we underscore the economic significance we perceive is attached to our resolution of [plaintiff's] claim"). See also, Bank Leumi USA v. Kloss, No. 18-3220, 2019 WL 9526852, at *1-*2, *5 (3d Cir. Aug. 12, 2019).

Certifying questions of law to the New Jersey Supreme Court is also supported by "judicial economy." Defreitas, 29 F.4th at 142. "Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court will save 'time, energy, and resources and help build a cooperative judicial federalism.'" Arizonans for Official English v. Arizona, 520 U.S. 43, 77 (1997) (citations omitted). Without question, that is the case here, as the answer to whether R. 1:21-7(i) applies to MDLs – and how common benefit fees interact with fees on aggregate and/or individual recoveries "control [] issue[s] in th[is] case." Defreitas, 29 F.4th at 141.

"**[T]he presence of even one [of these factors] may weigh on the decision to certify.**" Defreitas, 29 F.4th at 143 (emphasis added). Here, all of the legal

47

grounds for certification are present. For these reasons, this Court should certify the questions of law to the New Jersey Supreme Court as to the interpretation of R. 1:21-7(i) as it applies to MDLs and mass tort litigation and all contingent fee agreements where an attorney receives compensation for work which would be performed for each individual client under the contingent fee retainer agreement.

## IV.   NEW JERSEY COURT RULE 1:21-7(i) IS APPLICABLE TO MDL AND MASS TORT LITIGATION

In the event this panel reverses the dismissal based upon the erroneous application of collateral estoppel, and elects not to certify questions of law to the New Jersey Supreme Court, the panel should address the substantive issues and provide guidance on remand.

The purpose and plain reading of R.1:21-7(i) reveals why attorney's fees in a mass tort setting must be based upon an aggregation of all settlements: the work product of lead counsel involved in establishing liability for all MDL or mass tort plaintiffs is the exact same work that would be performed for each individual plaintiff if the cases were not consolidated in an MDL or mass tort structure. Other than the medical and damage facts which are individual, the expert and fact discovery benefits all plaintiffs and the efforts of lead counsel are richly compensated with common benefit fees. Attorneys should not be permitted to be rewarded multiple times for work performed which benefits all the plaintiffs. To hold otherwise would result in a gross windfall for Defendants, ignores the

48

economies of scale that result from using the same experts and conducting the same discovery that benefits all mass tort plaintiffs and results in redundant payment of fees for the same work performed to establish liability.

This conclusion is further supported by R. 1:21-7(i)'s plain language. The New Jersey Supreme Court has repeatedly held that "[w]e apply familiar canons of statutory construction to interpret the court rules... We look first to the plain language of the rules and give the words their ordinary meaning." Robertelli v. N.J. Off. of Atty. Ethics, 134 A.3d 963, 971, 224 N.J. 470, 484 (N.J. 2016). Federal courts interpreting New Jersey's court rules do the same. See, e.g., Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 135 (3d Cir. 2002); Mocco v. Frumento, No. CV121458ESJAD, 2016 WL 10585998, at *10 (D.N.J. Apr. 14, 2016).

Here, R. 1:21-7(i) provides that attorney's fees must be calculated based on the aggregate recovery when the respective claims "arise out of the same transaction or set of facts or involve substantially identical liability issues." R. 1:21-7(i) is also explicitly incorporated into New Jersey's Local Federal Rules, which provide that "[a] lawyer admitted pro hac vice is deemed to have agreed to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees." L.Civ.R. 101.1(c)(4) (emphasis added). See also Halley v. Honeywell Int'l, Inc., 861 F.3d 481, 499 (3d Cir. 2017) ("Lawyers practicing before the District Court are well aware

49

contingent fee agreements will be subject to the limitations of Rule 1:21-7 as incorporated in the Local Rules.").

R. 1:21-7(i)'s applicability is not based on the number of individual *cases* involved. Instead, by its plain language, its applicability is based on whether the "respective claims" of "several persons" – also referred to as "clients" – "arise out of the same transaction or set of facts or involve substantially identical liability issues" – "whether or not [the claims are] joined in one action." R. 1:21-7(i) (emphasis added). The plain language effectuates the purpose of R. 1:21-7(i), which is to avoid giving attorneys a windfall when they represent numerous individuals whose claims involve substantially identical liability issues, and thus, the work to establish liability will be substantially similar, if not identical.

This is especially so in mass torts and MDLs, where an attorney may represent hundreds or thousands of individual clients and will perform work which benefits all of them. For example, to establish liability in any mass tort involving a single drug, the same experts and discovery will be identical. Here, the Short Form Complaint used in the Benicar MDL pled numerous causes of action including liability based upon a failure to warn arising from the label. (Pa205). This failure to warn cause of action may be established with the single expert who opines regarding the adequacy of the disclosures. Thus, one expert will be used to establish liability under this cause of action and this work product will be used **in every single case** in the MDL. This is

50

precisely why R. 1:21-7(i), in plain language, aggregates the sum of all the individual recoveries.

The key issue in this case is whether R. 1:21-7(i) governs MDLs – something which obviously requires "interpretation of a court rule [which] is a legal issue" – and must therefore be decided as a matter of law based on R. 1:21-7(i)'s plain language and purpose. St. v. Anthony, 129 A.3d 1085, 1092, 443 N.J. Super. 553, 564 (N.J. App. Div. 2016), cert. den. 135 A.3d 149, 224 N.J. 529 (N.J. 2016).

Scholarly treatment of R. 1:21-7(i) supports the view that it applies to mass tort litigation and MDLs. For example, one scholar has discussed R. 1:21-7(i)'s applicability to attorney's fees in mass tort asbestos litigation, which, for example, has resulted in "mass consolidations of asbestos claims into mega-cases involving hundreds and even thousands of claims." Lester Brickman, *The Asbestos Litigation Crisis: Is There A Need for an Administrative Alternative?* 13 Cardozo L. Rev. 1819, 1840 (1992) (footnote omitted) (emphasis added). In his reasoned analysis, this author cites the New Jersey Court Rule in issue on this appeal as the model to be followed in dealing with "the contingent fee engine" that drives mass tort litigation. Id. at 1839 (footnote omitted). He persuasively states:

> Vast savings would result if, *as the New Jersey Rule provides*, contingent fees were applied on the aggregate amount in a mass settlement.

Id. at 1839 n. 74 (emphasis added). See also, e.g., Lester Brickman, *Ethical Issues in Asbestos Litigation*, 33 Hofstra L. Rev. 833, 834-35 (footnote omitted), 841 n. 27 (2005) (providing identical interpretation of R. 1:21-7(i) in mass tort context, after asbestos had become "the biggest litigation in history," with "each claimant fil[ing] claims against approximately sixty to seventy different defendants and bankruptcy trusts").

In a subsequent article which noted that a lucrative "reason for bringing nonclass mass tort actions [over class actions] is that lawyers can charge fifty to one hundred percent higher fees than what they would be awarded in a class action," he again cited R. 1:21-7(i) as the proper model to use in determining fair and reasonable attorney's fees in a mass tort setting:

> A unique provision in the New Jersey state court rules purports to take economies of scale into account and significantly limit lawyers' fees in non-class aggregate litigations...

Lester Brickman, *Anatomy of an Aggregate Settlement: The Triumph of Temptation over Ethics*, 79 Geo. Wash. L. Rev. 700, 706-07 and n. 36 (2011) (emphasis added). See also, e.g., Francesca Giannoni-Crystal, et al., *Choice of Law in Lawyers' Engagement Agreements*, 121 Penn St. L. Rev. 683, 695-96 and n. 59 (R. 1:21-7's fee cap applies in MDLs); Monica Hughes, *Applying State Contingency Fee Caps in Multidistrict Litigation (MDL) Settlements*, 91 Tex. L. Rev. 961, 974 and n. 86, 979 and n. 123, 981-82 (2013) (same).

52

### a. Courts Must Consider Common Benefit Fees When Determining A Reasonable Fee On Aggregate Recoveries Pursuant To *R.* 1:21-7(i) In Excess Of $3 Million

In determining a fair fee over the $3 million aggregate, the court is obligated to apply the reasonableness standard set forth in R.P.C. 1.5(a) and the Reasonableness Rules. In re Estate of F.W., 942 A.2d at 56-57, 398 N.J. Super. at 357–58; Ehrlich v. Kids of N.J., Inc., 769 A.2d 1081, 1084, 338 N.J. Super. 442, 446 (N.J. App. Div. 2001); Pressler & Verniero, N.J. Court Rules, comment 7 on R. 1:21–7 (Gann 2022). This includes the common benefit fees, which must be considered in any aggregate fee application brought under R. 1:21-7(i) and the Reasonableness Rules.

In order to determine what is reasonable, the Court must be provided with the amount of common benefit fees that Defendants received for performing virtually identical work for clients who are already paying a contingent fee for this very work. Here, Slater was co-lead counsel and received approximately $4.1 million of the 9.5% common benefit charge of the approximately $350 million settlement. The common benefit award must be a factor that the court considers in determining whether Defendants' fee was reasonable.

### b. Courts Must Also Consider Common Benefit Fees As A Factor When Determining A Reasonable Fee Under The Individual Contingent Fee Agreements

Separate and apart from setting a fair fee under the aggregate recovery rule, the common benefit fees must also be considered in determining the enforceability of individual contingent fee agreements. By court rule, all contingent fee agreements must be reasonable. See the Reasonableness Rules and R.P.C. 1.5(a). The receipt of common benefit fees for much of the same work done on behalf of all plaintiffs renders the full contingent fee unreasonable and thus the contingent fee agreement must be invalidated or reduced.

The gravamen of this overcharging cause of action is the double recovery that Defendants received for performing the same or substantially similar work for its clients. Not only did they receive a contingent fee under the retainer agreement, they also received approximately $4.1 million for performing the same or substantially similar work from the common benefit fund. This double recovery provided an unlawful windfall to the Firm and breached the contingent fee agreements. Quite plainly, this double recovery renders the one-third fee charged under the contingent fee agreements unreasonable under the Reasonableness Rules and R.P.C. 1.5(a) and

54

violative of the maximum fee allowed under R. 1:21-7(c).[10] See, supra, Litigating Mass Tort Cases § 7:43.50.

The complaint pled viable causes of action based upon the breach of the contingent fee agreement relating to the double recovery from the common benefit fund. By collecting from their clients a one third contingent fee **plus** additional common benefit legal fees, Defendants violated R. 1:21-7(c)(1)-(4) which states that "an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits: (1) 33 1/3 on the first $750,000 recovered, (2) 30% on the next $750,000 recovered, (3) 25% on the next $750,000 and (4) 20% on the next $750,000". Defendants collected from each of their clients a fee in excess of the limits set forth in R. 1:21-7(c).

## V.    THE DISTRICT COURT ERRED BY DISMISSING AS MOOT PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO *N.J.S.A.* 2A:53A-41(f)

Notwithstanding the dismissal of the action as barred by collateral estoppel, the district court should have addressed the application to impose statutory sanctions pursuant to N.J.S.A. § 2A:53A-41(f).

---

[10] Even if the aggregate rule does not apply, if an application is made under R. 1:21-7(c)(5) and (f), which provides for court approval of any fee in a single matter over $3 million, the recovery from the common benefit fund must be disclosed and considered.

Defendants' letter and Rule 11 motion against the attorney who signed the affidavit of merit for the legal malpractice claim are clearly prohibited by N.J.S.A. § 2A:53A-41(f), which specifically prohibits interference with the administration of justice by threatening legal action against a party's expert because he signed an affidavit of merit:

> An individual or entity who threatens to take or takes adverse action against a person in retaliation for that person providing or agreeing to provide expert testimony, **or for that person executing an affidavit pursuant to the provisions of P.L.1995, c. 139 (C.2A:53A-26 et seq.),** which adverse action relates to that person's employment, accreditation, certification, credentialing or licensure, shall be liable to a civil penalty not to exceed $10,000 and other damages incurred by the person and the party for whom the person was testifying as an expert.

N.J.S.A. § 2A:53A-41(f) (emphasis added). The purpose of this section is to enable plaintiffs to obtain an affidavit of merit in the early stages of litigation based on the record available at that time. Defendants' actions, if permitted, would have a chilling effect on a plaintiff's ability to pursue malpractice cases.

None of the foregoing is altered or mooted by the fact that the district court granted Defendants' motion for judgment on the pleadings, and Plaintiffs should be permitted to vindicate their rights to litigate without their expert being directly attacked. Moreover, the district court could have avoided the mootness issue altogether by simply ruling on Plaintiffs' motion for sanctions and then granting Defendants' motion for judgment on the pleadings.

56

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the district court's denial of Plaintiffs' motion to remand. If it affirms the denial of remand, it should certify questions of law to the New Jersey Supreme Court. In the event the Court does not certify questions of law to the New Jersey Supreme Court, it should also reverse the district court's grant of Defendants' judgment for motion on the pleadings and the denial of Plaintiffs' motion for sanctions as moot.

Respectfully submitted,

/s/ Bruce H. Nagel
Bruce H. Nagel
bnagel@nagelrice.com
Nagel Rice, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07869
Tel. 973-618-0400
Fax. 973-618-9194

DATED: August 8, 2024

57

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I hereby certify that the attorneys whose names appear on this brief are members in good standing of the United States Court of Appeals for the Third Circuit.

<u>/s/ Bruce H. Nagel</u>
Bruce H. Nagel

DATED: August 8, 2024

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief conforms to the rules contained in Fed. R. App. P. 32(a) for a brief produced with 14 point Times New Roman, a monospaced font. This brief contains 12,606 words according to the count function of the word processing system used to prepare the brief, not including the Table of Contents, Table of Authorities, and Certificate of Compliance, as permitted by Fed. R. App. P. 28.1(e)(2)(A)(i).

/s/ Bruce H. Nagel
Bruce H. Nagel

DATED: August 8, 2024

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that a copy of the foregoing Brief of Plaintiff-Appellant was submitted in digital format, is an exact copy of the written document filed with the Court, and has been scanned for viruses with SentinelOne version 23.2.3.358 and according to the program, is free of viruses.

<div style="text-align: right;">

/s/ Bruce H. Nagel
Bruce H. Nagel

</div>

DATED: August 8, 2024

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 8th day of August, 2024, I caused the foregoing Brief of Plaintiffs-Appellants/Cross-Appellees, Plaintiffs' Appendix, Volumes I – IV, and Motion to Certify Questions of Law to the New Jersey Supreme Court to be filed electronically with the Clerk of this Court and served electronically upon all counsel of record via CM/ECF.

<div align="right">

/s/ Bruce H. Nagel
Bruce H. Nagel

</div>

## INDEX TO PLAINTIFFS' APPENDIX

### Volume I

Notice of Appeal,
    Dated: May 20, 2024 ................................................................Pa1

Amended Notice of Appeal,
    Dated: May 31, 2024 ................................................................Pa4

Notice of Cross Appeal,
    Dated: June 3, 2024 .................................................................Pa6

Opinion and Order denying Plaintiffs' Motion to Remand
    Dated: March 27, 2024 ............................................................Pa9

Opinion and Order granting with prejudice Defendants' Motion
    for Judgment on the Pleadings; denying as moot Plaintiffs'
    Motion for Sanctions against Defendants, and; denying as
    moot Defendants' Motion for Sanctions against Nagel and
    Nagel Rice and Defendants' Motion for Sanctions against
    Robert Borteck
    Dated: May 7, 2024 ................................................................Pa18

### Volume II

Complete PACER Docket Sheet,
    (1:23-cv-03420-RBK-MJS).......................................................Pa22

### Defendants' Notice of Removal

Notice of Filing of Notice of Removal,
    Dated: June 23, 2023 .............................................................Pa34

i

**Exhibits:**

**A)** Notice of Removal (first page only),
      Dated: June 23, 2023 .............................................................. Pa38[1]

**Exhibits:**

**A)** Complaint,
      Dated: June 22, 2023 ...................................................Pa40

**B)** Notice of Filing of Notice of Removal,
      Dated: June 22, 2023 ...........................Omitted (*see* Pa34)

**C)** Case Management Order No. 3,
      *In Re: Benicar (Olmesartan) Prods.*
      *Liab. Litig.*,
      Dated: May 22, 2015 ...................................................Pa55

**D)** Case Management Order No. 35,
      *In Re: Benicar (Olmesartan) Prods.*
      *Liab. Litig.*,
      Dated: August 15, 2017 ...............................................Pa67

**E)** Case Management Order No. 40,
      *In Re: Benicar (Olmesartan) Prods.*
      *Liab. Litig.*,
      Dated: October 25, 2018...............................................Pa70

**F)** Case Management Order No. 41,
      *In Re: Benicar (Olmesartan) Prods.*
      *Liab. Litig.*,
      Dated: February 26, 2019 ...........................................Pa73

**G)** Case Management Order No. 41A,
      *In Re: Benicar (Olmesartan) Prods.*
      *Liab. Litig.*,
      Dated: February 26, 2019 ...........................................Pa76

---

[1] First page of Notice of Removal included, and remainder omitted, pursuant to Fed. R. App. P. 30(a)(2) and L.A.R. 30.3.

**H)** Case Management Order No. 41B,
        *In Re: Benicar (Olmesartan) Prods.*
        *Liab. Litig.*,
        Dated: April 4, 2019 .................................................Pa78

### **Exhibits:**

    **1)** Form Affidavit in Support of
            Common Benefit Request................................Pa85

**I)** Memorandum Opinion and Order,
        *In Re: Benicar (Olmesartan) Prods.*
        *Liab. Litig.*,
        Dated: November 5, 2019...........................................Pa89

**J)** Memorandum Opinion and Order,
        *In Re: Benicar (Olmesartan) Prods.*
        *Liab. Litig.*,
        Dated: November 14, 2019.......................................Pa103

**K)** Complaint from *Martino v. Mazie,*
        Docket No. ESX-L-8473-21,
        Dated: November 10, 2021................................... Pa108[2]

**L)** Order denying Transfer in *Martino v.*
        *Mazie,* Civil Action No. 21-20056 (RBK),
        Dated: March 21, 2021 ...........................................Pa134

**M)** Martino v. Mazie,
        21-cv-20056 (RBK-MJS), 2022 WL 1443689
        (D.N.J. May 6, 2022)...............................................Pa138

**N)** Martino v. Mazie,
        No. 22-2019, 2023 WL 1990306
        (3d Cir. February 14, 2023)......................................Pa148

---

[2] The original Exhibit "K" attached four copies of the Complaint; only one is included here.

Defendants' Answer,
    Dated: June 23, 2023 ............................................................Pa153


## **Volume III**

### **Plaintiffs' Motion for Remand**

Notice of Motion to Remand,
    Dated: July 24, 2023 .............................................................Pa160

Certification of Adam M. Slater in opposition to
    Motion to Remand,
    Dated: August 7, 2023 ...........................................................Pa162

### **Exhibits:**

**A**) Martino v. Mazie,
        21-cv-20056 (RBK-MJS), 2022 WL 1443689
        (D.N.J. May 6, 2022), and

        Martino v. Mazie,
        No. 22-2019, 2023 WL 1990306
        (3d Cir. February 14, 2023).............Omitted (*see* Pa138 and Pa148)

**B**) Complaint,
        Dated: June 22, 2023..........................................Omitted (*see* Pa40)

**C**) Unpublished decision ...................................................................Omitted

**D**) Routing slips and disbursements for plaintiffs
        in the *Benicar MDL*,
        Dated: August – September, 2022 ..........................................Pa166

**E**) Case Management Order No. 35,
        *In Re: Benicar (Olmesartan) Prods.*
        *Liab. Litig.*,
        Dated: August 15, 2017......................................Omitted (*see* Pa67)

**F)** Case Management Order No. 40,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    Dated: October 25, 2018 ....................................Omitted (*see* Pa70)

**G)** Memorandum Opinion and Order,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    November 14, 2019...........................................Omitted (*see* Pa103)

**H)** Case Management Order No. 3,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    Dated: May 22, 2015..........................................Omitted (*see* Pa55)

**I)** Case Management Order No. 41,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    Dated: February 26, 2019...................................Omitted (*see* Pa73)

**J)** Case Management Order No. 41A,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    Dated: February 26, 2019...................................Omitted (*see* Pa76)

**K)** Case Management Order No. 41B,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    Dated: April 4, 2019...........................................Omitted (*see* Pa78)

### Exhibits:

   **1)** Form Affidavit in Support of
       Common Benefit Request........................Omitted (*see* Pa85)

**L)** Opinion and Order,
    *In Re: Benicar (Olmesartan) Prods.*
    *Liab. Litig.*,
    Dated: November 5, 2019 ..................................Omitted (*see* Pa89)

**M)** Unpublished decision ...............................................................Omitted

v

Reply Certification of Bruce H. Nagel in further support of
Motion to Remand,
Dated: August 28, 2023 ........................................................................Pa187

**Exhibits:**

**A)** Letter from Bruce Nagel to Adam Slater,
Dated: June 22, 2023...............................................................Pa189

**B)** Letter from Bruce Nagel to Adam Slater,
Dated: July 14, 2023 ...............................................................Pa191

**Defendants' Motion for Judgment on the Pleadings**

Notice of Motion for Judgment on the Pleadings,
Dated: September 29, 2023 ....................................................................Pa193

Certification of Adam M. Slater in support of
Motion for Judgment on the Pleadings,
Dated: September 29, 2023 ....................................................................Pa195

**Exhibits:**

**1)** Complaint,
Dated: June 22, 2023..........................................Omitted (*see* Pa40)

**2)** Complaint from *Martino v. Mazie,*
Docket No. ESX-L-8473-21,
Dated: November 10, 2021 ...............................Omitted (*see* Pa108)

**3-4)** Unpublished decision ...................................................................Omitted

**5)** Ryan Haroff, *Judge Axes Benicar Fee Suit, Says
Firm Didn't Overcharge*, Law360,
Dated: May 6, 2022................................................................Pa200

**6)** Case Management Order No. 3,
*In Re: Benicar (Olmesartan) Prods.
Liab. Litig.*,
Dated: May 22, 2015........................................Omitted (*see* Pa55)

**7)** Memorandum Opinion and Order,
    *In Re: Benicar (Olmesartan) Prods.
    Liab. Litig.*,
    Dated: Nov. 14, 2019 .......................................Omitted (*see* Pa103)

**8)** Letter,
    Dated: August 12, 2021...........................................................Pa203

**9)** Short Complaint Form of Eric Johnson,
    Dated: January 25, 2017...........................................................Pa205

**10)** Eric Johnson's Olmesartan Products
    Resolution Program Claim Form
    Dated: June 11, 2018..............................................................Pa215

**11)** Eric Johnson's Notice of Points Award
    Dated: October 24, 2018 .......................................................Pa221

**12)** Memorandum Opinion and Order,
    *In Re: Benicar (Olmesartan) Prods.
    Liab. Litig.*,
    Dated: November 5, 2019 ..............................Omitted (*see* Pa89)

**13)** Case Management Order No. 41,
    *In Re: Benicar (Olmesartan) Prods.
    Liab. Litig.*,
    Dated: February 26, 2019 ..............................Omitted (*see* Pa73)

**14)** Case Management Order No. 41A,
    *In Re: Benicar (Olmesartan) Prods.
    Liab. Litig.*,
    Dated: February 26, 2019 ..............................Omitted (*see* Pa76)

**15)** Case Management Order No. 41B,
    *In Re: Benicar (Olmesartan) Prods.
    Liab. Litig.*,
    Dated: April 4, 2019 ......................................Omitted (*see* Pa78)

Reply Certification of Adam M. Slater in further support of
    Motion for Judgment on the Pleadings,
    Dated: December 14, 2023 ..................................................................Pa226

16)    Order Regarding Calculation of
        Attorney's Fees and Expenses,
        *In re Pelvic Mesh/Gynecare Litig.*,
        Dated: February 7, 2022 .....................................................Pa230

17)    Order Regarding Calculation of
        Attorney's Fees and Expenses,
        *In re Pelvic Mesh/Bard Litig.*,
        Master Docket No. BER-L-17717-14
        Dated: February 7, 2022 .....................................................Pa233

18)    Amendment to Initial Case Management Order
        Dated June 19, 2020, *In re: Allergan*
        *Biocell Textured Breast Implant Prods.*
        *Liab. Litig.*,
        Dated: December 20, 2021 .................................................Pa236

19)    Initial Case Management Order,
        *In re: Elmiron Prods. Liab. Litig.*,
        Dated: February 25, 2022 ..................................................Pa238

20)    Case Management Order No. 40,
        *In Re: Benicar (Olmesartan) Prods.*
        *Liab. Litig.*,
        Dated: October 25, 2018 ................................Omitted (*see* Pa70)

21)    Case Management Order No. 35,
        *In Re: Benicar (Olmesartan) Prods.*
        *Liab. Litig.*,
        Dated: August 15, 2017 ................................Omitted (*see* Pa67)

**Plaintiffs' Motion for Sanctions Against Defendants**

Notice of Motion for Sanctions pursuant to N.J.S.A. § 2A:53A-41(f),
    Dated: December 22, 2023 ..................................................................Pa252

Certification of Bruce Nagel in support of Motion for Sanctions,
Dated: December 22, 2023 ......................................................Pa255

**Exhibits:**

**A)** Plaintiffs' Affidavit of Merit,
Dated: October 20, 2023 .......................................................Pa257

**B)** Defendants' letter to Robert Borteck,
Dated: November 17, 2023 ....................................................Pa260

**C)** Defendants' threatened Motion for Sanctions against
Robert Borteck,
Dated: November 17, 2023

Notice of Motion for Rule 11 Sanction,
Dated: November 17, 2023............................................Pa264

Proposed Order,
Dated: November 17, 2023............................................Pa266

Certification of Service,
Dated: November 17, 2023............................................Pa269

Legal Brief in support of Motion,
Dated: November 17, 2023......................................... Pa272[3]

Certification of David A. Mazie in support of
Motion for Rule 11 Sanctions,
Dated: January 30, 2024 ..............................................Pa296

**Exhibits:**

**A-C)** Unpublished decisions .....................................Omitted

---

[3] Included pursuant to <u>Fed. R. Civ. P.</u> 30(a)(2) and <u>L.A.R.</u> 30.3 because it has independent relevance.

**D)** Excerpt from Ethics Hearing against
David Mazie,
No date provided: ...............................................Pa301

**E)** Letter,
Dated: August 12, 2021................Omitted (*see* Pa203)

**F)** Complaint,
Martino v. Mazie,
Docket No. ESX-L-8473-21,
Dated: November 10, 2021 ..........Omitted (*see* Pa108)

**G-H)** Unpublished decisions ....................................Omitted

**I)** Letter,
Dated: February 1, 2022......................................Pa315

**J)** Order Regarding Calculation of
Attorney's Fees and Expenses,
In re Pelvic Mesh/Gynecare Litig.,
Dated: February 7, 2022...............Omitted (*see* Pa230)

**K)** Order Regarding Calculation of
Attorney's Fees and Expenses,
In re Pelvic Mesh/Bard Litig.,
Master Docket No. BER-L-17717-14
Dated: February 7, 2022...............Omitted (*see* Pa233)

**L)** Order,
Dated: November 19, 2015 .................................Pa317

**M)** Amendment to Initial Case Management
Order Dated June 19, 2020,
In re: Allergan Biocell Textured
Breast Implant Prods. Liab. Litig.,
December 20, 2021.......................Omitted (*see* Pa236)

**N)** Initial Case Management Order,
In re: Elmiron Prods. Liab. Litig.,
Dated: February 25, 2022.............Omitted (*see* Pa238)

**O)** Complaint,
  Dated: June 22, 2023 ......................Omitted (*see* Pa40)

**D)** Plaintiffs' letter to Defendants,
  Dated: December 7, 2023.......................................................Pa321

Certification of Adam M. Slater in opposition to
  Motion for Sanctions,
  Dated: January 22, 2024 ......................................................Pa327

**Exhibits:**

**A-B)** Unpublished decisions ..............................................Omitted

Plaintiffs' letter informing Court that Defendants' threatened
  Rule 11 motion against Borteck was filed,
  Dated: February 2, 2024 ......................................................Pa329

## Volume IV

**Defendants' Motion for Rule 11 Sanction Against Bruce H. Nagel, Esq. and Nagel Rice, LLP**

Notice of Motion for Rule 11 Sanction,
  Dated: January 30, 2024 ......................................................Pa331

Certification of David A. Mazie in support of
  Motion for Rule 11 Sanctions,
  Dated: January 30, 2024 ......................................................Pa334

**Exhibits:**

**A-C)** Unpublished decisions ..............................................Omitted

**D)** Excerpt from Ethics Hearing against David Mazie,
  No date provided:...............................(Omitted *see* Pa301)

**E)** Letter,
  Dated: August 12, 2021....................................Omitted (*see* Pa203)

**F)** Complaint,
  *Martino v. Mazie,*
  Docket No. ESX-L-8473-21,
  Dated: November 10, 2021 ...............................Omitted (*see* Pa108)

**G-H)** Unpublished decisions ............................................................Omitted

**I)** Letter,
  Dated: February 1, 2022...................................Omitted (*see* Pa315)

**J)** Order Regarding Calculation of
  Attorney's Fees and Expenses,
  *In re Pelvic Mesh/Gynecare Litig.*,
  Dated: February 7, 2022...................................Omitted (*see* Pa230)

**K)** Order Regarding Calculation of
  Attorney's Fees and Expenses,
  *In re Pelvic Mesh/Bard Litig.*,
  Master Docket No. BER-L-17717-14
  Dated: February 7, 2022...................................Omitted (*see* Pa233)

**L)** Order,
  Dated: November 19, 2015 ..............................(Omitted *see* Pa317)

**M)** Amendment to Initial Case Management
  Order Dated June 19, 2020,
  *In re: Allergan Biocell Textured*
  *Breast Implant Prods. Liab. Litig.*,
  December 20, 2021 ..........................................Omitted (*see* Pa236)

**N)** Initial Case Management Order,
  *In re: Elmiron Prods. Liab. Litig.*,
  Dated: February 25, 2022..................................Omitted (*see* Pa238)

**O)** Complaint,
  Dated: June 22, 2023........................................Omitted (*see* Pa40)

**P-R)** Unpublished decisions ............................................................Omitted

**S)** *In re Bruce H. Nagel*,
DRB99-438 (May 10, 2000) ..................................................Pa340

**T)** Email,
Dated: January 5, 2024...........................................................Pa352

Certification of Bruce H. Nagel in opposition to
Motion for Rule 11 Sanctions,
Dated: March 12, 2024 ...........................................................Pa354

Reply Certification of David A. Mazie in further support of
Motion for Rule 11 Sanctions,
Dated: March 26, 2024 ............................................................Pa360

**Plaintiffs' Motion to File Sur-Reply Papers Regarding Defendants'
Motion for Rule 11 Sanctions Against Bruce H. Nagel, Esq. and
Nagel Rice, LLP**

Notice of Motion,
Dated: April 4, 2024 ...............................................................Pa365

Certification of Bruce H. Nagel in support of Motion to
File Sur-Reply Papers,
Dated: April 4, 2024 ...............................................................Pa368

**Exhibits:**

**A)** Letter,
Dated: April 24, 2023..............................................................Pa372

**B)** Letter,
Dated: March 14, 2024............................................................Pa375

**Exhibits:**

A) Letter,
Dated: April 24, 2024 ........................Omitted (*see* Pa372)

**C)** Letter,
Dated: March 20, 2024............................................................Pa377

**D)** Excerpt from 2024 Report of the Supreme Court
Civil Practice Committee,
Dated: January, 2024................................................................Pa379

**E)** Complaint,
*District V-V Ethics Committee v.*
*David A Mazie, Esq.,*
Docket No. V-C-2014-0022E
(June 16, 2015) ....................................................................Pa383

Exhibits to Defendants' Letter Brief in Opposition to
Plaintiffs' Motion to File Sur-Reply Papers,
Dated: April 5, 2024

**Exhibits:**

1)  Bar Report,
Dated: February 12, 2024.......................................................Pa387

2)  Notice to the Bar,
Dated: February 6, 2024.........................................................Pa391

**Defendants' Motion for Rule 11 Sanction Against Robert Borteck, Esq.**

Notice of Motion for Rule 11 Sanction,
Dated: January 30, 2024 ............................................... Omitted (*see* Pa264)[4]

Proposed Order,
Dated: January 30, 2024 ..................................................Omitted (*see* Pa266)

Certification of Service,
Dated: January 30, 2024 ..................................................Omitted (*see* Pa269)

Legal Brief in support of Motion,
Dated: January 30, 2024 ..................................................Omitted (*see* Pa272)

---

[4] The Notice of Motion, Proposed Order, Certification of Service, Legal Brief, and Exhibits "A" – "O" to the Certification of David A Mazie (all having a filing date of January 30, 2024) have different filing dates than the same documents in Defendants' threatened motion (all having a filing date of November 17, 2023).

xiv

Certification of David A. Mazie in support of
　　Motion for Rule 11 Sanctions,
　　Dated: January 30, 2024 ...................................................................Pa394

**Exhibits:**

**A-C)** Unpublished decisions ...........................................................Omitted

**D)** Excerpt from Ethics Hearing against David Mazie,
　　　　No date provided:..............................................Omitted (*see* Pa301)

**E)** Letter,
　　　　Dated: August 12, 2021.....................................Omitted (*see* Pa203)

**F)** Complaint,
　　　　Martino v. Mazie,
　　　　Docket No. ESX-L-8473-21,
　　　　Dated: November 10, 2021 ...............................Omitted (*see* Pa108)

**G-H)** Unpublished decisions ...........................................................Omitted

**I)** Letter,
　　　　Dated: February 1, 2022...................................Omitted (*see* Pa315)

**J)** Order Regarding Calculation of
　　　　Attorney's Fees and Expenses,
　　　　In re Pelvic Mesh/Gynecare Litig.,
　　　　Dated: February 7, 2022...................................Omitted (*see* Pa230)

**K)** Order Regarding Calculation of
　　　　Attorney's Fees and Expenses,
　　　　In re Pelvic Mesh/Bard Litig.,
　　　　Master Docket No. BER-L-17717-14
　　　　Dated: February 7, 2022...................................Omitted (*see* Pa233)

**L)** Order,
　　　　Dated: November 19, 2015 ...............................Omitted (*see* Pa317)

**M)** Amendment to Initial Case Management
Order Dated June 19, 2020,
In re: Allergan Biocell Textured
Breast Implant Prods. Liab. Litig.,
December 20, 2021 ...........................................Omitted (*see* Pa236)

**N)** Initial Case Management Order,
In re: Elmiron Prods. Liab. Litig.,
Dated: February 25, 2022.................................Omitted (*see* Pa238)

**O)** Complaint,
Dated: June 22, 2023...........................................Omitted (*see* Pa40)

**P)** Email,
Dated: November 17, 2023 ....................................................Pa399

Certification of Bruce H. Nagel in opposition to
Motion for Rule 11 Sanctions,
Dated: March 12, 2024 .........................................................Pa401

**Exhibits:**

**A)** Plaintiffs' Affidavit of Merit,
Dated: October 20, 2023 ...................................Omitted (*see* Pa257)

**B)** Defendants' letter to Robert Borteck,
Dated: November 17, 2023..............................Omitted (*see* Pa260)

**C)** Plaintiffs' letter to Defendants,
Dated: December 7, 2023 ................................Omitted (*see* Pa321)

Reply Certification of David A. Mazie in further support of
Motion for Rule 11 Sanctions,
Dated: March 26, 2024 .........................................................Pa403

NAGEL RICE, LLP
103 Eisenhower Parkway
Suite 103
Roseland, New Jersey 07068
(973)618-0400
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC JOHNSON; VANESSA WILLIAMS, EXECUTOR OF THE ESTATE OF GLADYS WILLIAMS, DECEASED, AND VANESSA WILLIAMS, INDIVIDUALLY; MCARTHUR JONES, EXECUTOR OF THE ESTATE OF JANET JONES, DECEASED AND MCARTHUR JONES, INDIVIDUALLY; HENRIETTA WILLIAMS; ELIZABETH LAMPKIN; ROBERT DELOACH, EXECUTOR OF THE ESTATE OF CAROLYN LINDSEY, DECEASED AND ROBERT DELOACH, INDIVDUALLY; CARMEN MORENO; ROSA MORENO; THERESA NIX; DEBORAH HENSLEY; LORETTA G. ROBINSON; GREGORY H. HEMPHILL; DELORES HOWARD; MAGGIE CURRY; JEAN FIEBELKORN; ELVINA GALLOW; ANGELA MILLER; GLORIA MCCASTER; CAROLYN SILL; JENNIFER DAVIS; AND KATRINA HARRY<br><br>Plaintiffs,<br><br>v.<br><br>DAVID MAZIE, ESQ., ADAM SLATER, ESQ. AND MAZIE SLATER KATZ & FREEMAN LLC,<br><br>Defendants. | Civil Action No.: 23-cv-03420 (RBK-MJS)<br><br>**Document electronically filed**<br><br>**NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT** |

<u>**NOTICE OF APPEAL**</u>

The Clerk will please take notice that Plaintiffs Eric Johnson; Vanessa Williams, Executor on behalf of the Estate of Gladys Williams, deceased and Vanessa Williams, Individually;

Pa001

McArthur Jones, Executor of the Estate of Janet Jones, deceased and McArthur Jones, individually; Henrietta Williams; Elizabeth Lampkin; Robert Deloach, Executor of the Estate of the Estate of Carolyn Lindsey, deceased and Robert Deloach, Individually; Carmen Moreno; Rosa Moreno; Theresa Nix; Deborah Hensley; Loretta G. Robinson; Gregory H. Hemphill; Delores Howard; Maggie Curry; Jean Fiebelkorn; Elvina Gallow; Angela Miller; Gloria McCaster; Carolyn Sill; Jennifer Davis; and Katrina Harry (referred to as "Plaintiffs") hereby appeal to the United States Court of Appeals for the Third Circuit from the following:

1. The United States District Court, District of New Jersey's order entered May 7, 2024 granting Defendants David Mazie, Adam Slater and Mazie Slater Katz & Freeman LLC's Motion for Judgment on the Pleadings with prejudice and denying as moot Plaintiffs' Motion for Sanctions against Defendants.

<div style="text-align:right">

Respectfully submitted,

s/ *Bruce H. Nagel*
Bruce H. Nagel, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973)618-0400
bnagel@nagelrice.com

</div>

Dated: May 20, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, I caused a true and correct copy of the foregoing to be served by e-mail and/or ECF upon:

David A. Mazie, Esq.
Adam M. Slater, Esq.
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, NJ 07068

s/ *Bruce H. Nagel*
Bruce H. Nagel, Esq.

NAGEL RICE, LLP
103 Eisenhower Parkway
Suite 103
Roseland, New Jersey 07068
(973)618-0400
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ERIC JOHNSON; VANESSA WILLIAMS, EXECUTOR OF THE ESTATE OF GLADYS WILLIAMS, DECEASED, AND VANESSA WILLIAMS, INDIVIDUALLY; MCARTHUR JONES, EXECUTOR OF THE ESTATE OF JANET JONES, DECEASED AND MCARTHUR JONES, INDIVIDUALLY; HENRIETTA WILLIAMS; ELIZABETH LAMPKIN; ROBERT DELOACH, EXECUTOR OF THE ESTATE OF CAROLYN LINDSEY, DECEASED AND ROBERT DELOACH, INDIVDUALLY; CARMEN MORENO; ROSA MORENO; THERESA NIX; DEBORAH HENSLEY; LORETTA G. ROBINSON; GREGORY H. HEMPHILL; DELORES HOWARD; MAGGIE CURRY; JEAN FIEBELKORN; ELVINA GALLOW; ANGELA MILLER; GLORIA MCCASTER; CAROLYN SILL; JENNIFER DAVIS; AND KATRINA HARRY<br><br>Plaintiffs,<br><br>v.<br><br>DAVID MAZIE, ESQ., ADAM SLATER, ESQ. AND MAZIE SLATER KATZ & FREEMAN LLC,<br><br>Defendants. | Civil Action No.: 23-cv-03420 (RBK-MJS)<br><br>**Document electronically filed**<br><br>**AMENDED NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT** |

**AMENDED NOTICE OF APPEAL**

The Clerk will please take notice that Plaintiffs Eric Johnson; Vanessa Williams, Executor on behalf of the Estate of Gladys Williams, deceased and Vanessa Williams, Individually;

McArthur Jones, Executor of the Estate of Janet Jones, deceased and McArthur Jones, individually; Henrietta Williams; Elizabeth Lampkin; Robert Deloach, Executor of the Estate of the Estate of Carolyn Lindsey, deceased and Robert Deloach, Individually; Carmen Moreno; Rosa Moreno; Theresa Nix; Deborah Hensley; Loretta G. Robinson; Gregory H. Hemphill; Delores Howard; Maggie Curry; Jean Fiebelkorn; Elvina Gallow; Angela Miller; Gloria McCaster; Carolyn Sill; Jennifer Davis; and Katrina Harry (referred to as "Plaintiffs") hereby appeal to the United States Court of Appeals for the Third Circuit from the following:

1. The United States District Court, District of New Jersey's order entered May 7, 2024 granting Defendants David Mazie, Adam Slater and Mazie Slater Katz & Freeman LLC's Motion for Judgment on the Pleadings with prejudice and denying as moot Plaintiffs' Motion for Sanctions against Defendants.

2. The United States District Court, District of New Jersey's order entered March 27, 2024 denying Plaintiffs Motion to Remand.

Respectfully submitted,

s/ *Bruce H. Nagel*
Bruce H. Nagel, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
(973)618-0400
Dated: May 31, 2024          bnagel@nagelrice.com

Adam M. Slater, Esq. (NJ Attorney ID No. 046211993)
David A. Mazie, Esq. (NJ Attorney ID No. 017941986)
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: (973) 228-9898
*Counsel for Defendant Mazie Slater & Pro Se Defendants Mazie and Slater*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| ERIC JOHNSON; VANESSA WILLIAMS, EXECUTOR OF THE ESTATE OF GLADYS WILLIAMS, DECEASED, AND VANESSA WILLIAMS, INDIVIDUALLY; MCARTHUR JONES, EXECUTOR OF THE ESTATE OF JANET JONES, DECEASED AND MCARTHUR JONES, INDIVIDUALLY; HENRIETTA WILLIAMS; ELIZABETH LAMPKIN; ROBERT DELOACH, EXECUTOR OF THE ESTATE OF CAROLYN LINDSEY, DECEASED AND ROBERT DELOACH, INDIVIDUALLY; CARMEN MORENO; ROSA, MORENO; THERESA NIX; DEBORAH HENSLEY; LORETTA G. ROBINSON; GREGORY H. HEMPHILL; DELORES HOWARD; MAGGIE CURRY; JEAN FIEBELKORN; ELVINA GALLOW; ANGELA MILLER; GLORIA MCCASTER; CAROLYN SILL; JENNIFER DAVIS; and KATRINA HARRY, <br><br> Plaintiffs, <br><br> v. <br><br> DAVID MAZIE, ESQ., ADAM SLATER, ESQ. and MAZIE SLATER KATZ & FREEMAN LLC, <br><br> Defendants. | Case No. 23-cv-3420-RBK-MJS <br><br><br> Hon Robert B. Kugler, U.S.D.J. <br> Hon. Matthew J. Skahill, U.S.M.J. |

## <u>NOTICE OF CROSS APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT</u>

The Clerk will please take notice that Defendants David Mazie, Esq., Adam Slater, Esq., and Mazie Slater Katz & Freeman, LLC (hereinafter "Defendants") hereby cross-appeal to the United States Court of Appeals for the Third Circuit from the following:

1.  The United States District Court for the District of New Jersey's Order entered on May 7, 2024, denying Defendants' motion for sanctions against Bruce Nagel, Esq. and Nagel Rice LLP (ECF No. 37) and Robert Borteck, Esq. (ECF No. 38).

<div style="margin-left: 40%;">

Respectfully Submitted,

/s/ *Adam M. Slater*
ADAM M. SLATER
**MAZIE SLATER KATZ & FREEMAN LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
P: 973-228-9898
E: aslater@mazieslater.com

</div>

<u>Dated</u>: June 3, 2024

<div style="text-align: center;">2</div>

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 3, 2024, the foregoing Notice of Cross Appeal was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<div align="right">

*/s/ Adam M. Slater*
Adam M. Slater, Esq.

</div>

Dated: June 3, 2024

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____

| | |
|---|---|
| Johnson *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| David Mazie, Esq., Adam Slater, Esq. and | ) |
| Mazie Slater Katz & Freeman LLC, | ) |
| Defendants. | ) |
| | ) |

Civil No. 23-03420 (RBK/MJS)

**Order / Opinion On**
**MOTION TO REMAND**

_____

**KUGLER, United States District Judge**:

        **THIS MATTER HAVING COMING BEFORE** the Court on plaintiffs' ["Johnson"] motion to remand ["the Motion"] (Doc. No. 5) this action back to state court—N.J. Superior Court, Essex County—where it originated;
        **DEFENDANTS [MAZIE] HAVING REMOVED** this action to this Court and opposing remand;
        **THIS COURT HAVING CONSIDERED** the parties' submissions without oral argument pursuant to *L. R. 78.1*, for the reasons stated in the opinion below, and for good cause shown,

        **THE COURT HEREBY ORDERS:** The motion to remand (Doc. No. 5 ) is **DENIED**.

**OPINION**

**1.0     PROCEDURAL BACKGROUND**

        This matter arises from a dispute between the parties about the proper amount of attorney fees that should have been awarded to Mazie for their work as plaintiffs' counsel in the Olmesartan Multi-District Litigation ["MDL"].[1]

---

[1] The Olmesartan MDL, consolidated by the Judicial Panel on Multi District Litigation in April 2015, concerned products liability claims regarding certain, serious contraindications of taking the blood pressure medicine Olmesartan, a generic of the brand name drug Benicar®. Generally, the contraindications resembled symptoms of celiac disease in those who ingested the drug for several years: diarrhea, weight loss, persistent gastrointestinal upset, and, for some, hospitalization. In the summer of 2017, the MDL ended in a settlement for the thousands of U.S. consumers who experienced symptoms of varying severity from ingesting Olmesartan. Each person who signed onto the Olmesartan settlement agreement typically had executed a contingency fee agreement with a law firm that would secure for them a portion of the settlement proceeds according to the settlement calculus based on the severity of symptoms. In other words, those who had signed a contingency fee agreement with their law firms paid an agreed-upon percentage to the firms from the Olmesartan settlement award they received.

As a named representative of a putative class action of plaintiffs residing outside of New Jersey, Johnson is suing Mazie for having received a larger amount of attorney fees for their work in the Olmesartan MDL than, Johnson avers, is allowed by New Jersey Court Rule 1:21-7(i).[2]  Johnson seeks to recover the excess of attorneys fees  Mazie allegedly received as

---

[2] **Rule 1:21-7. Contingent Fees**

**(a)** As used in this rule the term "contingent fee arrangement" means an agreement for legal services of an attorney or attorneys, including any associated or forwarding counsel, under which compensation, contingent in whole or in part upon the successful accomplishment or disposition of the subject matter of the agreement, is to be in an amount which either is fixed or is to be determined under a formula.

**(b)** An attorney shall not enter into a contingent fee arrangement without first having advised the client of the right and afforded the client an opportunity to retain the attorney under an arrangement for compensation on the basis of the reasonable value of the services.

**(c)** In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims and claims among family members that are subject to Part V of these Rules but excluding statutorily based discrimination and employment claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:

(1) 33 1/3 % on the first $750,000 recovered;
(2) 30% on the next $750,000 recovered;
(3) 25% on the next $750,000 recovered;
(4) 20% on the next $750,000 recovered; and
(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and
(6) where the amount recovered is for the benefit of a client who was a minor or mentally incapacitated when the contingent fee arrangement was made, the foregoing limits shall apply, except that the fee on any amount recovered by settlement before empaneling of the jury or, in a bench trial, the earlier to occur of plaintiff's opening statement or the commencement of testimony of the first witness, shall not exceed 25%.

**(d)** The permissible fee provided for in paragraph (c) shall be computed on the net sum recovered after deducting disbursements in connection with the institution and prosecution of the claim, whether advanced by the attorney or by the client, including investigation expenses, expenses for expert or other testimony or evidence, the cost of briefs and transcripts on appeal, and any interest included in a judgment pursuant to R. 4:42-11(b); but no deduction need be made for post-judgment interest or for liens, assignments or claims in favor of hospitals or for medical care and treatment by doctors and nurses, or similar items. The permissible fee shall include legal services rendered on any appeal or review proceeding or on any retrial, but this shall not be deemed to require an attorney to take an appeal. When joint representation is undertaken in both the direct and derivative action, or when a claim for wrongful death is joined with a claim on behalf of a decedent, the contingent fee shall be calculated on the aggregate sum of the recovery.

**(e)** Paragraph (c) of this rule is intended to fix maximum permissible fees and does not preclude an attorney from entering into a contingent fee arrangement providing for, or from charging or collecting a contingent fee below such limits. In all cases contingent fees charged or collected must conform to RPC 1.5(a).

**(f)** If at the conclusion of a matter an attorney considers the fee permitted by paragraph (c) to be inadequate, an application on written notice to the client may be made to the Assignment Judge or the designee of the Assignment Judge for the hearing and determining of a reasonable fee in light of all the circumstances. This rule shall not preclude the exercise of a client's existing right to a court review of the reasonableness of an attorney's fee.

**(g)** Where the amount of the contingent fee is limited by the provisions of paragraph (c) of this rule, the contingent fee arrangement shall be in writing, signed both by the attorney and the client, and a signed duplicate shall be given to the client. Upon conclusion of the matter resulting in a recovery, the attorney shall prepare and furnish the client with a signed closing statement.

**(h) Calculation of Fee in Structured Settlements.** As used herein the term "structured settlement" refers to the payment of any settlement between the parties or judgment entered pursuant to a proceeding approved by the Court, the terms of which provide for the payment of the funds to be received by the plaintiff on an installment basis. For purposes of paragraph (c), the basis for calculation of a contingent fee shall be the value of the structured settlement as herein defined. Value shall consist of any cash payment made upon consummation of the settlement plus the actual cost to the party making the settlement of the deferred payment aspects thereof. In the event that the party paying the settlement does not purchase the deferred payment component, the actual cost thereof shall be the actual cost assigned by that party to that component. For further purposes of this rule, the party making the settlement offer shall, at the time the offer is made, disclose to the party receiving the

unjust enrichment from the Olmesartan settlement in order to re-distribute those fees back to the putative class of plaintiffs so they presumably obtain the settlement monies they should have gotten. Specifically, the Johnson Complaint (Doc. No. 1-2 ) asserts these claims, all of which stem from violation of the Rule:

- legal malpractice;

-conversion;

- unjust enrichment;

- improper, double recovery; and

- breach of contract for violating retainer agreements of Olmesartan plaintiffs.

On June 22, 2023, Johnson originally filed this civil action in the Superior Court of New Jersey—Law Division, Essex County.[3] On June 23, 2023, Mazie removed the state action to federal court based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1); federal question jurisdiction pursuant to 28 U.S.C. § 1331; *Grable* jurisdiction; supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367 and 1441(c). Defendant's Removal Notice ¶ ¶ 4, 5, 35, 39, 41 (Doc. No. 1).

On August 21, 2023, Johnson filed the motion, arguing that:

- this Court lacks diversity jurisdiction because even though all plaintiffs are/were legal residents of jurisdictions outside of New Jersey, none of the plaintiffs' recovery amounts from Mazie's excess award would equal $75,000

- this Court lacks federal question jurisdiction because all plaintiffs' claims arise under state product liability laws;

- this Court lacks *Grable* jurisdiction as no claim arises under or embeds federal law; and

- the Anti-Injunction act does not confer jurisdiction on this Court.

On October 7, 2023, Mazie opposed the motion (Mazie Opp., Doc. No. 9) to which, on October 28, 2023, Johnson replied. Johnson Rep., Doc. No. 16. All submissions were timely.

## 2.0    LEGAL STANDARD

Under *28 U.S.C. § 1441(a)*, a defendant may remove an action filed in state court to that federal court having original jurisdiction over the action. Once the action has been removed, a

---

settlement offer its actual cost and, if it does not purchase the deferred payment aspect of the settlement, the factors and assumptions used by it in assigning actual cost.

**(i) Calculation of Fee in Settlement of Class or Multiple Party Actions.** When representation is undertaken on behalf of several persons whose respective claims, whether or not joined in one action, arise out of the same transaction or set of facts or involve substantially identical liability issues, the contingent fee shall be calculated on the basis of the aggregate sum of all recoveries, whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each. Counsel may, however, make application for modification of the fee pursuant to paragraph (f) of this rule in appropriate cases

[3] *Johnson, et al. v. Mazie, et al.,* No. ESX-L-004010-23

plaintiff may challenge removal by seeking its remand back to state court. *See 28 U.S.C. §*
*1447(c)* allowing a case removed to federal court to be remanded back to state court "[i]f at any
time before final judgment it appears that the district court lacks subject matter jurisdiction."

To defeat a movant's motion to remand, the opposing party bears the burden of
showing that the federal court has jurisdiction to hear the case. *Abels v. State Farm Fire & Cas.*
*Co.*, 770 F.2d 26, 29 (3d Cir. 1995) (*citing Pullman Co. v. Jenkins*, 305 U.S. 534, 537
(1939)). Generally, where the decision to remand is a close one, district courts are encouraged
to err on the side of remanding the case back to state court. *See Abels*, 770 F.2d at 29 [*stating*:
"Because lack of jurisdiction would make any decree in the case void and the continuation of
the litigation in federal court futile, the removal statute should be strictly construed and all
doubts should be resolved in favor of remand.").

However, when the Court retains ancillary jurisdiction over a matter, the same legal
analysis applies as for pendent jurisdiction. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S.
365, 372–73 (1978). Since the Supreme Court decided *United Mine Workers of Am. v. Gibbs,* 383
U.S. 715 (1966), two requirements for the exercise of pendent jurisdiction have been clear:
First, the court must determine whether it has constitutional power to exercise jurisdiction;
and second, it must determine whether it should, in its discretion, exercise jurisdiction. *Id.* at
726. When a claim is ancillary to a lawsuit rather than pendent to a federal claim, a similar
power requirement as stated in *Gibbs* applies. Clarifying this requirement, the Supreme Court
stated in *Aldinger v. Howard*, 427 U.S. 1, 11-12 (1976):

> "The doctrine of ancillary jurisdiction developed in the foregoing cases
> [Supreme Court reviewed its own jurisprudence on this doctrine] is bottomed on
> the notion that since federal jurisdiction in the principal suit effectively controls
> the property or fund under dispute, other claimants thereto should be allowed to
> intervene in order to protect their interests, without regard to jurisdiction. As this
> Court stated in *Fulton Bank v. Hozier*, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69
> L.Ed. 609 (1925):
>
> > 'The general rule is that when a federal court has properly acquired
> > jurisdiction over a cause, it may entertain, by intervention,
> > dependent or ancillary controversies; but no controversy can be
> > regarded as dependent or ancillary unless it has direct relation to
> > property or assets actually or constructively drawn into the court's
> > possession or control by the principal suit.' "

*See also In re Paoli R.R. Yard PCB Litigation*, 435 F.3d 717, 737-738 ( 3rd Cir. 1996) [*demonstrating*
that judicial economy can be a sufficient reason for a federal court to retain ancillary

jurisdiction in order to avoid the very real possibility of forum shopping].

### 3.0    DISCUSSION

The current dispute in this case is whether this Court has jurisdiction to resolve the asserted fee dispute:  Mazie has received not only contingency fees from each of its clients who participated in the Olmesartan settlement but also a  common benefit fee award because of its efforts in the MDL as plaintiffs' executive counsel.   Johnson asserts this award amounts to double payment and is in violation of the Rule.

This Court was the transferee court for the Olmesartan MDL, which  awarded the common benefit fees to plaintiffs' counsel for their efforts expended in litigating the MDL. This Court granted the award after reviewing for correctness and reasonableness plaintiff counsels' Final Recommendation and line-item accounting of each plaintiff firm's hours spent in litigating the MDL.  *See In Re* : Benicar® (Olmesartan) Products Liability Litigation, 1:15-md-02606-RBK-JS, Doc. No. 1263.

Important to resolving this motion is that this action is nearly identical to an action previously filed in 2021 by the same plaintiffs' counsel, which, as here, claimed that Mazie violated the Rule because it had received excessive attorneys fees in the form of a common benefit award in the Olmesartan MDL [4]  This Court dismissed with prejudice the previous lawsuit at *Martino v. Mazie,* 21-cv-20056 (RBK-MJS), 2022 WL 1443689 (D.N.J. May 6, 2022). Upon appeal of that decision by Martino's counsel, the Third Circuit affirmed this Court's resolution of the dispute.  We had decided that the common benefit fund award to Mazie was not "double-dipping" but proper remuneration for their legal efforts expended in the Olmesartan MDL over and above any efforts for contingency fee clients.  *See Martino v. Mazie, aff'd,* No. 22-2019, 2023 WL 1990306 (3d Cir. Feb. 14, 2023).  The significant difference between this matter and *Martino v. Mazie* is that Johnson alleges this Court can have no federal matter or diversity jurisdiction over the determination of an excess fee award to Mazie and therefore cannot decide this matter.  The Court sees that both the complaint filed in state court and the motion seek to avoid this Court's similar decision as in Martino:   that the Rule does not apply to  common benefit law efforts of plaintiffs' counsel in MDLs.

More specifically, to gird the remand motion, Johnson (Mot. Brf. at 6, 11, 13, 14, Doc. No. 5)  argues this Court lacks jurisdiction because:
-Mazie failed to show to a legal certainty that each individual plaintiff can recover more than $75,000, thereby securing diversity jurisdiction;

---

[4] *Martino et al. v. Mazie, et al.* 21-cv-20056, Doc. No. 26.

-Mazie also cannot show this matter raises a federal question, which cannot secure this Court's jurisdiction as the claims of all plaintiffs in this putative class turn not on federal, but only on state, law; and

-the Anti-Injunction Act[5] does not confer jurisdiction.

Johnson's contentions that this Court lacks jurisdiction are incorrect and unavailing. Johnson has not foreseen that the underlying dispute—attorneys fees— is an *ancillary* issue to the Olmesartan MDL claims—all product liability issues. Accordingly, this Court has and does retains ancillary jurisdiction over all issues not central to the products liability issues of the MDL, which, without doubt, include the fee dispute here.

By the doctrine of ancillary jurisdiction, federal courts retain jurisdiction over those matters incidental to the central legal matters before them. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994) defining an ancillary suit as

> "[a] bill filed to continue a former litigation in the same court . . . to obtain and secure the fruits, benefits and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties . . . or to obtain any equitable relief in regard to, or connected with, or growing out of, any judgment or proceeding at law rendered in the same court." *Id.* [*citing Julian v. Central Trust Co.*, 193 U.S. 93, 24 S. Ct. 399, 48 L. Ed. 629 (1904)].

Moreover, the Supreme Court has clarified that "a federal court may exercise ancillary jurisdiction... to enable [the] court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996). A federal court retains the power to enforce and consider challenges to settlements entered into in cases originally filed with the court. *Fox v. Consolidated Rail Corp.*, 739 F.2d 929, 932 (3d Cir. 1984). *See also Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.) ["Even in those instances in which the court's original jurisdiction may have been questionable, it has jurisdiction over settlement agreements, the execution of which renders the prior controversy academic."].

Regarding large, multi-district class actions, the Third Circuit has opined that "[a] district court has the power to enforce an ongoing order against re-litigation so as to protect

---

[5] *See* 28 U.S.C. § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"). The Anti–Injunction Act, limits the reach of the All Writs Act. On its face the Anti–Injunction Act is an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions: (1) as expressly authorized by Act of Congress, (2) where necessary in aid of its jurisdiction, or (3) to protect or effectuate its judgments. The three exceptions are to be construed narrowly, and any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting state courts to proceed. *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 289 F.Supp.3d 646, 653-654 (E.D. Pa. 2018) [citations omitted].

the integrity of a complex class settlement over which it retained jurisdiction." *In re Prudential Insurance Company of American Sales Practice Litigation,* 261 F.3d 355, 367-68 (3d Cir. 2001) [*affirming* injunction under All Writs Act where "continued litigation of these claims would 'unsettle' what had been thought to be settled" and disrupt procedures approved by the district court]. The *Prudential* Court concluded that district court's authority to execute its ruling "did not end with the entry of the Final Order and Judgment." *Id.* at 368; *see also In re Linerboard Antitrust Litig.*, 361 Fed. Appx. 392 (3d Cir. 2010) [*finding* that the district court erred in concluding it would lose jurisdiction over the case once the class action had ended].

Other circuits have issued similar guidance about the nature of ancillary jurisdiction. For example, the Eighth Circuit has held that "[w]hile a district court's jurisdiction typically ends when a case is closed and judgment entered, a **district court retains ancillary jurisdiction to 'manage its proceedings, vindicate its authority, and effectuate its decrees.**" *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1081 (8th Cir. 2008) [citations omitted] [emphasis added].

Of great interest, in a dispute over attorney fees after the settlement of a class action, the Fourth Circuit held that:

> "[T]he district court must have continuing jurisdiction to resolve the dispute in order to protect the continued integrity of its order approving fair and reasonable fees in the first instance. Moreover, just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute resolution process."

*Marino v. Pioneer Edsel Sales, Inc.*, 349 F.3d 746, 753 (4th Cir. 2003). The Fourth Circuit also noted that:

> "[The plaintiff's] claims were factually interdependent with other issues in the [class action] because the amount of attorney's fees paid for work done in connection with the [class action] can effect the fairness and reasonableness of the class action settlement as a whole...[and] preventing [the judge] from deciding whether [the plaintiff] is entitled to attorney's fees for work she allegedly performed in connection with the [class action] would thwart [the judge's] ability to manage the [the class action]. *Ibid.*

This action not only arises from the same facts but also involves substantially the same fee dispute previously decided in *Martino v. Mazie*, brought by the same plaintiffs' counsel on behalf of New Jersey plaintiffs[6] who had participated in the Olmesartan settlement. The key

---

[6] These plaintiffs had been litigants not in the Olmesartan MDL but in the Olmesartan Multi-County Litigation ["MCL"].

difference between *Martino v. Mazie* and this action is the lack of jurisdiction claim.   By way of explanation, in *Martino v. Mazie*, this Court found that Mazie properly had earned a contingency fee for guiding its Olmesartan MCL clients through the Olmesartan settlement.  In addition, Mazie also properly had earned a common benefit award because it was the MDL plaintiffs' executive firm, among others, that had taken depositions, paid for experts, written and submitted to this Court briefs on various issues.  In short, Mazie's common benefit fund award was justifiable remuneration because it had driven the MDL litigation to the settlement. Put differently, Mazie's litigation efforts in the Olmesartan MDL benefitted every plaintiff in the MDL and every plaintiff in the MCL as well as every individual who, without having filed a lawsuit, agreed to take part in the Olmesartan settlement.

In *Martino v. Mazie*, this Court found nothing in NJ Court Rule 1:21-7(i) that limited Mazie from receiving a common benefit fund award in addition to earning contingency fees from its clients.   This is because the Rule concerns the **Calculation of contingency fees  in Settlement of Class or Multiple Party Actions** and does NOT concern common benefit awards, which are taken from settlement amounts to reimburse those firms that have in effect served as counsel to the entire coterie of settling parties.  The Rule rightly calculates a contingency fee amount on the basis of the aggregate sum of all recoveries, whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each.  And that is precisely what the Olmesartan settlement fund did:  it paid an amount to each to each participating individual based on the severity of their injuries.  And that's precisely how Mazie was awarded contingency fees: based on the amounts awarded to each individual who signed a contingency fee agreement with Mazie.  The common benefit fund award to Mazie was NOT and can NEVER be deemed a contingency fee amount.  In short, a common benefit fund is not a double contingency fee payment, as the Johnson plaintiffs imply, but a separate, earned fee for prosecuting the MDL litigation.

The bottom line for Johnson and Martino is that this Court never relinquished its ancillary jurisdiction.  Such retention of jurisdiction ensures that disputes over attorneys' fees became settled and confirmed and that the settlement itself remains a stable event, stably safeguarded.  Although Johnson and the putative class of plaintiffs here attempt again to challenge the Olmesartan settlement agreement and the attorney's fees stemming therefrom, Johnson has asserted no argument that disturbs this Court's continuing jurisdiction over ancillary fee issues.  As the Fourth Circuit noted, "just resolution of the issues raised by attorney's fees disputes requires both an intimate working knowledge of what occurred during the course of the class action and a uniform dispute resolution process." *Pioneer*, 349 F.3d at 753. Having been the Olmesartan MDL transferee court that oversaw the litigation and

settlement as well as the *Martino* attack on the common benefit fund awards, this Court possesses the details of the MDL  that no other court has or will have.

### 4.0    CONCLUSION

Accordingly, as this Court retains ancillary jurisdiction over matters relating to the MDL settlement and particularly the attorney fee awards, this Court can only decide that Johnson's motion to remand is denied.

Dated: 27 March 2024

/s Robert B. Kugler
The Honorable Robert B. Kugler
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____:
JOHNSON *et al.*,                        :
                      Plaintiffs,     :            Civil No. 23-03420 (RBK/MJS)
                                :
            v.                    :            **Memorandum and Order**
                                :
DAVID MAZIE, Esq., *et al.*             :
                      Defendants.     :
_____ :

**KUGLER**, United States District Judge:

        **THIS MATTER HAVING COME BEFORE** the Court on defendants' ["Mazie"] motion for judgment on the pleadings ["the Motion"] (Doc. No. 19),

        **THIS COURT HAVING CONSIDERED** the parties' submissions without oral argument pursuant to *Loc. R. 78.1*, for the reasons stated in the opinion below, and for good cause shown,

**ORDER:**

        **IT IS ORDERED:** defendants' motion for judgment on the pleadings (Doc. No. 19) is **GRANTED WITH PREJUDICE**;

        **IT IS FURTHER ORDERED:** in light of the findings herein, the parties' pending motions for sanctions, including plaintiffs' motion, Doc. No. 29, and defendants' motions, Doc. Nos. 37 and 38, are made moot, and

        **IT IS FURTHER ORDERED:** the Clerk of the Court is instructed to close this matter.

**MEMORANDUM OPINION**

        Alleging a violation of New Jersey Court Rule 1:21-7(i) ["*NJ Rule"*][1] governing the proper amount

---

[1] **Rule 1:21-7. Contingent Fees**

…

**(c)** In any matter where a client's claim for damages is based upon the alleged tortious conduct of another, including products liability claims and claims among family members that are subject to Part V of these Rules but excluding statutorily based discrimination and employment claims, and the client is not a subrogee, an attorney shall not contract for, charge, or collect a contingent fee in excess of the following limits:
(1) 33 1/3 % on the first $750,000 recovered;
(2) 30% on the next $750,000 recovered;
(3) 25% on the next $750,000 recovered;
(4) 20% on the next $750,000 recovered; and
(5) on all amounts recovered in excess of the above by application for reasonable fee in accordance with the provisions of paragraph (f) hereof; and

…

**(i) Calculation of Fee in Settlement of Class or Multiple Party Actions.** When representation is undertaken on behalf of several persons whose respective claims, whether or not joined in one action, arise out of the same transaction or set of facts

of contingency fees a law firm can seek, plaintiffs claim defendant law firm and its lawyers [collectively "Mazie"] took an excessive fee when Mazie settled the mass tort Olmesartan Multi-District Litigation ["MDL"].[2]  But for the names and state citizenship of the plaintiffs here, this action is identical to an earlier case filed by the same law firm in this Court, *Martino v. Mazie, 21-cv-20056 (RBK-MJS), 2022 WL 1443689 (D.N.J. May 6, 2022) ("Mazie I")*.  In *Mazie I*, this Court granted defendants' motion to dismiss with prejudice for failure to state a claim that defendants' common benefit fund award from the Olmesartan MDL violated the NJ Rule. *See Mazie I*, 2022 WL 1443689 at *8-9. The United States Court of Appeals for the Third Circuit affirmed. *See  Martino v. Mazie*, No. 22-2019, 2023 WL 1990306 at *2 (14 Feb 2023 3d Cir.) This action ["Mazie II"] merits the same fate.

Citing *Fed. R. Civ. P. ["Rule"] 12(c)*, defendants here move to dismiss plaintiffs' claims.  The Court applies a *Rule 12(b)(6)* standard to the motion.  *Revell v. Port Auth. Of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010) [*citing Turbe v. Gov't of the V.I.,* 938 F.2d 427, 428 (3d Cir.1991]). For a *Rule 12(b)(6)* motion, a court in the Third Circuit "accept[s] as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs." *U.S. Express Lines, LTD. v. Higgins,* 281 F.3d 383, 387 (3d Cir.2002).  Although not considering matters extraneous to the pleadings, a court may consider "a document *integral to or explicitly relied* upon in the complaint.  *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997).  *See especially*, *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196-1197 (3d Cir.1993) holding that a court may consider other documents upon which the complaint is based. Defendants attached to their motion this Court's ruling in *Mazie I (*Doc. No. 19-5) and  the Third Circuit's affirmance (Doc. No. 19-6). Besides considering these as integral to the complaint here, even more to the point, the Court takes judicial notice of its prior decision under *Fed. R. Evid. [FRE] 201*.

The motion turns exactly on the same claims and point of law as decided in *Mazie I:* whether defendants' common benefit fund award  from the Olmesartan MDL was an excessive contingency fee prohibited by the *NJ Rule*.  Defendants argue the common benefit fund  ["CBF"]  award was calculated correctly, which this Court approved as reasonable.

Plaintiffs argue the MDL CBF arose only because plaintiffs agreed to pay defendants'

---

or involve substantially identical liability issues, the contingent fee shall be calculated on the basis of the aggregate sum of all recoveries, whether by judgment, settlement or both, and shall be charged to the clients in proportion to the recovery of each. Counsel may, however, make application for modification of the fee pursuant to paragraph (f) of this rule in appropriate cases.
[2] The Olmesartan MDL, consolidated by the Judicial Panel on Multi District Litigation in April 2015, concerned products liability claims regarding certain, serious contraindications of taking the blood pressure medicine Olmesartan, a generic of the brand name drug Benicar®.  Generally, the contraindications resembled symptoms of celiac disease in those who ingested the drug for several years: diarrhea, weight loss, persistent gastrointestinal upset, and, for some, hospitalization.  In the summer of 2017, the MDL ended in a settlement for the thousands of U.S. consumers who experienced symptoms of varying severity from ingesting Olmesartan.  Each person who signed onto the Olmesartan settlement agreement typically had executed a contingency fee agreement with a law firm that would secure for them a portion of the settlement proceeds according to the settlement calculus based on the severity of symptoms.   In other words, those who had signed a contingency fee agreement with their law firms paid an agreed-upon percentage to the firms from the Olmesartan settlement award they received.

contingency fees and  necessarily "piggy backs" onto these fees and therefore the CBF violates the *NJ Rule* as a double payment.

In resolving this motion having identical claims as in *Mazie I*, the Court applies *sua sponte*[3] the doctrine of collateral estoppel.[4]   The Third Circuit prerequisites for *sua sponte* application are: " '(1) the issue sought to be precluded [is] the same as that involved in the prior action;  (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " *Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co.,* 63 F.3d 1227, 1231–32 (3d Cir.1995) [quoting *In re Graham,* 973 F.2d 1089, 1097 (3d Cir.1992)]; *see also Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, n. 5.  All four prerequisites are met here.

The Third Circuit four-prong collateral estoppel test comprises:

(1) the identical issue was decided in a prior adjudication;

(2) there was a final judgment on the merits;

 (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and

(4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999) [citations omitted]; *see also Burlington Northern R. Co.,* 63 F.3d at 1231-1232.

Prongs 1, 2, and 4 are met because of this Court's resolution in *Mazie I.*[5]  As for prong 3, while plaintiffs here are not the same as in *Mazie I*, the Court follows Third Circuit guidance as to the definition of privity, which  over time "has loosened to the point that the word is now used as ' way to express the conclusion that nonparty preclusion [i.e. collateral estoppel] is appropriate on any ground' " *Nationwide Mutual Fire Ins. Co. v. George V. Hamilton, Inc.* 571 F. 3d 299, 311 (3d Cir. 2009) [*quoting Taylor  v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2172, n. 8.(2008)].  This loosening of the definition introduced the concept of "virtual representation" of privity.  Here, *Mazie I* plaintiffs have served as the virtual representative of the *Johnson* plaintiffs because "there is such an identification of interest between the two as to represent the same legal right".  *Nationwide Mutual*, 571 F.3d at 311 [*quoting Collins v. E.I. DuPont de Nemours & Co.* 34 F.3d 172, 176 (3d. Cir. 1994).[6]

---

[3] As a basis for a *Rule 12(b)(6)* dismissal, collateral estoppel is an affirmative defense (*Fed. R. Civ. P. 8(c)*; *Brody v. Hankin*, 145 Fed. Appx. 768, 771 (3d Cir. 2005)).  Even though defendants here have not pled collateral estoppel, solid jurisprudence grounds this Court's *sua sponte* resolution of the motion on collateral estoppel grounds.  *See Arizona v. California*, 530 U.S. 392, 412 (2000) [internal citations omitted..

[4] Collateral estoppel also known as issue preclusion precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment., *Brownback v. King*, 141 S. Ct. 740, 747 n.3 (2021).

[5] *Mazie I* was dismissed with prejudice: this Court granted defendants' *Rule 12b6* motion and dismissed plaintiffs' *Rule 56* counter motion.

[6] The U.S. Supreme Court in *Taylor v. Sturgell*, 128 S.Ct. 2161, 2172 n. 8 (2008) vindicated the "virtual representation" approach of defining parties in privity.  *Nationwide Mutual*, 571. F.3d at 311.

Based on this guidance, the Court finds that prong 3 of the collateral estoppel test is met. All plaintiffs in this action as well as those in *Mazie I* are in "privity" with each other because: all plaintiffs in both actions signed contingency fee agreements with defendants and participated in the Olmesartan settlement; and all plaintiffs in both actions were awarded an Olmesartan settlement amount from which defendants collected their contingency fee. Since *Mazie I* and this action have identical claims with parties in privity to each other and the *Mazie I* claims were dismissed with prejudice for failure to state a claim, the Court grants defendants' motion to dismiss on the basis of collateral estoppel.

Besides demonstrating collateral estoppel from the Third Circuit test, the Court notes the U.S. Supreme Court bids courts to resolve collateral estoppel also on a policy argument of fundamental fairness.[7] To that end, the Court has reviewed the following justice and equity considerations and find they also demand a decision of collateral estoppel. Once the *Mazie I* ruling and the Third Circuit affirmance issued, plaintiffs' attorney should have respected the promulgation of the law in these opinions, and appreciated this action would be estopped because of *Mazie I.* The Court notes this action may appear to sidestep *Mazie I* and declares the re-litigation exception of the Anti-Injunction Act at under 28 U.S.C. §2283 could have been employed to prevent such an attempt to subvert the Third Circuit affirmance of *Mazie I.*

In summary, this Court has authority under Third Circuit jurisprudence to dispose of this matter *sua sponte* under the doctrine of collateral estoppel. This Court's ruling in *Mazie I* renders this action and all claims herein collaterally estopped. Because of this collateral estoppel, plaintiffs here can plead no claim of defendants' violation of the *NJ Rule* upon which relief can be granted either for themselves or for any other group of plaintiffs who contracted with defendants under a contingency fee agreement to litigate their interests in the Olmesartan MDL.

Accordingly, this Court **GRANTS** defendants' motion for judgment on the pleadings, **DISMISSES** plaintiffs' claims with prejudice, and orders the Clerk of the Court to terminate this action.

Dated: 7 May 2024

/s Robert B. Kugler
Honorable ROBERT B. KUGLER
United States District Judge

---

[7] "But as so often is the case, no one set of facts, no one collection of words or phrases, will provide an automatic formula for proper rulings on estoppel pleas. In the end, the decision will necessarily rest on the trial courts' sense of justice and equity." *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 333-34 (1971)