No. 24-1946 and No. 24-2056

In The
## United States Court of Appeals
## for the Third Circuit

ERIC JOHNSON, VANESSA WILLIAMS, Executor of the Estate of Gladys Williams, deceased, and Vanessa Williams, individually; MCARTHUR JONES, Executor of the Estate of Janet Jones, deceased, and McArthur Jones, individually; HENRIETTA WILLIAMS; ELIZABETH LAMPKIN; ROBERT DELOACH, Executor of the Estate of Carolyn Lindsey, deceased and Robert Deloach, individually; CARMEN MORENO; ROSA MORENO; THERESA NIX; DEBORAH HENSLEY; LORETTA G. ROBINSON; GREGORY H. HEMPHILL; DELORES HOWARD; MAGGIE CURRY; JEAN FIEBELKORN; ELVINA GALLOW; ANGELA MILLER; GLORIA MCCASTER; CAROLYN SILL; JENNIFER DAVIS; and KATRINA HARRY,
Appellants/Cross-Appellees

v.

DAVID A. MAZIE; ADAM M. SLATER;
and MAZIE SLATER KATZ & FREEMAN LLC,
Appellees/Cross-Appellants

On Appeal from the United States District Court For the District of New Jersey
Civil Case No. 1:23-cv-3420-RBK-MJS, Honorable Robert B. Kugler, U.S.D.J.

## BRIEF OF APPELLEES/CROSS-APPELLANTS

Adam M. Slater
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway, Suite 207
Roseland, New Jersey 07068
P: 973-228-9898
E: aslater@mazieslater.com
*Counsel for Appellees/Cross-Appellants*

Dated: September 23, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF ISSUES PRESENTED ........................................................ 4

RELATED CASES AND PROCEEDINGS ....................................................... 5

STATEMENT OF THE CASE ......................................................................... 5

    A.    The Benicar MDL ............................................................................ 5

    B.    The *Martino* Matter ...................................................................... 6

    C.    The *Johnson* Matter ...................................................................... 12

STANDARD OF REVIEW ............................................................................ 18

SUMMARY OF ARGUMENT ...................................................................... 18

LEGAL ARGUMENT .................................................................................. 20

    POINT I

    THE DISTRICT COURT CORRECTLY DENIED PLAINTIFFS'
    MOTION TO REMAND ........................................................................ 20

    A.    The District Court had Ancillary Enforcement Jurisdiction to
        Safeguard the Settlement in the Benicar MDL and the
        CBF Distributions ........................................................................ 21

    B.    Diversity Jurisdiction Existed Notwithstanding Plaintiffs'
        Fruitless Effort to Minimize the Value of the Amount
        in Controversy ............................................................................ 23

    C.    *Grable* Jurisdiction Existed Also Warranting Denial of
        the Motion to Remand .................................................................. 25

POINT II

THE DISTRICT COURT CORRECTLY DISMISSED
THE COMPLAINT ...................................................................... 27

A.    The District Court Correctly Applied the Doctrine
      of Collateral Estoppel to Dismiss Plaintiffs'
      Copycat Lawsuit.................................................................. 28

B.    The Complaint Lacked Substantive Merit Which, Likewise,
      Warranted Dismissal .......................................................... 32

      1.    New Jersey Court Rule 1:21-7(i) Cannot Give Rise
            to a Colorable Cause of Action ..................................... 33

      2.    Because CBF Awards Are Not Attorney's Fees Subject to
            the Retainer Agreement, Mazie Slater Did Not Improperly
            Double Bill or Charge Its Clients Unreasonable Fees in
            Violation of Rule 1:21-7 or R.P.C. 1.5 .......................... 38

POINT III

NO QUESTION ON THIS APPEAL SHOULD BE CERTIFIED.... 40

POINT IV

THE DISTRICT COURT ERRED IN DENYING MAZIE SLATER'S
MOTIONS FOR SANCTIONS AS MOOT ........................................ 42

POINT V

THERE WAS NO COGNIZABLE BASIS TO SANCTION
MAZIE SLATER UNDER N.J.S.A. 2A:53A-41(F) .......................... 49

CONCLUSION ....................................................................................... 52

COMBINED CERTIFICATIONS ............................................................ 53

## TABLE OF AUTHORITIES

**Cases:**

*Aardvark Child Care & Learning Ctr., Inc. v. Township of Concord*,
288 Fed. App'x 16 (3d Cir. 2008) ................................................................ 42

*Adefumi v. Prosper*, 785 Fed. App'x 935 (3d Cir. 2019) ............................ 30

*Atwell v. Metterau*, 255 Fed. App'x 655 (3d Cir. 2007).............................. 29

*Balthazar v. Atlantic City Medical Center*,
137 Fed App'x 482 (3d Cir. 2005)................................................................ 43

*Brice v. Bauer*, 689 Fed. App'x 122 (3d Cir. 2017) .................................... 42

*Bullock v. Klein*, 502 Fed. App'x 113 (3d Cir. 2012)................................... 30

*Butt v. United Brotherhood of Carpenters & Joinders of America*,
999 F.3d 882 (3d Cir. 2021)......................................................................... 21

*C.A.C. v. United States*, 449 F. App'x 194 (3d Cir. 2011) .......................... 22

*Casey v. Denton*, 2017 WL 3461363 (S.D. Ill. Aug. 11, 2017) ................... 27

*Chambers v. NASCO*, Inc., 501 U.S. 32 (1991)........................................... 47

*Corsini v. Bloomberg*, 26 F. Supp. 3d 230 (S.D.N.Y. 2014)........................ 44

*Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259 (3d Cir. 1978) .............. 32

*Dewey v. Volkswagen*, Nos. 07–2249(FSH), 07–2361(FSH),
2012 WL 8433901 (D.N.J. Nov. 26, 2012) .................................................. 45

*EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp.2d 556 (D.N.J. 2000)...... 50

*Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*,
902 F.3d 147 (3d Cir. 2018)......................................................................... 21

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ............ 24

*Farmer v. Potteiger*, Civ. No. 3:12-808,
2012 WL 5398626 (M.D. Pa. Sept. 28, 2012) .................................................. 32

*Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) ....................... 29

*Fleisher v. Standard Ins. Co.*, 679 F.3d 116 (3d Cir. 2012) .......................... 18

*Frederick v. Range Res.-Appalachia, LLC*,
No. 22-1827, 2023 WL 418058 (3d Cir. Jan. 26, 2023) ............................... 21

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) .............................. 23

*Gary v. Braddock Cemetery*, 517 F.3d 195 (3d Cir. 2008) ...................... 42,43

*Gillette v. Prosper*, 852 Fed. App'x 642 (3d Cir. 2021) ........................... 18,33

*Grable & Sons Metal Prod., Inc. v. Darue Engineering & Mfg.*,
545 U.S. 308 (2005) ................................................................................ 25,26,27

*Gunn v. Minton*, 568 U.S. 251 (2013) ........................................................... 25

*Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173 (3d Cir. 2021) ....... 21

*Huber v. Taylor*, 532 F.3d 237 (3d Cir. 2008) ............................................... 25

*In re Austrian and German Bank Holocaust Litig.*,
317 F.3d 91 (2nd Cir. 2003) ............................................................................ 21

*In re Avandia Mktg., Sales Pracs. & Liab. Litig.*,
469 F. Supp. 3d 357 (E.D. Pa. 2020) ............................................................... 47

*In re Bard IV Filter Products Liability Litig.*,
603 F. Supp. 3d 822 (D. Ariz. 2022) ............................................................... 26

*In re Expungement Application of D.J.B.*, 83 A.3d 2 (N.J. 2014) ................ 50

*In re Prosser*, 777 F.3d 154 (3d Cir. 2015) .................................................. 47

*In re Prudential*, 278 F.3d 175 (3d Cir. 2002) .............................................. 47

*In re Roundup Products Liability Litig.*,
544 F. Supp. 3d 950 (N.D. Cal. 2021) ........................................ 26

*K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963 (9th Cir. 2014) ................ 22

*Kieffer v. All State N.J. Insur. Co.*, 561 F.3d 144 (3d Cir. 2009) ................ 24

*King v. East Lampeter Twp.*, 69 Fed. App'x 94 (3d Cir. 2003) .................... 29

*Kirsch v. Horizon Blue Cross Blue Shield of New Jersey*,
A-0119-12, 2013 WL 5507660 (N.J. App. Div. Oct. 7, 2013) ..................... 45

*Kokkonen v. Guardian Life Ins. Co of America*, 511 U.S. 375 (1994) ......... 21

*Krugman v. Mazie Slater Katz & Freeman, LLC*,
A-2611-13, 2015 WL 1880073 (N.J. App. Div. Apr. 27, 2015) .................. 45

*LaChance v. Erickson*, 522 U.S. 262 (1998) ............................................... 32

*Lai v. Wei*, No. 07-179, 2007 WL 1963331 (D.N.J. June 29, 2007) ............ 43

*Laurel Gardens, LLC v. McKenna*, 948 F3d 105 (3d Cir. 2020) ................. 33

*Leahy v. Skylands Medical Group, P.C., et al.*,
Docket No. MRS-L-1393-16 (N.J. Law Div. Apr. 9, 2020) ........................ 36

*Levine v. Mazie Slater Katz & Freeman, LLC*,
Docket No. BER-L-2736-12 (N.J. Law Div.) .............................................. 45

*Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
202 F. Supp. 2d 126 (S.D.N.Y. 2002) ........................................................ 44

*Magoni-Detwiler v. Pennsylvania*,
502 F. Supp. 2d 468 (E.D. Pa. 2007) .................................................... 31,32

*Marsh v. Genentech, Inc.*, 693 F.3d 546 (6th Cir. 2012) ............................. 34

*Martino v. Mazie*, 2022 WL 1443689 (D.N.J. May 6, 2022) ............... *passim*

*Martino v. Mazie*, 2023 WL 1990306 (3d Cir. Feb. 14, 2023)..............*passim*

*McMillan v. Rodriguez*, 337 F.R.D. 27 (D.P.R. 2020) .................................. 46

*Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986) ..................... 26

*Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984).............. 28

*Mitchel v. City of Santa Rosa*, 601 Fed App'x 466 (9th Cir. 2015) ............. 43

*Montana v. United States*, 440 U.S. 147 (1979).......................................... 28

*Moody v. Chevron Chem. Co.*, 505 N.W.2d 900 (Mich. Ct. App. 1993)..... 34

*Nash v. Jilles*, Civ. A. No. 7-3985,
2007 WL 2844823 (E.D. Pa. Sept. 28, 2007) ................................................ 32

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
571 F.3d 299 (3d Cir. 2009)........................................................................... 30

*Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003 (N.J. 2006)........................ 28

*Owners Insur. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388 (3d Cir. 2016) .... 25

*Taylor v. Sturgell*, 553 U.S. 880 (2008)................................................. 30,31

*Tonka Corp. v. Rose Art Indus.*, Inc., 836 F. Supp. 200 (D.N.J. 1993)........ 29

*TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019)..................................... 33

*Travelers Indem. Co. v. DiBartolo*, 171 F.3d 168 (3d Cir. 1999) ................ 41

*Turbe v. Government of the Virgin Islands*, 938 F.2d 427 (3d Cir. 1991) ... 18

*United States v. Defreitas*, 29 F.4th 135 (3d Cir. 2022) ............................... 41

*USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190 (3d Cir. 2003) ...................... 21

*Witkowski v. Welch*, 173 F.3d 192 (3d Cir. 1999) .................................. 28,31

*Wolicki-Gables v. Arrow Int'l, Inc.*,
641 F. Supp. 2d 1270 (M.D. Fla. 2009) ....................................................... 34

*Young v. Bloomingdale's Short Hills*, 2021 WL 4170025 (D.N.J. 2021) ..... 23

*Zimmerman v. City of Austin*, 969 F.3d 564 (5th Cir. 2020) ........................ 22

*Zimmerman v. Corbett*, 873 F. 3d 414 (3d Cir. 2017) ................................. 18

*4SIGHT Supply Chaing Group, LLC v. Gulitus*,
__ F. Supp. 3d __ (D.N.J. 2024) ................................................................. 23

## Statutes:

N.J.S.A. 2A:53A-27 ....................................................................................... 13

N.J.S.A. 2A:53A-41 ............................................................................... *passim*

28 U.S.C. § 1367 ..................................................................................... 12,24

28 U.S.C. § 1407 ........................................................................................... 27

28 U.S.C. § 1441 ........................................................................................... 12

## Court Rules:

Fed. R. Civ. P. 12 .................................................................................. *passim*

Fed. R. Civ. P. 56 ..................................................................................... 31,32

N.J. Court Rule 1:21-7 .......................................................................... *passim*

## Other Sources:

R.P.C. 1.5 .............................................................................................. *passim*

## PRELIMINARY STATEMENT

Just last term, this Court upheld the District Court's dismissal of a substantively identical lawsuit filed by the same law firm against David Mazie, Adam Slater, and Mazie Slater Katz & Freeman, LLC (collectively "Mazie Slater"). *See Martino v. Mazie*, 2022 WL 1443689 (D.N.J. May 6, 2022), *aff'd*, 2023 WL 1990306 (3d Cir. Feb. 14, 2023).

In *Martino*, the plaintiff, represented by Bruce Nagel of Nagel Rice LLP, brought claims for legal malpractice, conversion, and unjust enrichment against Mazie Slater related to the multidistrict litigation *In re Benicar (Olmesartan) Products Liability Litigation*, 1:15-md-2606 (the "Benicar MDL"). The plaintiff in *Martino* alleged that: Mazie Slater (but no other plaintiff law firm subject to the New Jersey Court Rules) was required to calculate its attorney's fees based on an aggregation of gross settlements of its clients under New Jersey Court Rule 1:21-7(i), regardless of the differences in the facts and liability issues presented from claim to claim; Mazie Slater improperly "double dipped" in failing to credit its clients for fees and expenses received from the common benefit fund (CBF); and Mazie Slater violated R.P.C. 1.5(a) and R.P.C. 1.5(c) by not disclosing its receipt of CBF awards to its clients and by not decreasing the amount it charged its MDL clients in light of the CBF award, thereby rendering their attorney's fees "unreasonable."

1

The District Court (the same judge who oversaw the Benicar MDL) in *Martino* held that "Rule 1:21-7(i) does not apply to cases consolidated in either a Multicounty or a Multidistrict litigation." 2022 WL 1443689, at *8. The District Court determined that this "holding arises from the Court's experience as the transferee Court of the Olmesartan MDL to observe firsthand that the administration of the Olmesartan settlement program concerned not only the common liability issue of injury caused by Olmesartan ingestion but also the very different and the very specific factual details of each such injury for each consolidated case." *Ibid.* The District Court also observed that no case has ever equated "a plaintiff's single, product liability claim in an MDL or MCL to other such claims in the same MDL or MCL," which also "militates against the applicability of Rule 1:21-7(i)." 2022 WL 1443689, at *6.

The District Court also determined as a matter of law that the CBF award was "remuneration to the Olmesartan registrants' attorneys for their efforts to steer the MDL litigation" to settlement. *Id.* at *8. In fact, as the District Court wrote in its order approving the CBF distribution, it compensated work done and expenses incurred by MDL attorneys, like Mazie Slater, for "the common benefit of *all* MDL plaintiffs," not for work solely for individual plaintiffs governed by each retainer agreement. The District Court dismissed the action with prejudice.

2

This Court affirmed the District Court's ruling. *Martino*, 2023 WL 1990306, at \*1. This Court determined that no legal authority existed to support the allegation that "awards disbursed from CBFs by court order to attorneys who exercised leadership roles in MDLs must be credited or paid to the attorneys' clients" and the CBF awards were "remuneration to the Olmesartan registrants' attorneys for their efforts to steer the MDL litigation." *Ibid.* As such, the plaintiff's allegation of "improper double billing" could not "support legal malpractice, conversion, or unjust enrichment claims." *Ibid.* This Court also determined that "a court-managed CBF is distinct from an attorney-client retainer agreement, and CBF awards are distinct from contingent fees," and therefore no cognizable violations of R.P.C. 1.5(a) or 1.5(c) existed. *Id.* at \*2. Lastly, this Court ruled the District Court did not err in rejecting the alleged violation of Rule 1:21-7(i). *Id.* at \*3.

Despite this Court's clear rulings, Mr. Nagel and Nagel Rice LLP filed the present action, again asserting the same claims of legal malpractice, conversion, unjust enrichment and improper double recovery as well as breach of contract for violating the individual retainer agreements Mazie Slater had with its Benicar clients—essentially the same exact legal theories. Although Plaintiffs mischaracterized the allegations so as to avoid the same result in *Martino*, the District Court saw through that façade and dismissed the Complaint on collateral estoppel grounds. Even assuming, as Plaintiffs argue, that the District Court erred in

3

dismissing the action on collateral estoppel grounds, the sound reasoning of the District Court's decision and this Court's affirmance in *Martino* requires the dismissal of Plaintiffs' complaint on the pleadings.

## STATEMENT OF ISSUES PRESENTED

1.　Did the District Court have jurisdiction over this fee dispute between completely diverse parties involving a dispute over $75,000 and arising from the District Court's management and administration of the Benicar MDL?

2.　Did the District Court properly dismiss Plaintiffs' complaint given that the claims are identical to those in *Martino*, which was also dismissed with prejudice by the District Court and later affirmed by this Court?

3.　Did the District Court err in denying as moot Mazie Slater's motion for sanctions where Plaintiffs' counsel directly solicited Mazie Slater's clients and filed an action with identical claims premised on the same factual allegations with the intent to harass his former law partners—with no claims brought against other law firms who were also governed by the New Jersey Court Rules, and Plaintiffs' unqualified expert signed a frivolous affidavit of merit supporting materially identical claims that were previously dismissed with prejudice?

4.　Did the District Court properly deny Plaintiffs' motion for sanctions related to Mazie Slater's motion for sanctions against their unqualified expert?

4

## RELATED CASES AND PROCEEDINGS

This case is related to the prior legal malpractice case, *Martino v. Mazie*, 1:21-cv-20056, 2022 WL 1443689 (D.N.J. May 6, 2022), *aff'd*, No. 22-2019, 2023 WL 1990306 (3d Cir. Feb. 14, 2023), which served as the District Court's basis for dismissing the Complaint.

This case is also related to the multidistrict litigation, *In re Benicar (Olmesartan) Products Liability Litigation*, 1:15-md-2606, consolidated in the District of New Jersey before the Honorable Robert B. Kugler, as well as a multi-county litigation concerning the same products in New Jersey Superior Court—*In re Benicar (Olmesartan Medoxomil)*, Civil Action No. 299 (MCL). Both litigations were subject to a global settlement overseen by the MDL Court.

## STATEMENT OF THE CASE

### A. The Benicar MDL

Beginning in 2015, Mazie Slater represented more than two hundred clients in the multi-district litigation ("MDL") *In Re Benicar (Olmesartan) Products Liability Litigation*, 1:15-md-02606 ("the Benicar MDL"), which was managed by the District Court. (Pa113; Pa196) Mazie Slater's clients resided in thirty-four different states: Alabama, Arizona, Arkansas, California, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nevada, New Jersey,

5

New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Utah, Virginia, West Virginia, and Wisconsin. (Pa42-44). Mazie Slater's clients did not uniformly use the same Olmesartan medications, as usage varied between four different medications—Benicar, Benicar HCT, Tribenzor, and Azor—which were prescribed for different indications, by different doctors, and at different times.[1] (Pa210). Mazie Slater's clients also presented with widely varying prescribing doctors, medical histories, and injuries. (Pa210)

After approximately two years of intensive litigation, thousands of individuals—including Mazie Slater's clients—resolved their cases as part of a global settlement in excess of $300 million that was implemented and overseen by the District Court. (Pa163). The settlement structure established six levels of recovery: level one involved the most severe injuries with the clearest forms of causation while level six involved the least severe injuries with little to no proof of causation. (Pa216-220). Separately, the District Court ordered common benefit awards to Mazie Slater and other common benefit counsel. (Pa107; Pa163).

## B. The *Martino* Matter

Years after the settlement funds were disbursed, attorney Bruce Nagel sent a targeted mass mailing to solicit *only* Mazie Slater's former clients with the hope of

---

[1] This is significant because some clients used the medication prior to July 3, 2013, when labeling changes were made to add a warning for sprue-like enteropathy.

conjuring a lawsuit against Mazie Slater. Mr. Nagel's intent to harass Mazie Slater cannot be disputed—otherwise he would have sought to contact the clients of *all* law firms involved in the Benicar MDL. (Pa204).

Several months later, Mr. Nagel filed a putative class action against Mazie Slater in the Superior Court of New Jersey ("*Martino*"). The fact that Mr. Nagel only sued Mazie Slater on behalf of Mazie Slater's clients and did not file suit against any other law firm in the Benicar MDL or seek relief for any plaintiff represented by any other law firm in the Benicar MDL, again, demonstrates the single-minded purpose to harass Mazie Slater and its attorneys. (Pa109).

*Martino* involved three overlapping causes of action: legal malpractice (count one), conversion (count two), and unjust enrichment (count three). There, the putative class alleged that Mazie Slater received contingent fees from the Benicar MDL in violation of New Jersey Court Rules 1:21-7(c), (f), and (i). Specifically, the complaint alleged that Mazie Slater knowingly overcharged their clients because, according to Mr. Nagel, Mazie Slater should have credited (as well as advised) its clients with/about monies it received through the settlement's common benefit fund ("CBF"), and that Mazie Slater should have aggregated its clients' recoveries before calculating the attorney's fees under New Jersey Court Rule 1:21-7(i). (Pa109-116).

Mazie Slater removed the case to federal court, and then moved to dismiss the complaint with prejudice, which the District Court granted. *See Martino v. Mazie*,

No. 21-cv-20056 (RBK-MJS), 2022 WL 1443689, at *1 (D.N.J. May 6, 2022)

(Kugler, U.S.D.J.). The District Court determined:

> In addition to examining the intrinsic language and context of the statute, the Court researched extrinsic guidance by conducting several, different search queries for cases, court orders, and MDL actions to see how other states have interpreted "arise out of the same transaction or set of facts or involve substantially identical liability issues". **The Court came up short and found no court cases or jurisprudence that equates a plaintiff's single, product liability claim in an MDL or MCL to other such claims in the same MDL or MCL. The very absence of relevant case law as to whether New Jersey (or any other state) Court Rules govern the contingency fee award of MDL or MCL plaintiffs militates against the applicability of Rule 1:21-7(i) here**.
>
> * * * *
>
> Ultimately, **the Court holds the plain language of Rule 1:21-7(i) does not apply to cases consolidated either in a Multicounty litigation or a Multidistrict litigation**. And this inapplicability has nothing to do with the specific, underlying legal issues, whether business torts or products liability. This holding arises from the Court's experience as the transferee Court of the Olmesartan MDL to observe firsthand that the administration of the Olmesartan settlement program concerned not only the common liability issue of injury caused by Olmesartan ingestion but also the very different and the very specific factual details of each such injury for each consolidated case.
>
> * * * *
>
> In essence, **the common benefit fund award was remuneration to the Olmesartan registrants' attorneys for their efforts to steer the MDL litigation and to bring the MDL to settlement**. The MCL litigants unwittingly benefited from these common benefit efforts, which propelled the Olmesartan settlement program.

8

*Id.* at \*6, \*8 (emphasis added).

After the District Court dismissed *Martino*, Mr. Nagel offered commentary to an electronic legal publication, Law360. (Pa201-202). Therein, Mr. Nagel called the District Court's decision "nonsense" and claimed that when the case was filed, he "knew that it would be decided by the Third Circuit, not the [D]istrict [C]ourt, because it was an issue of first impression," and he "fully" expected "the Third Circuit will directly interpret the New Jersey court rule and … find that the Mazie Slater firm substantially overcharged their clients and they did so knowingly." (Pa201-202).

This Court disagreed and affirmed the District Court's ruling. *See Martino v. Mazie*, No. 22-2019, 2023 WL 1990306 (3d Cir. Feb. 14, 2023). This Court determined:

> **Martino alleges that Mazie Slater should have credited its individual MDL clients for monies it received through the MDL settlement's common benefit fund (CBF). Martino has identified no legal authority supporting the theory that awards disbursed from CBFs by court order to attorneys who exercised leadership roles in MDLs must be credited or paid to the attorneys' clients. And we know of none**. So the MDL plaintiffs were never entitled to the CBF award— which, **as the District Court noted, was "remuneration to the Olmesartan registrants' attorneys for their efforts to steer the MDL litigation" to settlement**. As the District Court wrote in its order approving the CBF distribution, it compensated work done and expenses incurred by MDL attorneys "for the common benefit of all MDL plaintiffs," not for work governed by each retainer

9

agreement. **So Martino's allegation of "improper double dipping," can't support legal malpractice, conversion, or unjust enrichment claims. Because double-billing was the only allegation supporting Martino's unjust enrichment claim, the District Court properly dismissed that claim**.

\* \* \* \*

**Martino likewise cites no law supporting his suggestion that Mazie Slater had to disclose its potential receipt of CBF awards to its MDL clients**. He argues that Rule 1.5(c) of New Jersey's Rules of Professional Conduct mandated disclosure. . . .But a court-managed CBF is distinct from an attorney-client retainer agreement, and CBF awards are distinct from contingent fees. **As the District Court stated when ordering the CBF distribution, disbursement would occur "only after the awards to all participants in the Olmesartan settlement have been paid or distributed." So Martino's Rule 1.5(c) allegation also failed, as a matter of law, to entitle him to relief**.

\* \* \* \*

Martino argues as well that Mazie Slater violated Rule 1.5(a) of the Rules of Professional Conduct by not decreasing the amount it charged its MDL clients in view of its anticipated CBF award. Rule 1.5(a) lists eight factors "to be considered in determining the reasonableness of a fee." R.P.C. 1.5(a). None of them encompasses receipt of court-ordered CBF awards, however, presumably because **CBF awards are not attorney's fees.**

2023 WL 1990306, at \*1-2 (emphasis added).

Importantly, during the pendency of *Martino*, Mr. Nagel sent yet another round of solicitation letters—again to *only* Mazie Slater's former clients—in the hopes of pursuing a similar legal malpractice case arising from Mazie Slater's settlement of numerous cases in the vaginal/pelvic mesh multi-county litigation in

10

the New Jersey Superior Court ("MCL"). (Pa316). The Honorable Rachelle L. Harz,

J.S.C. (ret.), the judge then presiding over the pelvic mesh MCLs, ultimately entered

Orders expressly making clear that Rule 1:21-7(i) is inapplicable to a mass tort

litigation, and that common benefit awards are for the benefit of the law firm only:

> ORDERED that the **calculation of attorneys' fees and expenses for the settlement or judgment of any case or cases in this Multi County Litigation at any time shall be made in accordance with R. 1:21-7(c) and R. 1:21-7(d)**; and
>
> ORDERED that **R. 1:21-7(i) is not applicable to the calculation of attorneys' fees and expenses for the settlement or judgment of any case or cases in this litigation at any time**, as the claims raised in each case do not arise from the same transaction, the same set of facts, or involve substantially identical liability issues. . . .
>
> ORDERED that any **common benefit award or allocation to a law firm is to the law firm only, and is/was not intended to be paid to the law firm's individual clients**. . .

(Pa231-232) (emphasis added).[2]

---

[2] As the District Court and this Court noted, no MCL or MDL judge has ever required an aggregation of cases to calculate attorney's fees on the entire amount of all settlements obtained by a law firm under New Jersey Court Rule 1:21-7(i). To the contrary, the Honorable Brian R. Martinotti, U.S.D.J., who was presiding over the pelvic mesh MCL before being appointed to the federal bench, ordered a reasonable attorney's fee on a $5 million settlement pursuant to Rule 1:21-7(c), even though Mazie Slater had multiple pelvic mesh cases aggregating in excess of $2 million. (Pa318-320). Similarly, Judge Harz, who was also overseeing the Allergan and Elmiron MCLs, issued Orders directing the application of Rule 1:21-7(c) "to the calculation of attorneys' fees and expenses for the settlement or judgment of any case **or cases** in this litigation." (Pa237; Pa245) (emphasis added).

The District Court—and this Court—made clear to Mr. Nagel that there was no basis in the existing law, nor an argument for establishing new law, to support the contention that attorneys have a legal and ethical duty to disclose their potential receipt of CBF awards to their MDL clients; that CBF awards disbursed by court order to attorneys in an MDL must be credited or paid to the attorney's clients; or that settlements in an MDL needed to be aggregated for purposes of the calculation of attorney's fees pursuant to Rule 1:21-7(i).

### C. The *Johnson* Matter

Plaintiff counsel, however, continued his harassment of Mazie Slater—filing this case in the New Jersey Superior Court—espousing the same allegations that were advanced in *Martino*. The case was filed in the New Jersey Superior Court with the intent to avoid federal jurisdiction and the direct application of the *Martino* decisions. This time, Mr. Nagel did not file a putative class action and included language in the complaint attempting to avoid federal jurisdiction, incorrectly pleading that the amount in controversy was less than $75,000. (Pa44).

Mazie Slater removed the state action to federal court based on federal diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1); federal question jurisdiction pursuant to 28 U.S.C. § 1331; *Grable* jurisdiction; and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367 and 1441(c). (Pa11). Plaintiffs filed a motion to remand, which Mazie Slater opposed. (Pa11; Pa27-28)

In September 2023, while that motion was pending, Mazie Slater filed a motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), which Plaintiffs opposed. (Pa18; Pa29). Plaintiffs' opposition was replete with contentions and arguments that were previously made in *Martino* and rejected by the District Court as well as this Court. The next month, pursuant to N.J.S.A. 2A:53A-27, Mr. Nagel filed an affidavit that was signed by Robert Borteck, Esq.—a trust and estates attorney with no personal injury, mass tort, or products liability experience to the knowledge of Defendants—who "opined" without reference to the *Martino* decision—that after reviewing the materials provided to him by Mr. Nagel, Mazie Slater's conduct fell outside the acceptable professional standards with regard to the representation of its clients. (Pa258-259).

In January 2024, Mazie Slater filed two separate motions for sanctions. (Pa331-332; Pa264-265). The first motion for sanctions—made against Bruce Nagel and Nagel Rice LLP—was premised on Mr. Nagel's continued harassment of Mazie Slater made clear by his attempt to re-litigate contentions and arguments that were previously rejected by the District Court and this Court. Also, among other things, Mr. Nagel, again in bad-faith, included David Mazie as the first-named defendant despite knowing that David Mazie did not participate in the Benicar MDL in any capacity. Not once in Plaintiffs' complaint is there even a cursory reference to any

acts or omissions on the part of David Mazie that would justify including him in this action.

The second motion for sanctions—made against Plaintiffs' expert, Mr. Borteck—was based on intentional indifference to the factual record and legal authority, *i.e. Martino*, before signing the affidavit of merit in support of allegations that were previously considered and rejected. In response to Mazie Slater's motions for sanctions against Mr. Borteck, Mr. Nagel filed a motion for sanctions alleging a violation of N.J.S.A. 2A:53A-41(f), which based on the plain language of that statute, does not apply because it only deals with circumstances where a party takes "adverse" action against an expert that affects his or her "employment, accreditation, certification, credentialing, or licensure." (Pa252-254).

In an effort to circumvent the decisions in *Martino*, Mr. Nagel wrote to the New Jersey Supreme Court Civil Practice Committee ("Civil Practice Committee") proposing a change to Rule 1:21-7 "to make clear that paragraph (c) and (i) provisions apply to Multicounty Litigation matters." (Pa368-369; Pa381). The Civil Practice Committee outright rejected Mr. Nagel's request:

> The Committee was not persuaded that a rule change is necessary, noting that the "common benefit fund" is a fund whereby the lead counsel in an MDL or MCL expends money for expert fees and deposition costs which benefit the plaintiffs in all of the actions. As a result, the lead counsel is entitled to an award to offset these expenditures. **The award is separate and distinct from an "attorney fee award" which is contemplated by Rule 1:21-7 and**

14

**therefore is not subject to those limitations.** MCL and MDL litigation would otherwise be cost prohibitive for firms representing a single or small number of plaintiffs.

**The Committee disagreed with the requestor's characterization of the fees as "attorney's fees" under the rule** determining that the award complained of was in fact an award to repay the common expenses. Moreover, **due to the existence of individuals cases in MCL and MDL litigation, as opposed to a class action which consist of one action with several plaintiffs, there generally are separate retainers for each case and the attorney is entitled to an attorney fee award in each of the cases subject to the retainer agreement. The court rule is not intended to limit the aggregate sum of the attorney fee awards of each individual case. As such the Committee does not recommend a rule change.**

(Pa381-382) (emphasis added).[3] Mr. Nagel failed to apprise the District Court that the Civil Practice Committee rejected his application, which eviscerated his theories in this matter.

On March 27, 2024, the District Court denied Plaintiffs' motion to remand. In finding that it had ancillary enforcement jurisdiction over the fee dispute, the District Court noted:

The current dispute in this case is whether this Court has jurisdiction to resolve the asserted fee dispute: Mazie has received not only contingency fees from each of its clients who participated in the Olmesartan settlement but also a common benefit fee award because of its efforts in the MDL as plaintiffs' executive counsel. Johnson asserts this

---

[3] The New Jersey Supreme Court agreed with the Civil Practice Committee and refused to amend Rule 1:21-7. See NOTICE TO THE BAR (Apr. 26, 2024), https://www.njcourts.gov/sites/default/files/notices/2024/04/n240429a.pdf.

award amounts to double payment and is in violation of the Rule.

* * * *

**Important to resolving this motion is that this action is nearly identical to an action previously filed in 2021 by the same plaintiffs' counsel, which, as here, claimed that Mazie violated the Rule because it had received excessive attorneys fees in the form of a common benefit award in the Olmesartan MDL**. This Court dismissed with prejudice the previous lawsuit…Upon appeal of that decision by Martino's counsel, the Third Circuit affirmed this Court's resolution of the dispute. . . . The significant difference between this matter and *Martino v. Mazie* is that Johnson alleges this Court can have no federal matter or diversity jurisdiction over the determination of an excess fee award to Mazie and therefore cannot decide this matter. **The Court sees that both the complaint filed in state court and the motion seek to avoid this Court's similar decision as in Martino: that the Rule does not apply to common benefit law efforts of plaintiffs' counsel in MDLs.**

*Johnson v. Mazie*, 2024 WL 1298901, at *3 (D.N.J. Mar. 27, 2024) (emphasis added) (Pa9-17). The District Court correctly observed: "the underlying dispute—attorneys fees—is an ancillary issue to the Olmesartan MDL claims—all product liability issues. Accordingly, this Court has and does retains ancillary jurisdiction over all issues not central to the products liability issues of the MDL, which, without doubt, include the fee dispute here." *Id.* at *4. The District Court noted that the "bottom line for Johnson and Martino is that this Court never relinquished its ancillary jurisdiction. Such retention of jurisdiction ensures that disputes over attorneys' fees became settled and confirmed and that the settlement itself remains a stable event,

stably safeguarded. Although Johnson and the putative class of plaintiffs here attempt again to challenge the Olmesartan settlement agreement and the attorney's fees stemming therefrom, Johnson has asserted no argument that disturbs this Court's continuing jurisdiction over ancillary fee issues." *Id.* at \*6. In other words, Plaintiffs' attempt to challenge the CBF awards, if successful, had the effect of upending the entire Benicar MDL, and the District Court had the jurisdiction to enforce the CBF Orders.

Several months later, the District Court applied the doctrine of collateral estoppel and granted Mazie Slater's motion for judgment on the pleadings, Fed. R. Civ. P. 12(c). *Johnson v. Mazie*, 2024 WL 2022719, at \*1 (D.N.J. May 7, 2024) (Pa18-21). The District Court correctly noted the "motion turns exactly on the same claims and point of law as decided in *Mazie I*: whether defendants' common benefit fund award from the Olmesartan MDL was an excessive contingency fee prohibited by the *NJ Rule*." *Id.* at \*2. The District Court properly framed the crux of Plaintiffs' argument: "the MDL CBF arose only because plaintiffs agreed to pay defendants' contingency fees and necessarily 'piggy backs' onto these fees and therefore the CBF violates the NJ Rule as a double payment." *Ibid.*

In applying the doctrine of collateral estoppel, the District Court correctly determined that the issues were identical to those raised in *Martino*, there was a final judgment on the merits given the dismissal with prejudice for failure to state a claim,

17

and the putative class in *Martino* had a full and fair opportunity to litigate the issues given that a cross-motion for summary judgment was filed. *Id.* at \*2 n.5. The District Court also correctly determined the privity requirement was satisfied because "all plaintiffs in both actions signed contingency fee agreements" with Mazie Slater and "participated in the Olmesartan settlement." *Id.* at \*3.

Whether applying collateral estoppel or simply following the precedent of *Martino*, the action was properly dismissed. The District Court did, however, err in dismissing Mazie Slater's motions for sanctions as moot, and sanctions are warranted.

## <u>STANDARD OF REVIEW</u>

The standard of review applicable to a Rule 12(c) motion for judgment on the pleadings is the same as a motion to dismiss brought under Rule 12(b)(6). *See, e.g.*, *Zimmerman v. Corbett*, 873 F. 3d 414, 417 (3d Cir. 2017); *Turbe v. Government of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). This Court exercises a plenary standard of review. *See Gillette v. Prosper*, 852 Fed. App'x. 642, 644 (3d Cir. 2021); *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012).

## <u>SUMMARY OF ARGUMENT</u>

This copycat lawsuit, like *Martino*, is premised on multiple patently erroneous propositions that have been uniformly rejected by every court that has considered them, including this Court.

First, the District Court correctly denied Plaintiffs' motion to remand. Second, Plaintiffs continue to argue that law firms handling multiple cases in a mass tort litigation must aggregate the settlement or verdict values of all of their clients when calculating attorney's fees pursuant to Rule 1:21-7(i). That would mean that every state and federal court that has overseen a mass tort litigation has misapplied Rule 1:21-7 for decades. But Rule 1:21-7(i), as the District Court in *Martino* found, has never been applied in a mass tort setting because no case has ever equated a plaintiff's single product liability claim in a mass tort with other such claims in the same litigation. The District Court, this Court, multiple MCL courts, the Civil Practice Committee, and the New Jersey Supreme Court have rejected the erroneous interpretation of Rule 1:21-7(i) advanced by Plaintiffs' counsel, again.

Third, Plaintiffs again incorrectly argue that CBF awards in MDLs and MCLs belong to the clients, rather than the law firms that performed the work on behalf of the entire class of plaintiffs in the mass tort litigation. This argument demonstrates a complete misunderstanding of the purpose behind common benefit work and CBF awards and ignores the actual Orders here. CBF awards are designed to compensate law firms who perform the lion's share of the work that benefits all law firms and clients participating in the MDL. Without such CBF awards, firms would have no incentive (and, in fact, it would be cost-prohibitive) to expend the time and costs to litigate a mass tort. Relatedly, because CBF awards are not attorney's fees, Mazie

Slater nor any other law firm participating in the MDL was required to disclose these awards to their clients nor reduce their contingent fee arrangements.

This Court's affirmance of the District Court's dismissal of Mr. Nagel's putative class action in *Martino* should have been the end of this saga. However, continuing his harassment of Mazie Slater, Mr. Nagel persisted and filed this identical action. The District Court saw through the façade and, after finding this action was identical to *Martino*, dismissed the Complaint on collateral estoppel grounds. That decision was entirely appropriate. Moreover, the Complaint utterly lacked substantive merit, just as it did in *Martino*, and this also warranted dismissal.

Finally, sanctions are warranted against both Plaintiffs' counsel, Mr. Nagel, and against the lawyer who signed the affidavit of merit for relitigating previously dismissed claims and contentions with the avowed purpose of vexatiously harassing Mazie Slater.

## LEGAL ARGUMENT

### POINT I

**THE DISTRICT COURT CORRECTLY
DENIED PLAINTIFFS' MOTION TO REMAND**
**(Response to Appellants' Point I)**

As the District Court properly determined, it retained ancillary enforcement jurisdiction "over all issues not central to the products liability issues of the MDL, which, without doubt, include the fee dispute here." *Johnson*, 2024 WL 1298901, at

20

\*4. It is also undisputed that the requirements for diversity jurisdiction existed conferring subject matter jurisdiction. Accordingly, the motion for remand was correctly denied.

This Court exercises plenary review over denial of motion to remand. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 199 (3d Cir. 2003); *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 175 (3d Cir. 2021); *Encompass Ins. Co. v. Stone Mansion Restaurant Inc.*, 902 F.3d 147, 151 (3d Cir. 2018).

### A. The District Court had Ancillary Enforcement Jurisdiction to Safeguard the Settlement in the Benicar MDL and the <u>CBF Distributions</u>

A district court has ancillary enforcement jurisdiction "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co of America*, 511 U.S. 375, 380 (1994); *see also Frederick v. Range Res.-Appalachia, LLC*, No. 22-1827, 2023 WL 418058, at \*2 (3d Cir. Jan. 26, 2023) (ancillary jurisdiction "rests on a court's inherent power to enforce its orders").

This Court has recently held that the District Court had ancillary enforcement "jurisdiction over attorney fee disputes continues after the resolution of the underlying case." *Butt v. United Brotherhood of Carpenters & Joinders of America*, 999 F.3d 882, 888 (3d Cir. 2021). Various federal courts have recognized the same. *See, e.g., In re Austrian and German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2nd

21

Cir. 2003) ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees," and noting that "[i]t does not matter, for purposes of ancillary jurisdiction, that the District Court did not authorize the attorney's fees being challenged."); *K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 969 (9th Cir. 2014) ("There is no debate that a federal court properly may exercise ancillary jurisdiction over attorney fee disputes collateral to the underlying litigation." (citation and internal quotation marks omitted)); *Zimmerman v. City of Austin*, 969 F.3d 564, 568 (5th Cir. 2020) (same).

The District Court properly invoked the doctrine of ancillary enforcement jurisdiction under these circumstances where Plaintiffs are challenging the attorney fees recovered, in large part based on the CBF awards that were ordered by the Court in the Benicar MDL. In other words, jurisdiction was based on the District Court's inherent power to enforce its orders in the Benicar MDL.

To circumvent this well-established body of law, Plaintiffs improperly raise, <u>for the first time on appeal</u>, that they do "not seek a credit for the monies received by lead counsel from the common benefit fund," but seek to "invalidate" each of the individual retainer agreements. (Pb2). This Court should not consider an issue raised for the first time on appeal. *See C.A.C. v. United States*, 449 F. App'x 194, 197 (3d Cir. 2011). Even so, this representation, for the reasons discussed below,

22

conclusively establishes that diversity jurisdiction existed, which would have similarly warranted the denial of Plaintiffs' motion to remand.

Plaintiffs cannot avoid the fact that their claims directly challenge the CBF awards and the District Court's supervision of the settlement process, as their amended position is semantics and simply changes the source from which they seek to collect their damages.

**B. Diversity Jurisdiction Existed Notwithstanding Plaintiffs' Fruitless Effort to Minimize the Value of the Amount in Controversy**

There is no dispute that complete diversity exists. Here, Defendants are all citizens of New Jersey, and no individual Plaintiff is a citizen of New Jersey. (Pa42-44).

In a strategic and bad faith attempt to avoid the same fate as *Martino*, Plaintiffs simply pled that the amount-in-controversy was "less than $75,000." (Pa44). Defendants, however, have shown by a "preponderance of the evidence" that the amount-in-controversy exceeds $75,000. *4SIGHT Supply Chaing Group, LLC v. Gulitus*, __ F. Supp. 3d __ (D.N.J. 2024); *Young v. Bloomingdale's Short Hills*, 2021 WL 4170025, at *2 (D.N.J. 2021).[4]

---

[4] Even under the more rigorous "legal certainty" standard, Mazie Slater has shown that the amount in controversy exceeds the statutory threshold. *Frederico v. Home Depot*, 507 F.3d 188, 195-96 (3d Cir. 2007).

For example, Plaintiff Eric Johnson's gross monetary recovery was $327,018.51. (Pa175). Under the contingent fee arrangement with Plaintiff Eric Johnson, Mazie Slater was awarded 33 1/3% in attorney's fees, totaling $105,534.23. (Pa175). Because Plaintiffs seek to "invalidate" each of the individual retainer agreements, (Pb2), Plaintiff Eric Johnson's "individual" damages well-exceed the amount-in-controversy requirement, which standing alone would confer supplemental jurisdiction over the remaining Plaintiffs. *See* 28 U.S.C. § 1367; *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558-59 (2005). The invalidation of *all* of Plaintiffs' retainer agreements would result in total compensatory damages in the amount of $391,230.46. (Pa167-186).

By way of further example, the second count of Plaintiffs' Complaint alleged that Mazie Slater was awarded $4 million in common benefit funds "for substantially similar, if not identical work performed, defendants received more than the contingent fees that the court Rules provide and thus violated the Rules and common law that all contingent fees must be reasonable." (Pa47). This places $4 million in controversy, far exceeding the $75,000 threshold.

Furthermore, Plaintiffs' Complaint includes a demand for "punitive" damages (Pa49), which certainly raises the amount-in-controversy well in excess of $75,000. *See Kieffer v. All State N.J. Insur. Co.*, 561 F.3d 144, 151-52 (3d Cir. 2009) (post-*Frederico*, finding the amount in controversy requirement met, explaining that

24

"[g]iven the categories of damages sought—punitive damages, in particular, which may amount to as much as the greater of five times compensatory damages or $350,000—we are unable to conclude to a legal certainty that Plaintiffs are not entitled to recover the jurisdictional amount"); *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008).[5]

### C. *Grable* Jurisdiction Existed Also Warranting Denial of the Motion to Remand

Even a state-law claim supports federal jurisdiction where it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." This is known as *Grable* jurisdiction. *Grable & Sons Metal Prod., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). Thus, federal jurisdiction is present when a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Where these requirements are satisfied, "jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated

---

[5] It is anticipated that Plaintiffs will argue that the claims may not be aggregated among multiple plaintiffs to reach the required amount in controversy. That argument is entirely without merit, as Plaintiffs' claims rise or fall together. *See Owners Insur. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 398 (3d Cir. 2016).

without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313–14); *see also Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("We have … also noted that a case may arise under federal law where the vindication of a right under state law necessarily turned on some construction of federal law.") (citation and internal quotation marks omitted).

Plaintiffs challenge the validity and consequences of the District Court's Orders granting CBF awards to Mazie Slater and other law firms to compensate for work and expenses "for the common benefit of all MDL plaintiffs." (Pa104). Furthermore, Plaintiffs allege that Adam Slater was appointed to a leadership position in the Benicar MDL and, through that role, voted Mazie Slater "millions in fees and costs for work that had been substantially performed for his individual clients." (Pa45). Thus, a federal issue is raised because the CBF awards arose only in the context of the MDL pursuant to the Court's inherent powers to effectively manage federal litigation. *See In re Roundup Products Liability Litigation*, 544 F. Supp. 3d 950, 962 (N.D. Cal. 2021) ("when a district court is handling an MDL or some other group of related cases, it has the authority to compensate common benefit work by redistributing attorneys' fees in those cases, to the extent necessary to ensure effective management and adjudication of the litigation."); *In re Bard IV Filter Products Liability Litigation*, 603 F. Supp. 3d 822, 831 (D. Ariz. 2022) ("An

26

MDL court's ability to perform the task assigned to it by the MDL statute [28 U.S.C. § 1407] necessarily requires the power to assure reasonable compensation for the efforts of lead counsel."); *accord Casey v. Denton*, 2017 WL 3461363, at *3-5 (S.D. Ill. Aug. 11, 2017) (holding that *Grable* jurisdiction existed where a putative class asserted legal malpractice claims against MDL leadership with respect to their role in managing the litigation, and that state courts "do not have any interest in how federal courts organize and manage multi-district litigations").

As such, the District Court had *Grable* jurisdiction over this case, which implicates the "uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. Accordingly, this Court can (and should) resolve this dispute as it already did in *Martino*.

## POINT II

## THE DISTRICT COURT CORRECTLY DISMISSED THE COMPLAINT
### (Response to Appellants' Point II and Point IV)

The District Court was intimately familiar with the Benicar MDL and *Martino*, and was correct to dismiss this copycat lawsuit. As the District Court correctly determined, "[b]ut for the names and state citizenship of the plaintiffs here, this action is identical to an earlier case filed by the same law firm in this Court." (Pa13). Because this case raised the same legal issues premised on the same factual allegations that were previously decided by the District Court and this Court, the Complaint was properly dismissed.

27

**A. The District Court Correctly Applied the Doctrine of Collateral Estoppel to Dismiss Plaintiffs' Copycat Lawsuit**

Collateral estoppel, or issue preclusion, "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984). The purpose of precluding "parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Under New Jersey law, in order for the doctrine of collateral estoppel to apply to foreclose the re-litigation of an issue, the party asserting the bar must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

*Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521, 897 A.2d 1003, 1009 (N.J. 2006) (citation omitted); *accord Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999) (holding collateral estoppel should be applied where: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the

28

party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question); *Tonka Corp. v. Rose Art Indus.*, Inc., 836 F. Supp. 200, 211 (D.N.J. 1993).[6]

Each element of collateral estoppel was satisfied, and accordingly, the District Court did not err in dismissing this action.

*First*, the District Court correctly determined that this action "turns exactly on the same claims and point of law as decided in [Martino]: whether defendants' common benefit fund award from the Olmesartan MDL was an excessive contingency fee prohibited by the NJ Rule." *Johnson*, 2024 WL 2022719, at *2.

*Second*, there was a final judgment on the merits. Plaintiffs argue, without any legal authority or citations, that there was no final judgment on the merits because this Court's decision "was based on pleading deficiencies." (Pb37). However, as the District Court correctly determined, the dismissal with prejudice in *Martino* served as a "final judgment on the merits" for purposes of res judicata or collateral estoppel. *See, e.g.*, *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) ("The

---

[6] The District Court indisputably had the power to *sua sponte* dismiss an action based on res judicata or collateral estoppel. *Atwell v. Metterau*, 255 Fed. App'x 655, 657 (3d Cir. 2007) ("Although a defendant usually must raise preclusion as an affirmative defense, a court may *sua sponte* dismiss an action on this basis where the court is on notice that it previously decided the issue presented."); *see also King v. East Lampeter Twp.*, 69 Fed. App'x 94, 96 (3d Cir. 2003).

dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits'"); *Bullock v. Klein*, 502 Fed. App'x 113, 116 (3d Cir. 2012); *Adefumi v. Prosper*, 785 Fed. App'x 935, 936 (3d Cir. 2019).

*Third*, the Supreme Court and Third Circuit have recognized six categories where nonparty preclusion may be appropriate:

> (1) the nonparty agrees to be bound by the determination of issues in an action between others;
>
> (2) a substantive legal relationship—i.e., traditional privity—exists that binds the nonparty;
>
> (3) the nonparty was adequately represented by someone with the same interests who was a party;
>
> (4) the nonparty assumes control over the litigation in which the judgment is rendered;
>
> (5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and,
>
> (6) the nonparty falls under a special statutory scheme that expressly forecloses successive litigation by nonlitigants.

*Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008); *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 312-13 (3d Cir. 2009). *Taylor* explained the minimum requirements for the adequate representation exception:

> A party's representation of a nonparty is "adequate" for preclusion purposes only if, at a minimum: (1) the interests of the nonparty and her representative are aligned, and (2) either the party understood herself to be acting in a

30

> representative capacity or the original court took care to protect the interests of the nonparty. In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented[.]

553 U.S. at 900 (internal citations omitted).

The District Court faithfully analyzed the "privity" analysis under the third exception, *i.e.* the nonparty was adequately represented by someone with the same interests who was a party. The District Court determined that Plaintiffs here and the putative class in *Martino* signed contingency fee agreements with Mazie Slater, all participated in the Olmesartan settlement, and all Plaintiffs in both actions were awarded an Olmesartan settlement amount from which Defendants collected their contingency fee. *Johnson*, 2024 WL 2022719, at *3. The putative class in *Martino* brought identical claims, premised on the same factual allegations, seeking to vindicate the same legal right. The putative class was adequately represented and, in fact, as the District Court noted, filed a Fed. R. Civ. P. 56 countermotion seeking to hold, as a matter of law, that Mazie Slater violated Rule 1:21-7(i). *Id.* at *3 n.5.

*Fourth*, Plaintiffs had a full and fair opportunity to litigate these issues in *Martino*, as "the earlier proceedings complied with the federal due process clause of the Fourteenth Amendment." *Magoni-Detwiler v. Pennsylvania*, 502 F. Supp. 2d 468, 475 (E.D. Pa. 2007) (citation omitted); *Witkowski*, 173 F.3d at 205. "[T]he core of due process is the right to notice and a meaningful opportunity to be heard."

31

*Magoni-Detwiler*, 502 F. Supp. 2d at 475 (quoting *LaChance v. Erickson*, 522 U.S. 262, 266 (1998)). In *Martino*, the plaintiff was afforded the opportunity to oppose Mazie Slater's motion, present evidence, and fully litigate the issues before the District Court. *See Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 267-68 (3d Cir. 1978) (holding that plaintiff "had a full and fair opportunity to litigate [his claims] in th[e other] forum" where another district court had previously dismissed complaint for failure to state claim); *Farmer v. Potteiger*, Civ. No. 3:12-808, 2012 WL 5398626, at *6 (M.D. Pa. Sept. 28, 2012) ("Not only did [the plaintiff] bring virtually identical substantive allegations in his earlier lawsuit, but the merits of those identical issues were fully litigated, and adjudicated, in the earlier case" when district court adopted reports and recommendations to dismiss the complaint), *adopted in relevant part*, 2012 WL 5398627, at *4 (M.D. Pa. Nov. 5, 2012); *Nash v. Jilles*, Civ. A. No. 7-3985, 2007 WL 2844823, at *4 (E.D. Pa. Sept. 28, 2007). Furthermore, the plaintiff in *Martino* filed a countermotion under Fed. R. Civ. P. 56 and appealed the dismissal to this Court. The argument that there was no full and fair opportunity to litigate these issues in *Martino* is clearly wrong.

## B. The Complaint Lacked Substantive Merit Which, Likewise, <u>Warranted Dismissal</u>

Because this case involves the same underlying facts, the same causes of action, and identical legal issues and theories as *Martino*, it necessarily follows that

this case warranted the same result: dismissal, even if it were not subject to collateral estoppel.[7]

### 1. New Jersey Court Rule 1:21-7(i) Cannot Give Rise to a Colorable Cause of Action

Plaintiffs claim that an issue of "first impression" is whether an aggregate recovery of over $3 million in MDLs in New Jersey requires court approval under Rule 1:21-7(i). But that is wrong.

*First*, the District Court in *Martino* expressly found that the plain language of Rule 1:21-7(i)—which requires claims to involve "substantially identical liability issues"—cannot logically apply to mass tort litigation:

> [T]he Court holds the plain language of Rule 1:21-7(i) does not apply to cases consolidated either in a Multicounty litigation or a Multidistrict litigation. And this inapplicability has nothing to do with the specific, underlying legal issues, whether business torts or products liability. This holding arises from the Court's experience as the transferee Court of the Olmesartan MDL to observe firsthand that the administration of the Olmesartan settlement program concerned not only the common liability issue of injury caused by Olmesartan ingestion but also the very different and the very specific factual details of each such injury for each consolidated case.

---

[7] Because this Court reviews a motion for judgment on the pleadings *de novo*, *Gillette*, 852 Fed. App'x. at 644, this Court may affirm on any grounds that are supported by the record. *See Laurel Gardens, LLC v. McKenna*, 948 F3d 105, 116 (3d Cir. 2020) ("we may affirm on any ground supported by the record, and an appellee may urge affirmance on such a ground even if the district court overlooked it or it involves an attack on the district court's reasoning."); *accord TD Bank N.A. v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019).

2022 WL 1443689, at *8. This Court agreed. *Martino*, 2023 WL 1990306, at *1-3. And for good reason. Because Mazie Slater's clients are domiciled in various jurisdictions, the law governing liability in each of these individual cases varied on a case-by-case basis.

To illustrate, in Florida, the home state of Plaintiff Jennifer Davis, a failure to warn claim requires a showing that "the defendant is a manufacturer or distributor of the product at issue and that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1286 (M.D. Fla. 2009), *aff'd*, 634 F.3d 1296 (11th Cir. 2011). In contrast, in Michigan, the home state of Plaintiff Katrina Harry, a plaintiff must prove that the defendant "knew of the claimed danger," "the danger was not obvious to users of the product," "defendant failed to use reasonable care to warn such users," and the "failure to warn was the proximate cause of the [plaintiff's] injuries." *Moody v. Chevron Chem. Co.*, 505 N.W.2d 900, 903 (Mich. Ct. App. 1993) (citations omitted). And certain defenses are available under Michigan law that do not exist under the laws of most other states, including Florida. *See, e.g.*, *Marsh v. Genentech, Inc.*, 693 F.3d 546, 554 (6th Cir. 2012) ("Although preemption principles do not foreclose state-law failure-to-warn claims once the FDA has approved a drug, Michigan law does so.").

*Second*, as the District Court determined in *Martino*, there has been no case, published or unpublished, that has equated "a plaintiff's single, product liability claim in an MDL or MCL to other such claims in the same MDL or MCL," which "militates against the applicability of Rule 1:21-7(i)." 2022 WL 1443689, at *6. To the contrary, multiple courts have interpreted Rule 1:21-7(i) as being inapplicable to mass tort litigation. For example, the pelvic mesh MCL court has uniformly applied Rule 1:21-7(c)—and not subsection (i)—in determining the reasonable fee to be awarded for individual cases settling for amounts in excess of $2 million or $3 million. (Pa231-232; Pa234-235). Similarly, the court overseeing the Allergan MCL has also issued an Order making clear that attorney's fees should be calculated in accordance with Rule 1:21-7(c) in calculating the attorneys' fees in all cases in that MCL. (Pa237). More recently, the court overseeing the Elmiron MCL also issued an Order stating, in part, that "R. 1:21-7(c) and R. 1:21-7(d) are applicable to the calculation of attorneys' fees and expenses for the settlement or judgment of any case or cases in this litigation." (Pa245).

The inapplicability of Rule 1:21-7(i) in similar circumstances was confirmed in yet another decision. In a group of consolidated cases against a dental practice alleging common unsanitary practices leading to infections of more than twelve different people, the Court ruled that Rule 1:21-7(i) was not applicable to the calculation of the attorney fees. *Leahy v. Skylands Medical Group, P.C., et al.*,

Docket No. MRS-L-1393-16 (N.J. Law Div. Apr. 9, 2020). The Court focused on several factors including, most prominently, that the cases were all going to be tried separately, and that the doctors, facts, and causation issues in each case were unique to each case—despite having numerous similar, overlapping facts and issues. As illustrated by these cases, New Jersey practice is quite clear that the calculation of the attorney's fees in mass torts is controlled by Rule 1:21-7(c), not subsection (i).

Reaching, Plaintiffs can only cite to "scholarly treatment" interpreting Rule 1:21-7(i). Again, the District Court in *Martino* found that this "scholarly treatment" was a "red herring" because "it discusses a clear case of illegal behavior on the part of MDL attorneys, which is inapplicable here." 2022 WL 1443689, at *7. The fact that Plaintiffs are still unable to identify even a solitary mass tort case in which their interpretation of Rule 1:21-7 has been adopted speaks volumes. The reason for this is clear: there are none. Instead, Plaintiffs continue to advance the untenable *ipse dixit* position that every MCL and MDL court in New Jersey, and every attorney appearing before those courts, has been applying Rule 1:21-7 incorrectly for over forty years. The simpler reality is that Plaintiffs are just wrong.

*Third*, the "Civil Practice Committee" recently rejected the amendment to Rule 1:21-7, proposed by Plaintiffs' counsel Mr. Nagel as an end run around this Court's decision in *Martino*, designed to make "clear that paragraph (c) and (i) provisions apply to Multicounty Litigation matters." (Pa368-369; Pa381). The Civil

36

Practice Committee found the rule change was not necessary because the "common benefit fund" is a "fund whereby the lead counsel in an MDL or MCL expends money for expert fees and depositions costs which benefit the plaintiffs in all of the actions." (Pa381). The Committee further determined that the CBF award "is separate and distinct from an 'attorney fee award' which is contemplated by Rule 1:21-7 and therefore is not subject to those limitations." (Pa381). The Committee further observed "due to the existence of individuals cases in MCL and MDL litigation, as opposed to a class action which consist of one action with several plaintiffs, there generally are separate retainers for each case and the attorney is entitled to an attorney fee award in each of the cases subject to the retainer agreement. The court rule is not intended to limit the aggregate sum of the attorney fee awards of each individual case." (Pa381-382). The New Jersey Supreme Court agreed and refused to amend Rule 1:21-7 based on Mr. Nagel's request, which was clearly designed to circumvent *Martino*.[8]

In short, Rule 1:21-7(i) has no bearing or applicability in the setting of a mass tort.

---

[8] See NOTICE TO THE BAR (Apr. 26, 2024),
https://www.njcourts.gov/sites/default/files/notices/2024/04/n240429a.pdf

### 2. Because CBF Awards Are Not Attorney's Fees Subject to the Retainer Agreement, Mazie Slater Did Not Improperly Double Bill or Charge its Clients Unreasonable Fees in Violation of Rule 1:21-7 or R.P.C. 1.5

Plaintiffs continue to reprise the argument made in *Martino* that the CBF awards were duplicative or overlapped with the fees and costs charged to Mazie Slater's clients pursuant to the retainer agreements, and that Mazie Slater is thus liable for "double dipping."

*First*, as in *Martino*, Plaintiffs "identified no legal authority supporting the theory that awards disbursed from CBFs by court order to attorneys who exercised leadership roles in MDLs must be credited or paid to the attorneys' clients." 2023 WL 1990306, at *1. And, as this Court noted in *Martino*, no such authority exists. *Ibid.*

*Second*, the District Court's Order in the Benicar MDL explicitly differentiated the common benefit work from the work performed on individual cases. (Pa62) ("No time spent on developing or processing purely individual issues in any case, for an individual client [claimant], will be considered or should be submitted.")). As the District Court wrote in its order approving the CBF distribution, it compensated work done and expenses incurred by MDL attorneys "**for the common benefit of all MDL plaintiffs**," not for work governed by each retainer agreement. (Pa104) (emphasis added). That same Order also makes clear that the CBF awards were for "**the common benefit work and expenses expended**

38

**in this MDL**." (Pa107) (emphasis added). **Perhaps most importantly, the CBF attorney fees came out of each individual case's attorney fees, meaning CBF attorney fees did not decrease any plaintiffs' recovery and could not possibly result in any "double billing."** (Pa68).

*Third*, and as the District Court observed in *Martino*, the "**the common benefit fund award was remuneration to the Olmesartan registrants' attorneys for their efforts to steer the MDL litigation and to bring the MDL to settlement**." *Martino*, 2022 WL 1443689, at *8-9 (emphasis added). The District Court also determined that "the common benefit fund award is well within the **reasonable and equitable percentages** of Third Circuit examples." *Id.* at *9.

This Court ultimately concluded that given the Orders entered in the Benicar MDL and the absence of any legal authority to the contrary, the "allegation of 'improper double billing' can't support legal malpractice, conversion, or unjust enrichment claims." *Ibid.* Moreover, this Court observed that there was "no law supporting his suggestion that Mazie Slater had to disclose its potential receipt of CBF awards to its MDL clients," and found that "a court-managed CBF is distinct from an attorney-client retainer agreement," and that "CBF awards are not attorney's fees." *Id.* at *1-3. As such, no violation of Rule 1:21-7 or the Rules of Professional Conduct existed as a matter of law. *Ibid.* Plaintiffs have not offered anything that would alter the District Court or this Court's analysis.

39

*Fourth*, the Civil Practice Committee, like the District Court and this Court, found that CBF awards are "separate and distinct from an 'attorney fee award' which is contemplated by Rule 1:21-7 and therefore is not subject to those limitations." (Pa381-382). The Committee also noted that "due to the existence of individual cases in MCL and MDL litigation," there "generally are separate retainers for each case and the attorney is entitled to an attorney fee award in each of the cases subject to the retainer agreement." (Pa382).

Because "CBF awards are not attorney's fees" as contemplated by Rule 1:21-7 or R.P.C. 1.5(a), Plaintiffs' claims for legal malpractice, breach of contract, unjust enrichment claim, and conversion failed to state a cause of action as a matter of law and were properly dismissed.

## POINT III

## NO QUESTION ON THIS APPEAL SHOULD BE CERTIFIED
### (Response to Appellants' Point III)

Plaintiffs request this Court certify the "novel" question of law as to the interpretation of Rule 1:21-7(i) as it applies to MDLs and mass tort litigations. (Pb48). In fact, in *Martino*, this Court declined to certify virtually identical legal questions to the Supreme Court of New Jersey on this exact basis. *See Martino*, 2023 WL 1990306, at *3. The same outcome is warranted here.

There is nothing novel about this case. Plaintiffs have advanced claims that are clearly inconsistent with well-established law and practice in New Jersey's

40

federal and state courts, and were expressly rejected by the District Court and this Court in *Martino*. The interpretation and application of Rule 1:21-7(i) is straightforward and, aside from being inapplicable on its face, Rule 1:21-7(i) has consistently been found to be inapplicable to a mass tort litigation.

The primary argument for certification appears to be that there is a dearth of cases addressing Rule 1:21-7(i) as well as the interplay of CBF awards and retainer agreements. (Pb46-47). That is because the issues raised by Plaintiffs are so untethered from a reasonable understanding of the controlling law that they have not been raised in any court of competent jurisdiction. That is a basis on which to, again, affirm the District Court, not a basis to refer this matter to the New Jersey Supreme Court. *See United States v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022) ("[c]ertifying a question where the answer is clear is inappropriate and unnecessary."); *Travelers Indem. Co. v. DiBartolo*, 171 F.3d 168, 169 n.1 (3d Cir. 1999) (declining to certify the question at issue because the issue was not sufficiently important or difficult).

Moreover, the Committee expressly ***rejected*** Mr. Nagel's application (which directly invoked the facts here) and proposed changes to Rule 1:21-7, finding that CBF awards are "separate and distinct" from an "attorney fee award" contemplated by Rule 1:21-7 and, therefore, "is not subject to those limitations." (Pa381). The New Jersey Supreme Court also disagreed with Mr. Nagel's proposed changes to Rule 1:21-7, based on a matter-of-fact analysis of the arguments by Plaintiffs'

41

counsel. There is no point or basis to refer the same question to the New Jersey Supreme Court, which agreed with the Civil Practice Committee.

At bottom, no novel question of law exists, and the New Jersey Supreme Court has already decided Rule 1:21-7(i) is inapplicable.

## POINT IV

### THE DISTRICT COURT ERRED IN DENYING MAZIE SLATER'S MOTIONS FOR SANCTIONS AS MOOT

The District Court did, however, err in denying Mazie Slater's motion for sanctions against Mr. Nagel (and his firm) as well as Mr. Borteck as moot because a district court "***must*** resolve any issues about imposition of sanctions," including Rule 11 sanctions, "prior to, or contemporaneously with, entering final judgment." *Gary v. Braddock Cemetery*, 517 F.3d 195, 202 (3d Cir. 2008) (emphasis added); *accord Aardvark Child Care & Learning Ctr., Inc. v. Township of Concord*, 288 Fed. App'x 16, 20 (3d Cir. 2008).

This issue was squarely addressed in *Brice v. Bauer*, 689 Fed. App'x 122 (3d Cir. 2017). There, the district court denied the defendant's motion for Rule 11 sanctions as moot after dismissing all claims on a motion for summary judgment. *Id.* at 122. This Court first observed that where, as here, the district court denies a Rule 11 motion as moot, review is *de novo*. *Id.* at 123. This Court then concluded:

> **We hold that the District Court's refusal to reach the merits of the Rule 11 motion was in error**. A district court "must resolve any issues about imposition of

42

sanctions," including Rule 11 sanctions, "prior to, or contemporaneously with, entering final judgment." *Gary*, 517 F.3d at 202. This obligation to resolve "collateral issues" is not mooted "after an action is no longer pending," *Willy v. Coastal Corp.*, 503 U.S. 131, 137-38 (1992) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)), for a district court retains jurisdiction to impose Rule 11 sanctions even when it lacks subject-matter jurisdiction over the claim giving rise to the sanctionable conduct, *Lazorko v. Pa. Hosp.*, 237 F.3d 242, 247 (3d Cir. 2000). Here, therefore, **the final judgment on the [the plaintiffs'] claims against [the defendant] did <u>not</u> moot [the defendant's] Rule 11 motion, and the District Court erred by declining to decide that motion on its merits.**

*Ibid.* (emphasis added).

This Court can and should decide as a matter of law that Mr. Nagel's conduct in filing a "copy-cat" lawsuit that was previously dismissed with prejudice is frivolous on its face within the meaning of Rule 11. *See, e.g.*, *Balthazar v. Atlantic City Medical Center*, 137 Fed App'x 482, 490 (3d Cir. 2005) (affirming the district court's imposition of sanctions because the plaintiff filed a complaint with allegations "almost identical to allegations that the District Court had already dismissed in [the] original federal complaint" and therefore the plaintiff 'insisted upon a position after it is no longer tenable....'" (citation omitted)); *Lai v. Wei*, No. 07-179, 2007 WL 1963331, at *5 (D.N.J. June 29, 2007) (holding the plaintiff violated Rule 11 when she was on notice that claims were futile and nonetheless filed action); *Mitchel v. City of Santa Rosa*, 601 Fed App'x 466, 468 (9th Cir. 2015)

43

(affirming the district court's imposition of sanctions where the plaintiff's claims "attempted to re-litigate, without modification, contentions previously dismissed by the district court as lacking legal merit."); *Corsini v. Bloomberg*, 26 F. Supp. 3d 230, 247 (S.D.N.Y. 2014) (noting that any "party who re-files an action that is materially identical to an action previously dismissed by a court as being without legal merit is engaging in duplicative litigation that can result in the imposition of monetary sanctions under Rule 11" and holding "imposition of sanctions is appropriate here because Plaintiff's claims against the [] Defendants are barred under the doctrine of res judicata, were held to be meritless in an early action, and are objectively frivolous."); *Lipin v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 202 F. Supp. 2d 126, 140 (S.D.N.Y. 2002) (holding Rule 11 sanctions were warranted because the plaintiff "attempted ... to prosecute the same restated, reformulated and transactionally related claims originally decided" in a previous action and that the plaintiff should have been aware that the claims were "barred by collateral estoppel").

Rule 11 sanctions are particularly warranted where, as here, Mr. Nagel's sole intention in filing this duplicative action was to continue his longstanding vendetta against Mazie Slater, his former law partners. Since the 2006 breakup of the former firm, Mr. Nagel has systematically and continuously used proxies to bring unfounded lawsuits and other complaints in a blatant attempt to interfere with,

44

embarrass, and harass his former law partners who now comprise Mazie Slater. *See, e.g.*, *Dewey v. Volkswagen*, Nos. 07–2249(FSH), 07–2361(FSH), 2012 WL 8433901, at *5 (D.N.J. Nov. 26, 2012) (finding that an objection to the class action settlement "may be driven by an acrimonious relationship between [Mazie Slater] and their former law partner," and that "the circumstances may suggest that [the objector's] motivation, at least in part, is simply to disrupt a fee award to class counsel in furtherance of hostilities between class counsel and their former partner, rather than improve the benefits to the class under the settlement.") (Shwartz, U.S.D.J.); *Kirsch v. Horizon Blue Cross Blue Shield of New Jersey*, A-0119-12, 2013 WL 5507660, at *1 (N.J. App. Div. Oct. 7, 2013) (finding an objection to the class action settlement was merely "another front in the private dispute of two former law partners," and that "[n]o one disputes that the objection was prompted by class counsel's estranged former partner [Nagel], although he is not counsel of record for objectors."); *Krugman v. Mazie Slater Katz & Freeman, LLC*, A-2611-13, 2015 WL 1880073, at *1 (App. Div.) (affirming the trial court's dismissal of a Nagel-proxy legal malpractice claim on the face of the pleadings after finding that the plaintiff lacked good faith), *certif. denied*, 223 N.J. 355 (2015); *Levine v. Mazie Slater Katz & Freeman, LLC*, Docket No. BER-L-2736-12 (N.J. Law Div.) (counsel admitted that Nagel was secretly behind the lawsuit). Each one of these cases, like *Martino*

and the present action, were brought with the deliberate intent of vexatiously harassing Mazie Slater.

Moreover, Mr. Nagel included David Mazie as the first-named defendant in this case despite knowing that David Mazie was not involved in the Benicar MDL. David Mazie did not enter an appearance as counsel of record, never filed any briefs, never argued any motions, nor in any way participated in the Benicar MDL in any representative capacity. A cursory review of the Electronic Case File would have undoubtedly revealed this obvious fact. Tellingly, not once in Plaintiffs' complaint is there even a passing reference to any act or omission on the part of David Mazie that would justify including him in *Martino* and in this action. Nevertheless, Mr. Nagel made David Mazie the first named defendant in this action.

Although, standing alone, re-filing an action with identical claims, premised on the same factual allegations, that have previously been dismissed and then re-advocating those same meritless claims is a sufficient basis for imposing sanctions, *see supra*, the fact that Mr. Nagel did so with the express intent of harassing his former law partners leaves no room for doubt that sanctions should be imposed. Fed. R. Civ. P. 11(a). *See McMillan v. Rodriguez*, 337 F.R.D. 27, 34 (D.P.R. 2020) ("the filing a cause of action in federal court" that was "patently inconsistent with long established law" and was "not supported by facts necessary to survive a motion to

46

dismiss…leads to only one conclusion–that the Complaint was filed for the improper purpose").

The imposition of Rule 11 sanctions in this case "will remind [Plaintiff's counsel] that **the federal court system is not to be used to settle personal grudges** and should deter [him] from engaging in similar conduct in the future." *Galanis v. Szulik*, 841 F. Supp. 2d 456, 461 (D. Mass. 2011) (*see* string cite) (emphasis added).

For similar reasons, the motion for sanctions against Mr. Borteck, an attorney, also should have been granted. A district court has the inherent power to sanction separate from its authority under Rule 11 or any other rule or statute. *Chambers v. NASCO*, Inc., 501 U.S. 32, 46 (1991); *In re Prudential*, 278 F.3d 175, 189 (3d Cir. 2002) (A court may "resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court." (citation omitted)). Thus, "a court has the inherent authority to impose sanctions when an attorney has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *In re Prudential*, 278 F.3d at 188–89 (quoting *Chambers*, 501 U.S. at 45). "Indications of ... bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was an improper purpose such as harassment." *In re Prosser*, 777 F.3d 154, 162 (3d Cir. 2015) (cleaned up); *In re Prudential*, 278 F.3d at 188; *see also In re Avandia Mktg., Sales Pracs. & Liab. Litig.*, 469 F. Supp. 3d 357, 360–61 (E.D. Pa. 2020) ("Bad faith

47

may also be inferred where a party pursues claims that are clearly frivolous." (cleaned up)).

There is no question that, on this record, Borteck has acted in bad faith by ignoring the factual record and legal authority before signing his affidavit of merit. For example, in the *Martino* matter, the putative class asserted a claim for unjust enrichment on the basis that Mazie Slater should have credited its clients for the monies it received through the Benicar MDL's CBF. (Pa115). The Third Circuit rejected that argument, determining there was "no legal authority supporting the theory that awards disbursed from CBFs by court order to attorneys who exercised leadership roles in MDLs must be credited or paid to the attorneys' clients." *Martino*, 2023 WL 1990306, at *1. Yet, in the present action, the plaintiffs assert <u>the same exact claim</u>, premised on the <u>same exact factual allegation</u>. (Pa50). Likewise, the plaintiff asserted a claim for conversion in the *Martino* matter—which was dismissed as a matter of law—and, again, Plaintiffs assert the same claim here. (*Compare* Pa114-115, *with* Pa49). And, of course, Borteck filed a sworn affidavit attesting that David Mazie had committed malpractice, despite the fact that David Mazie had no involvement whatsoever in the Benicar MDL or its related cases.

In short, Borteck's affidavit of merit is sanctionable because (1) there is no possibility that any of the materials that Borteck purportedly "reviewed" would have shown David Mazie was in any way involved in the Benicar MDL (and, thus, should

not have been a party in the *Martino* matter or a party in the present case); (2) the substantive allegations and claims presented in this case are substantively identical to those in the *Martino* matter—which were dismissed by this Court as legally untenable—and, therefore, cannot have any support in the existing law; and (3) Borteck should have known the present matter is a continuation of Nagel's harassing strategy to systematically file countless unfounded actions in an attempt to interfere with and burden his former law partners.

### POINT V

### THERE WAS NO COGNIZABLE BASIS TO SANCTION MAZIE SLATER UNDER N.J.S.A. 2A:53A-41(F)
### (Response to Appellants' Point V)

Plaintiffs' motion for sanctions was premised solely on a purported violation of N.J.S.A. 2A:53A-41(f).[9] However, the plain and unambiguous language of N.J.S.A. 2A:53A-41(f) makes clear it is inapplicable as a matter of law.

That statute reads, in pertinent part, that:

> An individual or entity who **threatens to take or takes adverse action** against a person in retaliation ... for that person executing an affidavit…, which **adverse action relates to that person's employment, accreditation, certification, credentialing or licensure**, shall be liable to a civil penalty not to exceed $10,000 and other damages incurred by the person and the party for whom the person was testifying as an expert.

---

[9] Plaintiffs do not cite any case interpreting or applying subsection (f), and Mazie Slater knows of none.

(emphasis added). Based on a plain reading of the statutory language, Subsection (f) requires that the "adverse" action must directly relate to the affiant's "employment, accreditation, certification, credentialing or licensure." *See In re Expungement Application of D.J.B.*, 216 N.J. 433, 440, 83 A.3d 2, 5 (2014) ("If the language [of a statute] is clear, the court's job is complete."); *EH Yacht, LLC v. Egg Harbor, LLC*, 84 F. Supp.2d 556, 566 (D.N.J. 2000) ("It is axiomatic that when interpreting a statute, Courts should first look to the statutory language and whenever possible give that language its plain meaning."). None of those discrete scenarios are even remotely present in this case.

If there was any doubt as to the interpretation of N.J.S.A. 2A:53A-41(f), the legislative history makes clear that penalties may only be imposed where the adverse action threatened or taken directly relates to the affiant's "employment, accreditation, certification, credentialing or licensure." New Jersey Senate Committee Statement, A.B. 50 (ACS/1R) (Mar. 22, 2004) (the statute "provides for penalties for an individual or entity who threatens to take or takes adverse action against a person in retaliation for that person providing or agreeing to provide expert testimony, or for that person executing an affidavit of merit, which adverse action relates to that person's employment, accreditation, certification, credentialing or licensure."); *accord* New Jersey Assembly Committee Statement, A.B. 50 (Mar. 4, 2004) (same). The whole purpose of subsection (f) is to prevent a party from

threatening an affiant in matters relating to the affiant's employment or professional standing. Subsection (f) is limited to that narrow situation—a situation that is indisputably not present here.

No threat was made against Mr. Borteck's "employment, accreditation, certification, credentialing or licensure." N.J.S.A. 2A:53A-41(f). Instead, a letter was sent to Mr. Borteck placing him on notice that the affidavit of merit he had executed was frivolous on its face because, as the District Court correctly determined, this case "is identical to an earlier case filed by the same law firm in this Court," which was dismissed with prejudice for failure to state a claim upon which relief could be granted. Mr. Borteck, like Plaintiffs' counsel, should have anticipated that this case merits the same fate.

No violation of subsection (f) occurred under these circumstances.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court affirm the District Court's ruling with the exception of the denial of Mazie Slater's motions for sanctions.

Dated: September 23, 2024        Respectfully submitted,

BY: */s/ Adam M. Slater*
Adam M. Slater
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, New Jersey 07068
P: (973) 228-9898
E: aslater@mazieslater.com

**CERTIFICATION OF BAR MEMBERSHIP**

I, ADAM. M. SLATER, hereby certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit. *See* 3d Cir. LAR 28.3(d), 46.1.

**CERTIFICATION OF WORD COUNT**

I, ADAM M. SLATER, hereby certify that the within brief complies with the typeface requirements and type-volume limitation of Fed. R. App. P. 32(a)(5) and (7). Reliance is placed upon the "word count" function of Microsoft Word, the word-processing system used to prepare this brief. This brief uses proportionately spaced 14-point font in Times New Roman style and contains 12,491 words, excluding the parts of the brief exempted by court rule.

**CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS**

I, ADAM M. SLATER, hereby certify that the text of the e-brief (electronically filed brief) and the hard copies of the brief are identical.

**CERTIFICATION OF VIRUS CHECK**

I, ADAM M. SLATER, hereby certify that a virus check has been performed on the Adobe® PDF file containing the within brief using Windows Security, v. 1.419.132.0, and no virus was detected.

**CERTIFICATION OF SERVICE**

I, ADAM M. SLATER, hereby certify that on this date, I caused an Adobe® PDF file containing the foregoing Brief on behalf of Defendants-Appellees to be

53

filed with the Clerk of the Court using CM/ECF and, as such, was served electronically upon counsel of record for Appellants/Cross-Appellees.

I further certify that on this date, I caused seven hard copies of the foregoing Brief on behalf of Appellees/Cross-Appellants to be served by overnight mail upon:

> Patricia S. Dodszuweit, Clerk
> United States Court of Appeals for the Third Circuit
> 21400 U.S. Courthouse
> 601 Market St.
> Philadelphia, PA 19106-1790.

ADAM M. SLATER

Dated: September 23, 2024

54