**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 24-1946, 24-2056
_____

ERIC JOHNSON; VANESSA WILLIAMS, individually and as executor of the estate of Gladys Williams, deceased; MCARTHUR JONES, individually and as executor of the estate of Janet Jones, deceased; HENRIETTA WILLIAMS; ELIZABETH LAMPKIN; ROBERT DELOACH, individually and as executor of the estate of Carolyn Lindsey, deceased; CARMEN MORENO; ROSA MOENO; THERESA NIX; DEBORAH HENSLEY; LORETTA G. ROBINSON; GREGORY H. HEMPHIL; DELORES HOWARD; MAGGIE CURRY; JEAN FIEBELKORN; ELVINA GALLOW; ANGELA MILLER; GLORIA MCCASTER; CAROLYN SILL; JENNIFER DAVIS; KATRINA HARRY,

　　　　　　　　　　　　Appellants in No. 24-1946

v.

DAVID A. MAZIE; ADAM M. SLATER; MAZIE SLATER KATZ & FREEMAN LLC,

　　　　　　　　　　　　Appellants in No. 24-2056

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:23-cv-03420)
District Judge: Honorable Robert B. Kugler

_____

Argued on April 9, 2025

Before: HARDIMAN, PORTER, and FISHER, *Circuit Judges*.

(Filed: July 11, 2025)

Bruce H. Nagel [Argued]
Robert H. Solomon
Nagel Rice
103 Eisenhower Parkway
Roseland, NJ 07068

    *Counsel for Appellants in No. 24-1946 & Cross-Appellees in No. 24-2056*

David A. Mazie
Adam M. Slater [Argued]
Mazie Slater Katz & Freeman
103 Eisenhower Parkway
Suite 207
Roseland, NJ 07068

    *Counsel for Appellees in No. 24-1946 & Cross-Appellants in No. 24-2056*

_____

OPINION OF THE COURT

_____

HARDIMAN, *Circuit Judge*.

The question presented in this appeal is whether ancillary enforcement jurisdiction confers "original jurisdiction" sufficient to permit removal under 28 U.S.C. § 1441(a). We hold that it does not.

I

A

In 2015, product liability cases concerning the blood-pressure medication Olmesartan were consolidated into a multidistrict litigation (MDL) in the United States District Court for the District of New Jersey. Adam Slater was co-lead counsel of the MDL, and his law firm, Mazie Slater Katz & Freeman, LLC, represented more than 200 plaintiffs. The case settled for over $300 million, and the firm collected contingent fees as agreed to by its clients. The firm also received compensation and reimbursement of expenses from the settlement's common-benefit fund.

After the MDL settled, one of the plaintiffs in that case, Anthony Martino, filed a putative class action in New Jersey state court against his former lawyers, David Mazie, Adam Slater, and Mazie Slater Katz & Freeman, LLC (collectively, Defendants). Martino alleged that Defendants received contingent fees in violation of various New Jersey court rules made applicable to litigation in federal court under the District

3

of New Jersey's local rules. On behalf of the putative class of individuals represented by Defendants during the MDL, Martino asserted claims for legal malpractice, conversion, and unjust enrichment. Defendants removed the case to the United States District Court for the District of New Jersey, which granted Defendants' motion to dismiss. A panel of this Court affirmed that dismissal order in a nonprecedential opinion, holding that Martino failed to plausibly allege a violation of New Jersey's rules. *See Martino v. Mazie*, 2023 WL 1990306 (3d Cir. Feb. 14, 2023).

B

Soon after our opinion was filed, twenty-one individuals that Defendants had represented in the MDL filed this action in New Jersey state court. Plaintiffs are citizens of various states other than New Jersey, and Defendants are citizens of New Jersey. Plaintiffs alleged—just as Martino had before—that Defendants collected attorney's fees from the MDL settlement in violation of New Jersey's court rules. They asserted claims for breach of contract, legal malpractice, conversion, and unjust enrichment. Plaintiffs requested compensatory and punitive damages and averred that the "amount in controversy for each Plaintiff[] is less than $75,000.00, exclusive of interest." App. 44.

Citing diversity and federal-question jurisdiction, Defendants removed this case to the District Court before service of process was effectuated. In response, Plaintiffs moved to remand the case to state court, arguing that the District Court lacked federal-question jurisdiction as well as diversity jurisdiction because none of Plaintiffs' claims exceeded the $75,000 jurisdictional threshold. Defendants opposed the motion, presenting evidence that Plaintiff Eric

Johnson's gross monetary recovery was $327,018.51 and that his counsel received $105,534.23 in attorney's fees for representing him. Defendants also moved for judgment on the pleadings, arguing that Plaintiffs failed to plausibly allege a violation of New Jersey's rules.

While those motions were pending, Plaintiffs filed an affidavit of merit, as required for professional malpractice actions under New Jersey law. Attorney Robert Borteck signed the affidavit, attesting "that there exists a reasonable probability that the conduct of the defendants" "fell outside of the acceptable professional standards with regard to the representations and professional services they provided to the plaintiffs." App. 259. In response, David Mazie sent Borteck a letter stating that the affidavit of merit was sanctionable under Rule 11 of the Federal Rules of Civil Procedure because (1) Mazie did not represent Plaintiffs during the MDL and (2) Plaintiffs' allegations were identical to Martino's, which were dismissed. Mazie said he would move for sanctions unless Borteck withdrew his affidavit within twenty-one days.

Neither Borteck nor Plaintiffs acted to withdraw the affidavit. Instead, Plaintiffs moved for sanctions against Defendants under N.J.S.A. § 2A:53A-41(f) for sending the Rule 11 notice letter. *See* N.J.S.A. § 2A:53A-41(f) (providing that an "individual or entity who threatens to take or takes adverse action against a person" for "executing an affidavit" of merit relating "to that person's employment, accreditation, certification, credentialing or licensure, shall be liable to a civil penalty not to exceed $10,000 and other damages incurred").

Undeterred, Defendants filed two motions for sanctions in response. They first moved to sanction Plaintiffs' counsel, Bruce Nagel, and his law firm, Nagel Rice LLP, under Rule 11

5

of the Federal Rules of Civil Procedure on the basis that Plaintiffs' brief in opposition to the motion for judgment on the pleadings contained frivolous arguments and that the litigation was intended to harass them. Defendants also moved to sanction Borteck under Rule 11 and the Court's inherent authority for signing an allegedly frivolous affidavit of merit.

The District Court denied the motion to remand, holding sua sponte that it had ancillary enforcement jurisdiction over the matter because Plaintiffs challenged attorney's fees awarded from the MDL settlement. The Court later granted Defendants' motion for judgment on the pleadings, applying issue preclusion sua sponte. The Court also dismissed the parties' motions for sanctions as moot. Plaintiffs appealed, and Defendants cross-appealed.

II

We have jurisdiction under 28 U.S.C. § 1291. The parties dispute whether this case was properly removed to the District Court under 28 U.S.C. § 1441(a). We review de novo the District Court's order denying the motion to remand for lack of jurisdiction. *See Avenatti v. Fox News Network LLC*, 41 F.4th 125, 129 (3d Cir. 2022).

III

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." Because the "right of removal is entirely a creature of statute," "a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (citation

omitted). "The party seeking removal has the burden of establishing federal jurisdiction and we interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Avenatti*, 41 F.4th at 130.

According to Defendants, the District Court properly denied Plaintiffs' motion to remand because it had (1) ancillary enforcement jurisdiction, (2) federal-question jurisdiction, and (3) diversity jurisdiction. We address each argument in turn.

A

The parties focus their arguments on whether the District Court, in holding that it had ancillary enforcement jurisdiction, correctly evaluated the scope of Plaintiffs' challenge to the attorney's fees awarded from an MDL. Ancillary enforcement jurisdiction is "a creature of necessity" that gives "federal courts the power to enforce their judgments and" ensure "that they are not dependent on state courts to enforce their decrees." *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 85 (3d Cir. 2011) (citation omitted), *as amended* (Sept. 29, 2011). Because a "district court acquires jurisdiction over a case or controversy in its entirety," it may exercise ancillary enforcement jurisdiction "to decide other matters raised by the case over which it would not have jurisdiction were they independently presented." *Butt v. United Bhd. of Carpenters & Joiners of Am.*, 999 F.3d 882, 887 (3d Cir. 2021) (citation omitted). In this appeal, we need not consider the scope of ancillary enforcement jurisdiction, however. Even if the District Court were correct in that regard, ancillary enforcement jurisdiction does not confer the original jurisdiction required to remove a case from state court. *See* 28

U.S.C. § 1441(a).

The Supreme Court's decision in *Syngenta Crop Protection, Inc. v. Henson* is on point. 537 U.S. at 34. There, the parties settled a federal case and agreed that the plaintiff's claims pending in a state-court case would be dismissed. *Id.* at 30. Contrary to the settlement, the plaintiff continued litigating the state-court case. *Id.* So the defendant removed the case to federal court, arguing that "the All Writs Act and the doctrine of ancillary enforcement jurisdiction support[ed] the removal." *Id.* at 33. The Supreme Court disagreed, explaining that "the plain terms of § 1441(a)" required the defendant to "demonstrate that original subject-matter jurisdiction lies in the federal courts." *Id.* Although the federal court retained jurisdiction over the settlement, that did not "authorize[] *removal*" because the "invocation of ancillary [enforcement] jurisdiction" did not "dispense with the need for compliance with statutory requirements." *Id.* at 34.

Consistent with *Syngenta*, we hold that ancillary enforcement jurisdiction does not confer original jurisdiction sufficient to support removal. *Accord Industria Lechera De Puerto Rico, Inc. v. Beiró*, 989 F.3d 116, 122 (1st Cir. 2021) ("[T]he Supreme Court has squarely rejected the notion that ancillary [enforcement] jurisdiction can support removal under § 1441 absent an independent basis for original jurisdiction." (citing *Syngenta*, 537 U.S. at 34)). So the District Court erred by denying Plaintiffs' motion to remand.

B

We now turn to whether the District Court had federal-question jurisdiction, which, unlike ancillary enforcement jurisdiction, does confer "original jurisdiction." 28 U.S.C.

§ 1331. Even though Plaintiffs assert state-law claims, Defendants argue that the District Court had federal-question jurisdiction because Plaintiffs challenge "the District Court's Orders granting [common-benefit fund] awards" "in the context of the MDL," which implicates "the Court's inherent powers to effectively manage federal litigation." Defs.' Br. 26. We disagree.

District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case can arise under federal law in two ways. First, a "case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). Second, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258. But only a "special and small category" of cases with state-law claims arise under federal law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *see, e.g., Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 310 (2005) (holding that a quiet-title action under state law conferred federal-question jurisdiction because it raised important questions of federal tax law).

Applying this test, Plaintiffs' state-law claims do not arise under federal law. It is true that Plaintiffs challenged Defendants' collection of attorney's fees awarded by the federal court in an MDL. But their claims do not necessarily raise a federal issue, let alone one that is actually disputed and substantial. "For a federal issue to be necessarily raised, vindication of a right under state law must necessarily turn on some construction of federal law." *Manning v. Merrill Lynch*

9

*Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (cleaned up), *aff'd*, 578 U.S. 374 (2016); *see, e.g.*, *Grable*, 545 U.S. at 315 (stating that a federal issue was necessarily raised by a quiet-title action because whether the plaintiff "was given notice within the meaning of the federal statute" was "an essential element" of the quiet-title claim). "Because we conclude that no federal issue has been necessarily raised here, we need not decide whether the other three *Grable* requirements are met." *Manning*, 772 F.3d at 163. We therefore hold that federal-question jurisdiction does not provide a basis for removal in this case.

C

Next, we consider whether removal was proper on the basis of diversity jurisdiction. District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" "citizens of different States." 28 U.S.C. § 1332(a)(1).

The parties are completely diverse, so diversity jurisdiction exists if the amount in controversy exceeds $75,000.[1] The parties contest the applicable standard of proof for determining whether the amount-in-controversy requirement is satisfied. According to Plaintiffs, their allegation that the amount in controversy is below $75,000 controls because Defendants have failed to show to a legal

---

[1] "In general, the distinct claims of separate plaintiffs cannot be aggregated when determining the amount in controversy." *Auto-Owners Ins. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). We express no opinion as to whether the anti-aggregation rule applies here.

certainty that it exceeds that amount. Defendants respond that diversity jurisdiction exists because a preponderance of the evidence shows that the amount in controversy exceeds $75,000.

Ordinarily, "[i]f removal of a civil action is sought on the basis of" diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." *Id.* § 1446(c)(2). But the amount alleged in the complaint does not always control. The "notice of removal may assert the amount in controversy" if the initial pleading seeks either (1) "nonmonetary relief;" or (2) "a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded." *Id.* § 1446(c)(2)(A). If one of these exceptions applies, then removal based on diversity jurisdiction is proper if "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000. *Id.* § 1446(c)(2)(B); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (explaining that "when a defendant's assertion of the amount in controversy is challenged," "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied").

The District Court did not consider whether either exception within § 1446(c)(2)(A) applies, and the parties did not brief these issues on appeal. And even if an exception applies, the District Court made no finding as to whether the amount in controversy exceeds $75,000. So the present record does not enable us to determine whether this case was properly removed from state court based on diversity jurisdiction. We will therefore vacate the judgment and remand for the District Court to consider the relevant issues of New Jersey law to

determine whether the amount in controversy exceeds $75,000.

IV

We conclude by considering the motions for sanctions. Both parties contend that the District Court erred by dismissing their respective motions as moot. We agree that the motions were not moot, and the District Court was obligated to rule on the merits before entering final judgment.

Even when a district court is later determined to be without jurisdiction, it may impose sanctions under Rule 11 of the Federal Rules of Civil Procedure because that decision "is not a judgment on the merits of an action." *Willy v. Coastal Corp.*, 503 U.S. 131, 138 (1992) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)). Rather, deciding whether to impose Rule 11 sanctions "requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter*, 496 U.S. at 396; *see also In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 156 (3d Cir. 1997) (stating that a court may use its inherent power to impose sanctions even when it lacks jurisdiction). So adjudicating a motion for sanctions under Rule 11 "does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Willy*, 503 U.S. at 138. And under our precedent, "district courts must resolve any issues about imposition of sanctions prior to, or contemporaneously with, entering final judgment." *Gary v. Braddock Cemetery*, 517 F.3d 195, 202 (3d Cir. 2008).

The parties' motions for sanctions remained a live issue,

so the District Court erred by dismissing them as moot.[2] *See Willy*, 503 U.S. at 137–38; *In re Orthopedic*, 132 F.3d at 156. Because motions for sanctions "must be decided in the first instance by the trial court absent extraordinary circumstances," we will not consider the merits of each motion. *Gary*, 517 F.3d at 202–03. Instead, we will vacate the District Court's order dismissing the motions for sanctions as moot and remand for the District Court to consider the merits of each motion.

\*　　\*　　\*

For these reasons, we will vacate the District Court's judgment, its order denying the motion to remand, and its order dismissing the motions for sanctions as moot. We remand for further proceedings consistent with this opinion.

---

[2] Plaintiffs' motion is founded on state law, so we express no opinion as to how—or even whether—the District Court should adjudicate the merits of that motion.